G. David Robertson, Esq., 1001
ROBERTSON & BENEVENTO
50 West Liberty Street, Suite 600
Reno, Nevada 89501
(775) 329-5600
(775) 348-8300
gdavid@nvlawyers.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JANET SOBEL and DANIEL DUGAN, PhD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THE HERTZ CORPORATION, a Delaware corporation,<br><br>Defendant._____/ | Case No.: 3:06-CV-00545-LRH-RAM<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT [VIOLATIONS OF NRS § 482.31575 AND THE DECEPTIVE TRADE PRACTICES ACT AND COMMON LAW CLAIM FOR UNJUST ENRICHMENT]** |

Plaintiffs, Janet Sobel and Daniel Dugan, Ph.D. (collectively, "Plaintiffs"), allege, on behalf of themselves and all others similarly situated, upon personal knowledge as to themselves and their acts, and, as to all other matters upon information and belief, based upon, inter alia, the investigations made by their attorneys, as follows:

## I.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons who have rented cars from Defendant The Hertz Corporation ("Hertz") at airports in Nevada and to whom Defendant quoted and charged airport concession recovery fees that are prohibited by N.R.S. § 482.31575. Plaintiffs seek damages, restitution, and injunctive relief, pursuant to N.R.S. § 482.31575 and applicable provisions of the Deceptive Trade Practices Act and Nevada common law, arising from Defendant's unfair and unlawful practices.

## II.

## **JURISDICTION AND VENUE**

2. This Court has jurisdiction of this matter pursuant to diversity of citizenship, 28 U.S.C. § 1332, in that this is a class action in which the amount in controversy exceeds $5 million and Defendant is a citizen of states other than Nevada.

3. Defendant regularly conducts business in this District, and the acts and transactions at issue occurred in this District. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

## III.

## **THE PARTIES**

4. The Plaintiffs are persons who have rented cars at airports in the State of Nevada and have been quoted and charged airport concession recovery fees prohibited by Nevada law. They are as follows:

    a. Plaintiff Janet Sobel is a natural person and resident of the State of California. She rented a car at the Las Vegas airport through Defendant The Hertz Corporation during the Class Period defined below, and was quoted and charged a separate airport concession recovery fee in violation of Nevada law.

    b. Plaintiff Daniel Dugan, PhD., is a natural person and resident of the State of Nevada residing in Washoe County and primarily conducting business in Washoe County. He has rented cars at the Reno and Las Vegas airports for both business and personal purposes through various rental car firms, including Defendant The Hertz Corporation, during the Class Period defined below, and was quoted and charged a separate airport concession recovery fee in violation of Nevada law.

5. Defendant The Hertz Corporation ("Hertz") is a Delaware corporation with its principal place of business at 225 Brae Boulevard, Park Ridge, New Jersey. Hertz is registered to do business and does business in Nevada.

/ / / /

/ / / /

## IV.

## COMMON FACTUAL ALLEGATIONS

6. The short-term rental car business is a highly competitive industry with domestic revenues in excess of ten billion dollars annually. Approximately 80% of industry revenues come from car rentals at airport locations. Defendant Hertz is one of the major rental car companies in the country and rents vehicles, directly and/or indirectly, at numerous airport locations, including the Reno-Tahoe International Airport and Las Vegas McCarran International Airport as well as other Nevada airports.

### A. The Nature of Airport Concession Fees and Concession Recovery Fees

7. In return for the right to operate at lucrative airport locations, rental car companies are required to pay fees to the airports, which are commonly referred to as concession fees. Rental car companies whose branches are not located at the airport generally do not pay such fees, though they may be required to pay "access fees" to airports to the extent they pick up customers at the airport. At the Reno-Tahoe and McCarran airports, Hertz is required to pay 10% of its gross revenues to the airports as concession fees.

8. At most airport locations across the Country, Defendant passes through airport concession fees to its customers as surcharges. Since the mid-to-late 1990s, Defendant has "unbundled" these surcharges from its base rental rates in an attempt to compete more effectively and maximize its profits. Defendant thus quotes and charges a base rental rate and, in addition, a separate airport concession recovery fee. When Defendant imposes such surcharges on its customers, it is merely a means for Hertz to bill separately for a part of its overhead, a practice that tends to mislead most customers about the true rental rate.

9. Defendant adopted such surcharges in order to be able to advertise and quote lower rates. Defendant structures its charges in this fashion in order to maximize its revenues and profits. By advertising lower base rates and leading car renters to believe that the "airport concession recovery fee" is a charge imposed by the airport, rather than by them, Hertz is able to charge a materially higher total rate than it could otherwise charge.

Robertson & Benevento
50 W. Liberty Street
Suite 600
Reno, Nevada 89501

1    10.    In fact, however, concession fees are imposed on the rental car firms by the airport authorities; concession recovery fees are distinct charges that were created by the rental car firms and which those firms impose on renters in order to maximize their revenues while maintaining artificially low base rates.  The difference between the two charges is demonstrated by the fact that the Reno-Tahoe airport charges Hertz and other rental car companies a 10% concession fee; but Hertz charged plaintiff Dugan an 11.54% concession recovery fee on a recent rental at the Reno-Tahoe airport.

### B.    The NAAG Task Force Report

11.    In 1988, the National Association of Attorneys General ("NAAG") formed a task force (the "NAAG Task Force") to study car rental advertising and related practices.  The NAAG Task Force was formed in response to an announcement by The Hertz Corporation in late 1987 that it intended to introduce a new advertising campaign that would promote seemingly "lower" airport rental fees by subtracting the seven to twelve percent charged by airports as concession fees from the advertised rate.  Hertz acknowledged, however, that it would then add this amount back into the contract price as a surcharge (i.e., the "concession recovery fee" which was charged to the Plaintiffs herein and is at issue in this litigation).  When several states threatened litigation, Hertz abandoned its advertising campaign; but a number of State Attorneys General formed an ad hoc group to look more broadly into rental car advertising and charges.  That group led to the formation of the NAAG Task Force in March 1988.

12.    In June 1988, the NAAG Task Force issued a preliminary report which concluded that "the most critical problem with the car rental industry was that, in an effort to compete, they had through various deceptive, false, misleading and unfair advertising and business practices created lead prices that were substantially less than the actual prices consumers pay for rental vehicles."  In part, the rental companies did this by subtracting certain items such as "airport fees" from the advertised price, but then adding the charges back on as separate mandatory surcharges.  The Task Force drew three broad conclusions in its preliminary report, including that "mandatory charges must be included in the price advertised as the base rental rate . . . ."

Comments were then solicited and hearings held, as well as private meetings with industry personnel, prior to adoption of the final Report and Guidelines in March 1989.

13. Defendant Hertz commented on the NAAG Draft Guidelines, in pertinent part, as follows:

> We are particularly gratified that the Task Force has rejected the litany of complaints presented by the cabal of car rental companies that engage in unsavory, anti-consumer tactics. For too long these companies have been springing traps of additional charges on unsuspecting renters and have used the various advertising media to do so.
>
> In particular, Hertz strongly endorses:
>
> 1. The required inclusion of all mandatory charges in the advertised price – wherever advertised.
>
> * * * * *
>
> These are important steps forward in the process of bringing industry standards to acceptable levels of fair competition and consumer protection.

14. The Task Force guidelines were ultimately approved by NAAG in or about early 1999. Those Guidelines were drafted and adopted to, inter alia, "eliminate the unbundling of mandatory charges from advertised car rental rates." Guideline 2.5 addresses Mandatory Additional Charges and states as follows: "Any surcharge or fee that consumers must generally pay at any location in order to obtain or operate a rental vehicle must be included in the total advertised price of the rental." The Report states, in pertinent part, as follows:

> As stated in the Preliminary Report, the Task Force is extremely concerned about the growing practice of "unbundling" or subtracting certain mandatory charges from the advertised price for the purpose of making the cost of the rental appear less than it actually is. Recently, a rental company with offices on-site at airports announced that it would reduce the base price in its advertisements but would add a mandatory charge, equivalent to the amount it paid to the airport for its on-site location (i.e., its concession fee), to the price charged to consumers. After meeting with several attorneys' general offices, the company abandoned its plan.

Task Force Report at p. 11 (Comment to Guideline 2.5). In short, the Task Force unambiguously concluded that the unbundling of mandatory charges, such as concession recovery fees, from the base rate was improper.

/ / / /

/ / / /

### C. Airport "Access Fees"

15. The Task Force Report noted that there was a growing trend by airports to impose "access fees" on off-airport rental car companies that picked customers up at the airport. The Report noted that such airport *access fees* charged to customers of off-airport rental companies might warrant different treatment from concession recovery fees, commenting as follows: "When airports charging an access fee to off-airport auto rental companies only assess that fee if the consumer utilizes the auto rental company's van, it can be argued that this is an optional fee and not a mandatory fee." *Id.* In other words, because some of the customers of off-airport rental car companies are local residents or others who are not obligated to pay any airport related fees or charges, it is unfair and potentially misleading to require those off-airport firms to bundle such airport fees into their base rates.

16. In early 1989, Clark County adopted Ordinance 1131, which imposed such an access fee directly on car renters (as distinct from the concession fee that the airport imposed on the rental firms) who arrived at the airport and were picked up by off-airport car rental firms. The Ordinance stated in pertinent part as follows:

> Effective April 1, 1989, ground transportation companies and hotels or motels providing or operating courtesy vehicles on any airport property *and not otherwise governed by [a] concession or lease agreement* . . . [i.e., companies that were not on the airport] shall pay the following rates, charges and fees at the Airport:
>
> . . . .
>
> (e) Rental car ground transportation companies or operators *shall collect and pay an Airport access fee* of three dollars ($3.00) for each contract written for vehicle rentals to customers picked up at the Airport and transported from Airport Property.

Ordinance 1131 at pp. 2-3 (March 7, 1989) (emphasis added).

### D. The Adoption of N.R.S. § 482.31575

17. At or about the time of the NAAG Task Force Report, a number of states enacted statutes regulating rental car advertising and charges, including imposing the requirement that all mandatory charges be bundled into the daily rate.

////

////

18. In 1989, the Nevada Legislature enacted such a statute -- Assembly Bill 612, codified at Section 482.31575 of the Nevada Revised Statutes. It provides in pertinent part as follows:

> A short-term lessor shall advertise, quote and charge a rate for leasing a passenger car that includes the entire amount except the taxes, any fees paid to airports and any charges for mileage, that a short-term lessee must pay to lease the car for the period to which the rate applies.

19. As originally proposed, AB 612 would have required all rental car charges except for taxes and mileage charges (which are inherently variable) to be bundled into the base rate. The original version of Section 15 provided, in pertinent part, as follows:

> A short-term lessor shall advertise, quote and charge a rate for leasing a passenger car that includes the entire amount except the taxes and a mileage charge, if any, that a short-term lessee must pay to lease the car for the period to which the rate applies.

20. The legislative history of N.R.S. Section 482.31575 makes clear that the addition of the exception for "any fees paid to airports" was only intended to permit off-airport firms to separately charge renters the $3 "access fee" that the Clark County Airport Authority had recently imposed by ordinance on such renters. That exception to the bundling requirement was not intended to allow rental firms to impose their own surcharges on renters, even if those surcharges were related to airport fees. Indeed, at the time the statute was adopted and for six years thereafter, neither Defendant Hertz nor its on-airport competitors charged "concession recovery fees" to persons who rented cars at airports in Nevada.

21. Notably, the Clark County Ordinance required the off-airport rental companies to collect the access fee from the customer. By contrast, until 1996, the Concession Agreement between McCarran and Hertz expressly precluded Defendant from passing through an unbundled surcharge to recoup the concession fee it was required to pay to the airport. That Agreement stated in pertinent part as follows: "Concessionaire will not be allowed to list concession fees payable to County as a separate item on its customer's rental contracts or invoices."  1994 Operating Agreement at § 1.6.1.5. That provision remained in effect until late 1995, when the rental car firms successfully lobbied the Airport Authority to drop that provision of the Concession Agreement.

### E. Defendant's 1995 Lobbying Efforts

22. By early 1995, Hertz and other on-airport rental car firms were facing increased competition from smaller off-airport companies. Hertz and Avis, among others lobbied the Nevada legislature to adopt SB 396, which would have required off-airport rental car firms to bundle airport "access fees" (which by then were a larger amount) into their quoted and charged rates.

23. In the course of lobbying for SB 396, Hertz admitted its understanding that existing law precluded the on-airport companies from charging an unbundled concession recovery fee. In that regard, Hertz's lobbyist, Scott Craigie, submitted an Exhibit to the Legislature which described Nevada law as follows: "On airport companies are placed at a serious disadvantage: . . . They must roll their [airport] fees into their advertised rate -- their competitors don't."

24. SB 396 was vigorously opposed by the smaller, off-airport rental car companies and was not adopted by the legislature.

### F. Hertz's Unbundling of Its Concession Recovery Fees

25. Following the defeat of SB 396, Hertz changed tack and took the position that existing law allowed it to charge an unbundled "concession recovery fee" to persons who rented cars from it at Nevada airports.

26. Hertz and other on-airport firms argued to McCarran and Reno-Tahoe airport officials that N.R.S. 482.31575 allowed them to separately charge for "fees paid to airports" and that their concession recovery fees fit within that statutory language. McCarran airport authorities apparently concluded that the statute was ambiguous, and agreed in late 1995 to waive the clause in its concession agreements that precluded on-airport companies from surcharging consumers with such a fee. Hertz then lobbied Reno-Tahoe airport officials, who subsequently waived the comparable clause in that airport's rental car concession agreements.

27. Beginning in late 1995 and early 1996, respectively, Hertz began charging an unbundled concession recovery fee in connection with rentals at its McCarran and Reno-Tahoe airport locations. It has quoted and charged consumers such "fees" since that time.

## V.

## **CLASS ACTION ALLEGATIONS**

28. Plaintiffs bring this class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who rented a car from Hertz at a Nevada airport and were charged a base car rental rate as well as a separate concession recovery fee or comparable fee during the period from October 13, 2003 through the time of trial in this action (the "Class").

29. Excluded from the Class are Defendant Hertz, any person, firm, trust, corporation, officer, director or other individual or entity in which Defendant has a controlling interest or which is related to or affiliated with Defendant, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded party. Also excluded from the Class are Plaintiffs' counsel and all judicial officers responsible for any decisions in this matter.

30. The Class is so numerous that joinder of all members is impracticable. Plaintiffs estimate that there are more than one hundred thousand class members.

31. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have no interests which are contrary to or in conflict with those of the Class members they seek to represent. Plaintiffs have retained competent counsel, experienced in complex class action litigation, to further ensure such protection, and they intend to prosecute this action vigorously.

32. Plaintiffs' claims are typical of the claims of the other members of the Class as their claims and damages arise from and were caused by the same unlawful course of conduct.

33. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the Class are likely to be relatively small, the expense and burden of individual litigation make it impractical for the members of the Class to individually redress the wrongs done to them. Plaintiffs know of no difficulty that will be encountered in the management of this litigation by this Honorable Court that would preclude its maintenance as a class action.

34. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are the following:

    a. Whether Defendant has charged car rental fees that are prohibited by N.R.S. § 482.31575;

    b. The appropriate measure of damages to redress such improper charges;

    c. Whether Plaintiffs and the Class are entitled to restitution and injunctive relief; and

    d. Whether Defendant's conduct also violated Nevada's Deceptive Trade Practices Act.

35. Proper and sufficient notice of this action may be provided to Class members through normal methods of direct mail, e-mail, and publication notice. Plaintiffs do not foresee any difficulties in the management of this case as a class action.

## **FIRST CAUSE OF ACTION**

### **(Pursuant to N.R.S. § 482.31575)**

36. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here and further allege as follows.

37. Throughout the Class Period, Defendant Hertz violated N.R.S. § 482.31575 by quoting and charging Plaintiffs and the Class improper surcharges – specifically, by tacking on to the base rate airport concession recovery fees, which are prohibited by the statute.

38. As a direct and proximate result of Defendant's violation of Section 482.31575, Plaintiffs and the Class have suffered damages in an amount to be proven at trial. They bring this action to recover damages and to obtain equitable relief for the violations.

## **SECOND CAUSE OF ACTION**

### **(Pursuant to Nevada's Deceptive Trade Practices Act)**

39. Plaintiffs and the Class incorporate by reference all preceding paragraphs as if fully set forth here and further allege as follows:

Robertson & Benevento
50 W. Liberty Street
Suite 600
Reno, Nevada 89501

1    40.    NRS section 41.600(1) provides that "[a]n action may be brought by any person
2 who is a victim of consumer fraud."

3    41.    NRS section 41.600(2) explains, in part, "'consumer fraud' means . . . [a]
4 deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive."

5    42.    NRS Chapter 598 identifies certain activities which constitute deceptive trade
6 practices; many of those activities occurred in Defendant's dealings with Plaintiffs and the Class.

7    43.    Defendant's violations include, without limitation, the statutory provisions
8 outlined below.

9    44.    Pursuant to NRS section 598.0915(9), "[a] person engages in a 'deceptive trade
10 practice' if, in the course of his business or occupation, he . . . [a]dvertises goods or services with
11 intent not to sell or lease them as advertised."

12    45.    Pursuant to NRS section 598.0915(13), "[a] person engages in a 'deceptive trade
13 practice' if, in the course of his business or occupation, he . . . [m]akes false or misleading
14 statements of fact concerning the price of goods or services for sale or lease, or the reasons for,
15 existence of or amounts of price reductions."

16    46.    Pursuant to NRS section 598.0915(15), "[a] person engages in a 'deceptive trade
17 practice' if, in the course of his business or occupation, he . . . [k]nowingly makes any other false
18 representation in a transaction."

19    47.    Pursuant to NRS section 598.0917(3), "[a] person engages in a 'deceptive trade
20 practice' when in the course of his business or occupation he employs 'bait and switch'
21 advertising, which consists of an offer to sell or lease goods or services which the seller or lessor
22 in truth may not intend or desire to sell or lease . . . [and] . . . [r]equiring other sales or other
23 undisclosed conditions to be met before selling or leasing the advertised goods or services."

24    48.    Pursuant to NRS section 598.0917(7), "[a] person engages in a 'deceptive trade
25 practice' when in the course of his business or occupation he employs 'bait and switch'
26 advertising, which consists of an offer to sell or lease goods or services which the seller or lessor
27 in truth may not intend or desire to sell or lease . . . [and] . . . tendering terms of sale or lease less
28 favorable than the terms advertised."

Robertson & Benevento
50 W. Liberty Street
Suite 600
Reno, Nevada 89501

FIRST AMENDED CLASS ACTION COMPLAINT

11

49. Pursuant to NRS section 598.092(8), "[a] person engages in a 'deceptive trade practice' when in the course of his business or occupation he . . . [k]nowingly misrepresents the legal rights, obligations or remedies of a party to a transaction."

50. Pursuant to NRS section 598.0923(2), "[a] person engages in a 'deceptive trade practice' when in the course of his business or occupation he knowingly . . . [f]ails to disclose a material fact in connection with the sale or lease of goods or services."

51. Pursuant to NRS section 598.0923(3), "[a] person engages in a 'deceptive trade practice' when in the course of his business or occupation he knowingly . . . [v]iolates a state or federal statute or regulation relating to the sale or lease of goods or services."

52. Defendant's conduct, as described herein, constitutes deceptive trade practices and is in violation of, among other statutory provisions and administrative regulations, NRS sections 598.0915, 598.0917, 598.092, and 598.0923.

53. As a direct and proximate result of Defendant's deceptive trade practices, Plaintiffs and the Class have suffered damages in an amount to be proven at trial. They bring this action to recover damages and obtain equitable relief for the violations.

54. Plaintiffs and the Class are also entitled to recover their costs in this action and reasonable attorneys' fees, as allowed by law.

## THIRD CAUSE OF ACTION

**(Pursuant to Common Law Unjust Enrichment)**

55. Plaintiffs and the Class incorporate by reference all preceding paragraphs as if fully set forth here and further allege as follows:

56. Hertz improperly and unlawfully required Plaintiffs to pay concession recovery fees in connection with vehicle rentals. Such charges were and are prohibited by Nevada law.

57. Hertz was benefitted, and Plaintiffs were injured by the foregoing improper and unlawful charges.

58. It would be unjust and inequitable to permit Hertz to retain the benefit of these unlawful charges.

59. Plaintiffs are entitled to restitution of such unlawful charges.

**PRAYER FOR RELIEF**

WHEREFORE, the representative Plaintiffs demand judgment individually and on behalf of the Class as follows:

A. Determining that the instant action is a proper class action maintainable under Rule 23, F.R.C.P., and designating Plaintiffs as class representatives and their counsel as counsel for the Class;

B. Awarding damages against Defendant and in favor of the representative Plaintiffs and all members of the Class in the full amount of the injuries determined to have been sustained by them;

C. Awarding Plaintiffs and the Class restitution of any improper charges as well as appropriate equitable relief, specifically including a preliminary and permanent injunction prohibiting Defendant from quoting and or charging any of the fees prohibited by Section 482.31575; and

D. Awarding Plaintiffs and members of the Class the costs of this suit, including reasonable attorneys' fees, experts' fees and other disbursements; and such other and further relief as may be just and proper.

Dated: May 27, 2009.

```
                                        ROBERTSON & BENEVENTO
                                        50 West Liberty Street, Suite 600
                                        Reno, Nevada 89501
                                        (775) 329-5600


                                        By: /S/ G. David Robertson
                                            G. David Robertson, Esq.
                                            Attorneys for Plaintiff
OF COUNSEL:

David B. Zlotnick, Esq., CA SBN 195607   Susan S. Thomas, Esq.
LAW OFFICES OF DAVID B. ZLOTNICK         Arthur Stock, Esq.
625 Broadway, Suite 635                  BERGER & MONTAGUE, P.C.
San Diego, CA 92101                      1622 Locust Street
TEL: (619) 232-0331                      Philadelphia, PA 19103
FAX: (619) 232-4019                      TEL: (215) 875-3000
                                         FAX: (215) 875-4636
```

COUNSEL FOR PLAINTIFFS AND THE CLASS

---

FIRST AMENDED CLASS ACTION COMPLAINT

13

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b) and Local Rule 5-4, I hereby certify that I am an employee of Robertson & Benevento, over the age of eighteen, and not a party to the within action. I further certify that on the 27th day of May, 2009, I electronically filed FIRST AMENDED CLASS ACTION COMPLAINT [VIOLATIONS OF NRS § 482.31575 AND THE DECEPTIVE TRADE PRACTICES ACT AND COMMON LAW CLAIM FOR UNJUST ENRICHMENT] and thus, pursuant to LR 5-4, caused same to be served by electronic mail on the following Filing Users:

William E. Peterson, Esq. (wep@morrislawgroup.com)

William E. Peterson, Esq. (wep@morrislawgroup.com)

Peter S. Hecker, Esq. (phecker@sheppardmullin.com)

Anna S. McLean, Esq. (AMcLean@sheppardmullin.com)

David B. Zlotnick, Esq. (david@kkbs-law.com)

Arthur Stock, Esq. (astock@bm.net)

Dated this 27th day of May, 2009.

*/s/ Richard D. Williamson*
An Employee of Robertson & Benevento

Robertson & Benevento
50 W. Liberty Street
Suite 600
Reno, Nevada 89501