1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                                DISTRICT OF NEVADA

8                                       * * *

9   JANET SOBEL and DANIEL DUGAN,          )
    Ph.D., individually and on behalf of all others  )
10  similarly situated,                    )              03:06-cv-00545-LRH-RAM
                                           )
11                  Plaintiffs,            )
                                           )
12  v.                                     )              ORDER
                                           )
13  THE HERTZ CORPORATION, a Delaware      )
    corporation,                           )
14                                         )
                    Defendant.            )
15                                         )
                                           )
16  _____ )

17          Before the court is Plaintiffs Janet Sobel and Daniel Dugan, Ph.D.'s (collectively

18  "Plaintiffs") Motion for Summary Judgment (#78[1]).  The Hertz Corporation ("Hertz") has filed an

19  opposition (#93) to which Plaintiffs replied (#100).  Also before the court is Hertz's Motion for

20  Summary Judgment (#81).  Plaintiffs have filed an opposition (#89) to which Hertz replied (#103).

21  Hertz has also filed a Motion to Strike (#97).  Plaintiffs have filed an opposition (#99) to which

22  Hertz replied (#105).[2]

23  ///

24  _____

25          [1]Refers to the court's docket entry number.

26          [2]Because the court has not relied upon any of the statements or documents to which Hertz objects in
    the motion to strike, the court will deny the motion as moot.

1    **I.      Facts and Procedural History**

2           This is a class action filed on behalf of persons who have rented cars from Hertz at airports

3    in the State of Nevada.  Hertz, a national rental car company that transacts business in Nevada, is a

4    Delaware corporation with its principal place of business in New Jersey.

5           The material facts of this case are largely undisputed.  To operate at airport locations, rental

6    car companies agree by contract to pay concession fees to the airports.  At the Reno-Tahoe

7    International Airport in Reno and the McCarran International Airport in Las Vegas, Hertz

8    contracted to pay a percentage of its gross revenues to the airports as concession fees.  Hertz

9    recovers these fees from its customers as surcharges that it labels "concession recovery fees."  The

10   amounts of these surcharges are determined by Hertz, and the fees represent nothing more than an

11   attempted recoupment of one of Hertz's ordinary operating expenses.[3]  Since the mid-to-late 1990s,

12   Hertz has "unbundled" the surcharges from its base rental rate.  In other words, the base rental rate

13   quoted to customers does not include the separate airport "concession recovery fee" that Hertz

14   charges customers.

15          Plaintiffs reserved rental cars from Hertz over the telephone.  At the time of the

16   reservations, Hertz representatives quoted Plaintiffs an approximate total, which included taxes,

17   fees, and surcharges.  Upon obtaining their cars, Plaintiffs each signed a "Rental Record" that

18   separately disclosed the airport concession recovery fee and provided an approximate total price.

19   Plaintiffs paid their rental charges in full without protest.

20          Plaintiffs allege Hertz's conduct violated section 482.31575 of the Nevada Revised Statutes

21   and the Nevada Deceptive Trade Practices Act.  In addition, Plaintiffs allege a claim for unjust

22

23

24          [3]Hertz charged Plaintiff Sobel, who rented her vehicle from the McCarran International Airport in Las
25   Vegas, a concession recovery fee of 10%.  Hertz charged Plaintiff Dugan, who rented his vehicle from the
     Reno-Tahoe International Airport in Reno, a concession recovery fee of 11.54%

26

1  enrichment.[4]

2  **II.    Legal Standard**

3          Summary judgment is appropriate only when "the pleadings, depositions, answers to

4  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

5  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

6  law." Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together

7  with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable

8  to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

9  587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

10         The moving party bears the burden of informing the court of the basis for its motion, along

11 with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*,

12 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party

13 must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could

14 find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

15 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

16         To successfully rebut a motion for summary judgment, the non-moving party must point to

17 facts supported by the record that demonstrate a genuine issue of material fact.  *Reese v. Jefferson*

18 *Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might affect the

19 outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

20 (1986).  Where reasonable minds could differ on the material facts at issue, summary judgment is

21 not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute regarding a material

22

23         [4]On November 17, 2008, Plaintiffs filed a motion to amend their complaint (#69), which the court
24 granted on May 21, 2009 (#107).  Plaintiffs then filed their first amended complaint (#108) on May 27, 2009.
   Although Plaintiffs filed the first amended complaint after the parties submitted their briefing on the motions
25 for summary judgment, the parties appear to address their briefs to the complaint as amended.  Accordingly,
   the first amended complaint (#108) is the controlling pleading.

26

fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff.  *See id.* at 252.

Where, as here, parties file cross-motions for summary judgment on the same claims before the court, the court must consider each party's motion separately and on its own merits.  *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted).  "[T]he court must consider the appropriate evidentiary material identified and submitted in support of both motions, and oppositions to both motions, before ruling on each of them."  *Id.* at 1134.

**III.    Hertz's Motion for Summary Judgment**

In the complaint, Plaintiffs assert the following claims for relief: (1) a violation of Nevada Revised Statutes section 482.31575; (2) false and deceptive trade practices in violation of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.005-598.992; and (3) unjust enrichment.  Hertz seeks summary judgment on each of these claims.

**A.  Voluntary Payment Doctrine**

Hertz first argues the voluntary payment doctrine bars all of Plaintiffs' claims.  Hertz contends, "Plaintiffs' claims are barred in their entirety . . . [because] Sobel and Dugan paid their rental charges with full knowledge of the fee they now claim is improper." (Hertz's Mot. Summ. J. (#81) 23.)

In *Randall v. County of Lyon*, the Nevada Supreme Court recognized the voluntary payment doctrine and stated, "The rule is well settled that money voluntarily paid, with full knowledge of all the facts, although no obligation to make such payment existed, cannot be recovered back." 14 P. 583, 584 (Nev. 1887).  Since that decision, however, the Nevada Supreme Court has not addressed the application of the doctrine.  Accordingly, the court must use its best judgment to predict how

1   the Nevada Supreme Court would apply the doctrine using "intermediate appellate court decisions,

2   decisions from other jurisdictions, statutes, treatises, and restatements as guidance."  *See Strother v.*

3   *S. Cal. Permanente Med. Group*, 79 F.3d 859, 865 (9th Cir. 1996) (citation omitted).

4          In arguing that the voluntary payment doctrine is a viable affirmative defense in this case,

5   Hertz relies primarily on *Huch v. Charter Communications Inc.*, No. ED89926, 2008 WL 1721868,

6   2008 Mo. App. LEXIS 531 (Mo. Ct. App. April 15, 2008) ("*Huch I*").  There, the Missouri Court

7   of Appeals held that the voluntary payment doctrine barred the plaintiffs from recovering under the

8   Missouri Merchandising Practices Act amounts billed by and paid to the defendant telephone

9   company for television channel guides the plaintiffs did not request.  In relevant part, the court

10  found that (1) the doctrine applied to claims seeking to recover allegedly illegal fees or surcharges

11  and (2) the consumer-based public policy behind the Merchandising Practices Act did not bar the

12  doctrine's application.

13         Since the parties submitted their briefs, however, the Missouri Supreme Court has issued a

14  superceding opinion.  *See Huch v. Charter Communications, Inc.*, 290 S.W.3d 721 (Mo. 2009)

15  ("*Huch II*").  In reversing the decision of the court of appeals, the court in *Huch II* first stated that

16  because the fundamental purpose of the Merchandising Practices Act is to protect consumers,

17  "certain legal principles are not available to defeat claims authorized by the act."  *Id.* at 725

18  (citation omitted).  The court found this includes the voluntary payment doctrine, which is a

19  "principle based on waiver and consent that is not always available when its application would be

20  contrary to public policy . . . ."  *Id.* at 727.  Accordingly, the court held, "In light of the legislative

21  purpose of the [M]erchandising [P]ractices [A]ct, the voluntary payment doctrine is not available as

22  a defense to a violation of the act."  *Id.*

23         There appears to be a split in authority concerning whether the voluntary payment doctrine

24  is a permissible defense where its application would be contrary to public policy.  Several courts

25  have issued rulings consistent with *Huch II*.  *See Indoor Billboard/Wash. Inc. v. Integra Telecom of*

26

5

1    *Wash., Inc.*, 170 P.3d 10, 24 (Wash. 2007) ("[T]he voluntary payment doctrine is inappropriate as

2    an affirmative defense in the [Consumer Protection Act] context, as a matter of law, because we

3    construe the [Act] liberally in favor of plaintiffs."); *Eisel v. Midwest Bankcentre*, 230 S.W.3d 335,

4    339-40 (Mo. 2007) (because voluntary payment doctrine is based on waiver and consent, defendant

5    could not assert defense to claim that it engaged in the unauthorized practice of law in violation of

6    statute enacted for the protection of public); *Ramirez v. Smart Corp.*, 863 N.E.2d 800, 810 (Ill.

7    App. Ct. 2007) ("[T]his state has an interest in transactions that violate 'statutorily-defined public

8    policy.'  The effect of such transgressive acts, generally speaking, is that the voluntary payment rule

9    will not be applicable."); *Pratt v. Smart Corp.*, 968 S.W.2d 868, 872 (Tenn. Ct. App. 1997) ("[T]he

10   State has an interest in transactions that involve violations of statutorily defined public policy, and,

11   generally speaking, in such situations, the voluntary payment rule will not be applicable.").

12       In contrast, other courts have held that the voluntary payment doctrine applies to bar

13   statutory fraud and consumer protection claims.  *See Huch I*, No. ED89926, 2008 WL 1721868,

14   2008 Mo. App. LEXIS 531 (Mo. Ct. App. April 15, 2008) (summarizing cases); *see also Putnam v.*

15   *Time Warner Cable of Se. Wis.*, 649 N.W.2d 626, 637 (Wis. 2002) (voluntary payment doctrine

16   barred all claims for monetary damages, including violation of Wisconsin Trade Practice Act);

17   *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1334 n.8 (Ill. App. Ct. 1995) ("The voluntary

18   payment doctrine seemingly applies to any cause of action which seeks to recover a payment made

19   under a claim of right whether that claim is premised on a contractual relationships; a fraudulent

20   representation; [or] a statutory obligation . . . .")

21       The court finds the reasoning of *Huch II* and the cases in line with *Huch II* convincing.  The

22   Legislature enacted both Nevada Revised Statutes section 482.31575 and the Deceptive Trade

23   Practices Act primarily for the protection of consumers.  (*See* Pls.' Req. for Judicial Notice (#18),

24   May 9, 1989, Minutes of the Nevada State Legislature, Ex. A at 11.)  As the court stated in *Huch II*,

25   the Legislature, having enacted "paternalistic legislation designed to protect those that could not

26

otherwise protect themselves, . . . would not want [those] protections . . . to be waived by those deemed in need of protection."  290 S.W.3d at 727.  "To allow [the defendant] to avoid liability for [an] unfair practice through the voluntary payment doctrine would nullify the protections of the act and be contrary to the intent of the legislature."  *Id.*  Accordingly, the court finds as a matter of law that Hertz cannot rely on the voluntary payment doctrine as a defense to Plaintiffs' claims.

**B.  Nevada Revised Statutes Section 482.31575**

Nevada Revised Statutes section 482.31575 governs the manner by which car rental companies must advertise, quote, and charge customers.  At the time of the alleged violations at issue in this case, section 482.31575 read,

> A short-term lessor shall advertise, quote and charge a rate for leasing a passenger car that includes the entire amount except the taxes, any fees paid to airports and any charges for mileage, that a short-term lessee must pay to lease the car for the period to which the rate applies.

Nev. Rev. Stat. § 482.31575.

Plaintiffs allege Hertz violated section 482.31575 by "quoting and charging Plaintiffs . . . improper surcharges . . . ."  (First Am. Compl. (#108) ¶ 37.)  In particular, Plaintiffs contend Hertz imposed surcharges in violation of the statute when it "tack[ed] on to the base rate airport concession recovery fees . . . ."  (*Id.*)

In addressing Hertz's Motion to Dismiss (#12), this court previously considered the meaning and construction of section 482.31575.  There, the parties disputed whether the statute's exception for "any fees paid to airports" was limited to fees that are directly charged to rental car customers by airports or whether the phrase included fees rental car companies pay to airports and then surcharge to customers.  After finding the statute ambiguous and reviewing the statute's language, its legislative history, and considerations of public policy, the court concluded that the words "fees paid to airports" referred to fees paid directly to airports by renters.  Thus, the court found that section 482.31575 required rental companies to:

> "advertise and quote the entire amount the customer must pay to rent an automobile

with the exception of taxes, airport fees, and mileage charges that are imposed directly upon the customer. In conformance with the statute, the on-airport rental company may not surcharge its customers above advertised and quoted base rates for operating expenses representing concession fees paid to Nevada airports. The Nevada Legislature intended those expenses to be included within the full rental amount advertised and quoted by the company."

(Order (#22) at 6.)[5]

Since the court issued its order in September of 2007, the Nevada Legislature amended section 482.31575, as well as other provisions of Nevada law governing the short-term lease of passenger vehicles. The court will first consider how these amendments affect the motion now before the court. The court will then consider Hertz's arguments in support of its motion for summary judgment.[6]

### 1.    Applicability of the Amendments to Section 482.31575

Effective October 1, 2009, in relevant part, section 482.31575 now reads as follows:

Except as otherwise provided in subsection 2, a short-term lessor shall advertise, quote and charge a rate for leasing a passenger car which includes the entire amount that a

---

[5]On September 13, 2007, this court denied a motion to dismiss filed by Hertz. Following the issuance of its order, the court granted Hertz leave to file an interlocutory appeal of the court's ruling (#35). The Ninth Circuit Court of Appeals, however, declined to hear the matter (#41).

[6]Hertz also asks that the court reconsider its prior construction of section 482.31575. Plaintiffs counter the law of the case doctrine bars reconsideration of the court's ruling on the motion to dismiss. The case law in the Ninth Circuit "leaves some doubt concerning whether the law of the case doctrine constrains a district court's discretion to reconsider its own rulings prior to final judgment." *Mark H. v. Lemahieu*, 513 F.3d 922, 932 n.8 (9th Cir. 2008) (citing *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001) (holding law of the case doctrine is "wholly inapposite" when district court reconsiders an order over which it retains jurisdiction"); *United States v. Alexander*, 106 F.3d 874, 876-77 (9th Cir. 1997) (holding district court barred from reconsidering, after mistrial and change of judges, previous ruling on motion to suppress in absence of changed law or circumstances); *United States v. Smith*, 389 F.3d 944, 949-50 (9th Cir. 2004) (citing *Santa Monica Bay Keeper* and holding doctrine does not apply when district court reconsiders order over which it retains jurisdiction).

The court need not resolve this issue here. Even if the doctrine did apply, the court sees no reason to reconsider its prior ruling. Hertz argues the court should reconsider its ruling because the evidence now demonstrates that Hertz disclosed the concession recovery fee to Plaintiffs. Thus, Hertz contends, customers have full, accurate information regarding their car rental rates. However, Hertz's disclosure of the recovery fee does not change or otherwise affect the court's previous finding that the statute prevents car rental companies from imposing the concession fee as a surcharge.

short-term lessee must pay to lease the car for the period to which the rate applies, except taxes, charges for mileage and any fees paid to airports, including, without limitation, any concession fees which the short-term lessor pays to do business at an airport and which he charges to the short-term lessee.

2009 Nev. Stat. 2143.  Thus, the Nevada Legislature amended the statute to provide that the phrase "fees paid to airports" includes airport concession recovery fees.  Under the amended statute, rental car companies need not include the concession recovery fees in their base rate and instead are free to impose the concession fee as a surcharge on top of the base rate.

The court must determine the effect on this case of the Legislature's enactment of Senate Bill 234.  "[A] statute that merely clarifies, rather than changes, existing law may be applied to transactions predating its enactment." *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1079 (9th Cir. 2005) (internal quotation marks omitted) (quoting *W. Sec. Bank v. Superior Court*, 933 P.2d 507, 514 (Cal. 1997)).  Nonetheless, "when the Legislature substantially amends a statute, it is ordinarily presumed the Legislature intended to change the law." *Pub. Employees' Benefits Program v. Las Vegas Metro. Police Dep't*, 179 P.3d 542, 554 (Nev. 2008) (citations omitted).  Thus, "when the Legislature makes a substantial change in a statute's language, it indicates a change in the legislative intent." *Metz v. Metz*, 101 P.3d 779, 783-84 (Nev. 2004) (citation omitted).  The circumstances surrounding the amendment, however, may rebut that presumption. *Pub. Employees' Benefits Program*, 179 P.3d at 554  (citation omitted).  Relevant circumstances include express declarations of the legislature's intent and whether the legislature's changes were a prompt reaction to the "emergence of a novel question of statutory interpretation . . . ." *W. Sec. Bank*, 933 P.2d at 514-15 (Cal. 1997) (citations omitted).

Here, nothing in the circumstances surrounding the amendment to section 482.31575 suggests that the Legislature intended to merely clarify, rather than change, the statute.  The legislative record neither refers to this court's September, 2007, interpretation of the statute nor includes any express declarations suggesting that, in amending the statute, the Legislature sought to

clarify the meaning of the statute.  To the contrary, the statements made in conjunction with the consideration of the amendment provide that Senate Bill 234 would "change" or "revise" existing law.  *See* 2009 Nev. Stat. 2140 (describing Senate Bill 234 as "[A]n act . . . revising certain provisions governing fees charged by a short-term lessor of passenger cars . . . [and] making various changes concerning the disclosure of certain information relating to the short-term lease of a passenger car . . . ."; Nev. S. Comm. Min., Comm. on Taxation, 175th Session, Exhibit H (March 26, 2009) (testimony of Lesley Pittman, representative of Nevada Rental Car Group 1, in support of S.B. 234) ("The bill you have before you makes several changes to Nevada law governing the short-term leasing of passenger vehicles.")

Likewise, there is no suggestion in the legislative history that the Legislature intended Senate Bill 234 to apply retroactively.  "In Nevada, as in other jurisdictions, statutes operate prospectively, unless the Legislature clearly manifests an intent to apply the statute retroactively, or it clearly, strongly, and imperatively appears from the act itself that the Legislature's intent cannot be implemented in any other fashion" *Pub. Employees' Benefits Program*, 179 P.3d at 553 (internal quotation marks and citations omitted).

"[A] statute has retroactive effect when it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past. *Id.* at 553-554 (internal quotation marks omitted) (quoting *INS v. St. Cyr*, 553 U.S. 289, 321 (2001).  Thus, "even though a statute operates only from the time of its enactment, it is retroactive if it impairs vested rights and past transactions." *Id.* at 554 (internal quotation marks and citation omitted).  When determining whether a statute applies retroactively, courts are "guided by fundamental notions of fair notice, reasonable reliance, and settled expectations." *Id.* (internal quotation marks and citations omitted).

In this case, no retrospective intent appears in Senate Bill 234.  Had the Legislature sought to make the amendments retroactive, it certainly could have expressed that intent.  Instead, the

statute became effective October 1, 2009, and nothing in the amendment itself requires section 482.31575 to apply to transactions that occurred prior to the effective date.  Accordingly, the court will apply the pre-amendment version of section 482.31575 to this case.

### 2.        The Meaning of "Rate" in Section 482.31575

In its motion for summary judgment, Hertz contends that its pricing practices complied with the court's previous interpretation of the statute because Plaintiffs received an "all-in rate quote" that included the airport concession recovery fee.  Thus, Hertz attempts to distinguish between its "base rate" and its "all-in rate."  According to Hertz, "rate" as used in the statute need not be the base rate, and instead can be an "all-in rate" that includes the airport concession recovery fee, as well as other fees and taxes.

"It is well established that when the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself." *Nelson v. Heer*, 163 P.3d 420, 425 (Nev. 2007) (internal quotation marks and citations omitted).  "An ambiguous statute, however, which 'is capable of being understood in two or more senses by reasonably informed persons,' or one that otherwise does not speak to the issue before the court, may be examined through legislative histories, reason, and considerations of public policy to determine the Legislature's intent." *Id*. (quoting *McKay v. Bd. of Supervisors*, 730 P.2d 438, 442 (Nev. 1986)).

The court finds that, as to the meaning of the term "rate," section 482.31575 is plain and unambiguous.  A "rate" is defined as a "reckoned value[,]" a "fixed ration between two things[,]" or a "charge, or price fixed according to a ratio, scale, or standard[.]" Merriam-Webster Online Dictionary, *available at* www.merriam-webster.com/dictionary/rate.  Similarly, Black's Law Dictionary defines the term "rate" as a "[p]roportional or relative value[.]"  Black's Law Dictionary 1289 (8th ed. 1999).

As the pricing examples the parties' provide indicate, rental car companies generally state

11

their "rate" in terms of the cost to the renter per day.  This use of the term "rate" is consistent with the term's definition, which is essentially a fixed charge associated with a defined time period.  In other words, the "rate" is the base amount charged per day.

Hertz's arguments to the contrary are not convincing.  Hertz contends that because the statute did not use the term "base rate," Hertz was free to provide both a base rate and an all-in rate that reflects the entire amount charged for the rental.  However, given the plain and ordinary meaning of the term "rate," that the Legislature failed to use the term "base rate" is not dispositive.

Hertz also notes that discussions contained in section 482.31575's legislative history refer to the "quoted rate," "entire mandatory rate," "base advertised rate," and "price quotation" interchangeably.  (Hertz's Mot. Summ. J. (#81) 13 (quoting Pls.' Req. Judicial Notice (#18), Ex. A at APP0003, APP0015, APP0037, APP0068).)  When viewed in context, the court sees no inconsistency between the court's interpretation of the statute's meaning and the terms used by members of the Legislature.  Indeed, the legislative history supports the court's reading.

For example, the legislative report concerning section 482.31575 states, in relevant part, that the statute addresses the "inclusion of 'mandatory' charges in the base advertised rate . . . ." (Pls.' Req. Judicial Notice (#18), Ex. A at APP0003.)  It then goes on to state, "[T]he quoted rate must include the entire mandatory rate to rent a car except for taxes and mileage charges."  (*Id.* at APP0015.)  Similarly, the legislative reports states that the statute "requires that the quoted rate include the entire mandatory rate."  (*Id.* at APP0037.)  That the Legislature considered "base advertised rate" and "entire mandatory rate" interchangeable suggests that the Legislature intended the "base advertised rate" to include all charges except those specifically identified in the statute.

Moreover, Hertz's reading of the statute would render the statute's reference to "taxes, airport fees, and mileage charges" meaningless.  *See Metz*, 101 P.3d at 792 ("No part of a statute should be rendered nugatory, nor any language turned to mere surplusage, if such consequences can properly be avoided.").  If the statute were read to permit rental car companies to surcharge the

12

concession fee on top of the base rate, there would be no need to separately identify taxes, airport fees, and mileage charges as permissible additional charges because the total charge would include the taxes, airport fees, and mileage charges regardless.

The recent changes to section 482.31575 and section 482.3158 further indicate that "rate" as used in the statute is distinguishable from the total price. The amended version of section 482.31575 includes an additional section that provides as follows:

> The requirement of subsection 1 do not apply to . . . additional charges imposed pursuant to subsection 1 of NRS 482.3158 which are included in the quotation of an estimated total price for the short-term lease or which are separately identified and clearly disclosed in the lease agreement."

2009 Nev. Stat. 2143. The amended version of section 482.3158 adds a subsection explicitly providing that rental companies may impose an additional charge to "recover costs incurred by the short-term lessor as a condition of doing business, including, without limitation[,] . . . [c]oncession, access and other fees imposed on the short-term lessor by an airport or other facility for the privilege of operating at the facility." 2009 Nev. Stat. 2144. The amended version of section 482.3158 further provides that rental companies wishing to impose an additional charge for concession and other fees imposed by an airport must (1) when the lease begins, provide the renter with a lease agreement that discloses "all charges for the entire lease . . ." and (2) either when the reservation is made, provide an estimate of the "total of all charges for the entire lease" or, when the rental company provides a price quote, disclose the existence of any separately stated additional charges. 2009 Nev. Stat. 2144.

By adding language explicitly referring to the "quotation of an estimated total charge" and the disclosure of "all charges for the entire lease[,]" the amendments to sections 482.31575 and 482.3158 make clear that the "rate" referred to in subsection one of 482.31575 is distinct from the total, "all-in" charge for the rental. This is consistent with a plain reading of the statute as it appeared before the amendments.

13

1    For these reasons, the court finds as a matter of law that "rate" as used in the version of

2    section 482.31575 in effect during the period relevant to this case referred to the base rate

3    advertised, quoted, and charged to short-term lessees.

4              **3.        Hertz Violated Section 482.31575**

5    Section 482.31575 requires rental car companies to charge a "rate" that includes "all

6    charges[.]" That the statute specifically identified taxes, fees paid to airports, and charges for

7    mileage indicates that these were the only additional charges rental car companies were permitted to

8    charge on top of the daily rate.[7]  *See Sonia F v. Eighth Judicial Dist. Court*, 215 P.3d 705, 708

9    (Nev. 2009) (citation omitted) ("the mention of one thing implies the exclusion of another.").  Thus,

10   the plain terms of the statute required rental car companies to advertise, quote, and charge

11   customers a base rate that included all charges except for taxes, charges for mileage, and fees paid

12   to airports.  It is undisputed that Hertz failed to include the concession recovery fee in its base rate

13   and instead passed on the concession fee as a surcharge on top of the base rate.  As such, no genuine

14   issues of material fact remain concerning whether Hertz's pricing practices violated section

15   482.31575.  Summary judgment in Hertz's favor is therefore not appropriate.

16             **4.        First Amendment**

17   Finally, Hertz contends that if the court reads section 482.31575 to prohibit Hertz from

18   separately disclosing the airport concession recovery fee in addition to the total price, such a reading

19   would violate its rights to free speech and expression.  In particular, Hertz argues that this

20   information constitutes commercial speech protected from unwarranted governmental regulation by

21   the federal and state constitutions.

22   _____

23        [7]The court recognizes that by identifying additional charges that the rental companies may impose
24   outside of taxes, fees paid to airports, and mileage charges, section 482.3158 includes several exceptions to the
     rule outlined in section 482.31575.  Each of these charges, however, is one companies may impose on an
25   individualized basis depending on the characteristics and choices of the short-term lessee.  In contrast to charges
     that rental companies impose on all short-term lessees, including the concession fee, it would not be appropriate
26   for rental companies to include these optional charges in the base rate.

                                                    14

Commercial speech is "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980) (citations omitted). "The First Amendment, as applied to the states through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation."[8] *Id.* (citation omitted). Nonetheless, the United States Supreme Court has recognized the "commonsense distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech." *Id.* at 562 (internal quotation marks and citations omitted). Accordingly, the Constitution provides less protection to commercial speech than it does to other constitutionally guaranteed expression. *Id.* (citation omitted).

In *Central Hudson*, the Supreme Court set forth the following four-part test to determine the constitutionality of government regulation of commercial speech: (1) whether the expression concerns unlawful activity or is misleading; (2) whether the government has a substantial interest in support of its regulation; (3) whether the regulation directly and materially advances that interest; and (4) whether the regulation is narrowly drawn. *Id.* at 566.

Assuming the speech at issue here is only potentially misleading, consideration of the remaining *Central Hudson* factors confirms that section 482.31575 does not violate Hertz's First Amendment rights. First, as expressed in the statute's legislative history, the State of Nevada has a substantial interest in protecting consumers from misleading advertising by rental car companies. Second, by requiring the advertised rate to reflect certain costs of the rental car company, the statute ensured that rental car companies could not deceive short-term lessees into believing they are required to pay additional charges that are, in reality, merely a part of the rental car company's

---

[8]Because Article 1, Section 9 of the Nevada Constitution "affords no greater protection to speech activity than does the First Amendment to the United States Constitution," the analysis under the Nevada Constitution and the analysis under the First Amendment are identical. *See Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 100 P.3d 179, 187 (Nev. 2004).

operating costs.  Moreover, while section 482.31575 required that the concession recovery fee be included in the base rate advertised, quoted, and charged to short-term lessees, the statute did not prevent Hertz from disclosing to consumers its costs relating to the fee.  Despite Hertz's repeated suggestion that the court's reading of the statute would "ban . . . Hertz [from] disclosing the airport concession recovery fee in addition to listing the total rental price[,]" nothing in the statute prohibited Hertz from disclosing and itemizing its operating costs included in the base rate.  Finally, the restrictions imposed by section 482.31575 are a "reasonable fit between the legislature's ends and the means chosen to accomplish those ends."  *Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1111 (9th Cir. 2004) (citation omitted).  Because each of the *Central Hudson* factors is satisfied, the statute as interpreted did not violate Hertz's First Amendment rights.

### C.  False and Deceptive Trade Practices

Plaintiffs also allege Hertz's separate disclosure of the airport concession fee constitutes an unfair trade practice under Nevada's Deceptive Trade Practices Act ("DPTA").  Nevada Revised Statutes section 41.600 provides, "An action may be brought by any person who is a victim of consumer fraud.  As used in this section, 'consumer fraud' means: . . . A deceptive trade practice as defined in NRS 598.0915 to NRS 598.0925 . . . ."  To establish a violation of the DPTA, the plaintiff must demonstrate that (1) an act of consumer fraud by the defendant (2) caused (3) damages to the plaintiff.  *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 657-58 (D. Nev. 2009) (noting Nevada Supreme Court has not specified the elements of a DPTA claim and predicting how the court would rule).

At this time, the parties appear to dispute only whether Hertz engaged in an unfair or deceptive act or practice.  As a preliminary matter, the court rejects Plaintiffs' contention that because Hertz violated section 482.31575, Hertz has per se violated the DPTA.  Plaintiffs rely on Nevada Revised Statutes section 598.0923(3), which provides, "A person engages in a 'deceptive trade practice' when in the course of his business or occupation he knowingly: . . . [v]iolates a state

1   or federal statute or regulation relating to the sale or lease of goods or services."  Nev. Rev. Stat. §

2   598.0923(3).  In light of the substantial uncertainty surrounding section 482.31575's requirements, it

3   would be difficult to establish that Hertz intentionally circumvented the requirements of the statute.

4   Indeed, Plaintiffs have failed to present evidence suggesting that Hertz knowingly violated section

5   482.31575.

6          Similarly, to the extent Plaintiffs base their DPTA claim on Hertz's advertisements, the

7   court will grant summary judgment.  Nevada Revised Statutes section 598.0905 defines

8   "advertisement" as the "attempt by publication, dissemination, solicitation or circulation to induce,

9   directly or indirectly, any person to enter into any obligation to lease or to acquire any title or

10  interest in any property."  In this case, it is undisputed that Plaintiffs booked their reservations over

11  the telephone and both Plaintiffs conceded at their depositions that they neither saw nor relied upon

12  any Hertz advertising prior to booking their rentals.

13         The heart of Plaintiffs' DPTA claim is that Hertz's practice of quoting a rental rate that does

14  not include the concession fee and instead listing the fee with the taxes and other fees is misleading.

15  Hertz notes that courts addressing the issue of whether itemizing a concession recovery fee as a

16  separate charge not included in the daily rental rate is unfair or deceptive have consistently held that

17  the practice is not unfair or deceptive where the fee is disclosed at the time of the rental.  *See Berry*

18  *v. Budget Rent A Car Sys.*, 497 F. Supp. 2d 1361, 1367 (S.D. Fla. 2007) ("the simple fact of the

19  [concession recovery fee], and its itemization as a separate charge, is not fair or deceptive because it

20  was clearly disclosed at the time of the rental . . . ."); *Speyer v. Avis Rent A Car Sys.*, 415 F. Supp.

21  2d 1090, 1099-1100 (S.D. Cal. 2005) ("Because Defendants disclose the concession fees, as well as

22  the total cost of the rental, Plaintiffs' allegation that Defendants' practices are unfair . . . lacks

23  merit."); *Robinson v. Avis Rent A Car Sys.*, 22 P.3d 818, 826 (Wash. Ct. App. 2001) ("there was no

24  unfair or deceptive act here because the car rental companies disclosed the concession fee to the

25  consumers in its telephone quotations.")

26                                        17

As the court explained in *Robinson*, "[Q]uoting a car rental price that does not include a concession fee that is also charged would have the capacity to deceive the purchasing public, absent disclosure of that fee.  That is because the lack of disclosure would fail to appraise consumers of the true price of the car rental."  22 P.3d at 824.  Here, as in the cases cited above, Plaintiffs do not dispute that when they made their reservations, Hertz representatives quoted a per day rate, as well as "an approximate total including taxes, fees and surcharges."  (Hallman Decl. (#83), ¶¶ 4, 5.)  There is likewise no evidence suggesting that when Plaintiffs picked up and paid for their rentals, Hertz increased the amount of these taxes, fees and surcharges.

Thus, when Plaintiffs made their reservations, Hertz quoted Plaintiffs the full price of their rentals.  By informing Plaintiffs that the price included all taxes, fees, and surcharges, Hertz notified Plaintiffs that the total rental price included additional charges on top of the base rate.  Plaintiffs were free to, but did not, inquire at that time about the source and specific amounts of each tax, fee, and surcharge.  In light of Hertz's full disclosure of the total price at the time of the reservations, the court finds that Hertz's practice was not deceptive within the meaning of the DPTA.  Summary Judgment as to the DPTA claim is therefore appropriate.

**D.  Unjust Enrichment**

"Unjust enrichment occurs when ever a person has and retains a benefit which in equity and good conscience belongs to another."  *Unionamerica Mortgage and Equity Trust v. McDonald*, 626 P.2d 1272, 1274 (Nev. 1981) (citation omitted).  Hertz contends Plaintiffs' unjust enrichment claim must fail because the rental agreements govern Plaintiffs' rights.  "An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement."  *LeasePartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (citation omitted).

Neither party has provided the full terms and conditions of the rental agreements to the court.  As a result, at this time the court cannot determine the extent to which the rental agreements

18

might govern Plaintiffs' recovery of damages in this case.  The court will grant the parties leave to

file renewed motions for summary judgment addressing this issue.

**IV.    Plaintiffs' Motion for Summary Judgment**

Plaintiffs seek summary judgment as to their claim that Hertz violated Nevada Revised

Statutes section 482.31575.  Above, the court addressed all of the issues asserted in Plaintiffs'

Motion for Summary Judgment and contested in the subsequent briefing.  Most importantly, the

court has concluded as a matter of law that section 482.31575 required rental car companies to

include the concession recovery fee in the base rate that the companies advertised, quoted, and

charged to short-term lessees during the period relevant to this case.  Because there are no disputed

issues of fact concerning Hertz's non-compliance with this requirement, the court will grant

Plaintiffs' Motion for Summary Judgment on this issue.

Plaintiffs seeks "damages equal to the 'Airport Concession Recovery Fees' listed on their

rental agreements" and a permanent injunction restraining Hertz from charging short-term lessees a

concession fee not included in the daily rate.  (Pls.' Mot. Summ. J. (#79) at 17.)  In accordance with

this court's September 15, 2008, Order (#52), at this time, the parties have not conducted discovery

relating to damages.  Before ruling on the damages issue, the court will permit the parties to conduct

discovery and to further brief the damages determination.[9]

**V.    Conclusion**

During the period relevant to this case, Nevada Revised Statutes section 482.3157 required

rental car companies to include the airport concession recovery fee in the base rate that they

advertised, quoted, and charged short-term lessees.  Although the statute did not prohibit the

companies from separately disclosing the costs that make up their base rate, the companies could

not, under Nevada law as it existed during the time relevant to this case, impose the concession fee

_____

[9]As to the requested injunction, as a result of the amendments to section 482.31575, the conduct of
which Plaintiffs claim is now permissible under Nevada law.  Accordingly, an injunction is not warranted.

19

1    as a surcharge on top of the base rate.  Because it is undisputed that, in violation of the statute, Hertz

2    quoted and charged Plaintiffs a daily rate that did not include the concession fee, summary

3    judgment in favor of Plaintiffs on their section 482.31575 claim is appropriate.

4            The court recognizes that the version of section 482.31575 in effect during the period

5    relevant to this case may have imposed on rental car companies requirements that were foreign to

6    the rental car industry.  Nonetheless, the court must follow the intent of the Legislature as clearly

7    expressed in the statute.  Indeed, by seeking an amendment to section 482.31575, Hertz and other

8    rental car companies obtained relief from the statute's requirements.  That the Legislature ultimately

9    amended the statute, however, does not change that, during the period relevant to this case, Hertz

10   violated the statute.

11           IT IS THEREFORE ORDERED that Plaintiffs' Motion for Partial Summary Judgment

12   (#78) is GRANTED in part and DENIED in part.

13           IT IS FURTHER ORDERED that Hertz's Motion for Summary Judgment (#81) is

14   GRANTED in part and DENIED in part.

15           IT IS FURTHER ORDERED that Hertz's Motion to Strike (#97) is DENIED as moot.

16           IT IS FURTHER ORDERED that, upon the completion of discovery relating to damages as

17   set forth in the discovery and motions schedule (#52), the parties are granted thirty (30) days to file

18   dispositive motions concerning the unjust enrichment claim and damages.  The parties shall have

19   fifteen (15) days to file oppositions and ten (10) days to file replies.

20           IT IS SO ORDERED.

21           DATED this 17th day of March, 2010.

22

23                                                          _____

24                                                          LARRY R. HICKS
                                                            UNITED STATES DISTRICT JUDGE
25

26