1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

G. David Robertson, Esq., 1001
Richard D. Williamson, Esq., 9932
ROBERTSON & BENEVENTO
50 West Liberty Street, Suite 600
Reno, Nevada 89501
Telephone:  (775) 329-5600
Facsimile:   (775) 348-8300
gdavid@nvlawyers.com
rich@nvlawyers.com

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| JANET SOBEL, DANIEL DUGAN, Ph.D., LYDIA LEE, and MARK SINGER, Individually and on behalf of all others similarly situated<br><br>          Plaintiffs,<br><br>vs.<br><br>THE HERTZ CORPORATION, a Delaware corporation, ENTERPRISE LEASING COMPANY-WEST, LLC, a Delaware LLC and VANGUARD CAR RENTAL USA, LLC, a Delaware LLC,<br><br>          Defendants. | Case No.:  3:06-CV-00545-LRH-RAM<br><br>**PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF THE SETTLEMENT** |

# **TABLE OF CONTENTS**

I.     MOTION ..................................................................................................1

II.   INTRODUCTION ....................................................................................1

III.  PROCEDURAL AND FACTUAL BACKGROUND................................2

     A.  Factual Background ..........................................................................2

     B.  Procedural History ...........................................................................3

     C.  Settlement Negotiations ...................................................................4

     D.  Terms of the Settlement ...................................................................5

     E.  Notice and Registration ...................................................................6

IV.  ARGUMENT ...........................................................................................7

     A.  The Settlement is the Product of Arm's-Length
          Negotiations, So It Is Presumptively Fair ......................................7

     B.  The Settlement Merits Final Approval ............................................9

         1.  The Strength of Plaintiffs' Case Favors Approval
             of the Proposed Settlement ................................................9

         2.  The Risk, Expense, Complexity, and Likely
             Duration of Further Litigation All Weigh in
             Favor of Approval ...........................................................10

         3.  The Risk of Gaining Class Certification, and
             Maintaining Class Action Status Throughout the
             Trial Weighs in Favor of Approval .................................12

         4.  The Value Offered in Settlement Weighs in Favor
             of Approval ......................................................................12

         5.  The Extent of Discovery Completed and the Stage
             of the Proceedings Weigh in Favor of Approval .............13

          6.  The Experience and Views of Counsel Weigh in
             Favor of Approval ...........................................................14

7.  Presence of a Government Participant ...........................................14

8.  Reaction of Settlement Class Members to the Proposed
    Settlement Favors Approval ........................................................15

V.      CONCLUSION ...........................................................................15

1

2

**TABLE OF AUTHORITIES**

3

**Page(s)**

4

CASES

5

6

*Browning v. Yahoo! Inc.*,
     2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ...............................................................7, 11

7

*City Pshp. Co. v. Atlantic Acquisition Ltd. Pshp.*,
     100 F.3d 1041 (1st Cir. 1996) .......................................................................................8

8

9

*Class Plaintiffs v. Seattle*,
     955 F.2d 1268 (9th Cir. 1992) .......................................................................................7

10

11

*Cotton v. Hinton*,
     559 F.2d 1326 (5th Cir. 1977) .....................................................................................14

12

13

*In re Apple Computer Derivative Litig.*,
     2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ...............................................................13

14

15

*In re Immune Response Securities Litig.*,
     497 F. Supp. 2d 1166 (S.D. Cal. 2007).........................................................................8

16

17

*In re Lifelock, Inc. Marketing and Sales Practices Litig.*,
     2010 WL 3715138 (D. Ariz. Aug. 31, 2010)...........................................................10, 14

18

19

*In re Manufacturers Life Ins. Co. Premium Litig.*,
     1998 U.S. Dist. LEXIS 23217 (S.D. Cal. Dec. 18, 1998).........................................10

20

*In re Omnivision Technologies Inc.*,
     2007 WL 4293467 (N.D. Cal. Dec. 6, 2007) ...............................................................13

21

22

*In re PaineWebber Ltd. P'ships Litig.*,
     171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................................14

23

24

*In re Tableware Antitrust Litig.*,
     2007 WL 4219394 (N.D. Cal. Nov. 28, 2007) .............................................................12

25

26

*In re Wireless Facilities, Inc.*,
     253 F.R.D. 630 (S.D. Cal. 2008) .................................................................................8

27

*Linney v. Cellular Alaska P'ship*,
     1997 WL 450064 (N.D. Cal. July 18, 1997).................................................................8

28

*Linney v. Cellular Alaska Pshp.*,
  151 F.3d 1234 (9th Cir. 1998) ............................................................12

*Molski v. Gleich*,
  318 F.3d 937 (9th Cir. 2003) ..............................................................9

*Nat'l Rural Telecomms. Coop. v. DIRECTV Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ................................................. passim

*Officers for Justice v. Civil Service Com.*
  688 F.2d 615 (9th Cir. 1982) ......................................................8, 9, 13

*Oppenlander v. Standard Oil Co.*,
  64 F.R.D. 597 (D. Colo. 1974) ..........................................................10

*Riker v. Gibbons*,
  2010 WL 4366012 (D. Nev. Oct. 28, 2010) ........................................9

*Rodriguez v. West Publishing Co.*,
  563 F.3d 948 (9th Cir. 2009) ..........................................................9, 10

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ..........................................................9, 12

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ................................................................9

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ..............................................................7

**RULES AND STATUTES**

28 U.S.C. § 1715...................................................................................15

Fed. R. Civ. P. 23(e)(1)..........................................................................7

Nevada Revised Statutes § 482.31575....................................................3

**OTHER AUTHORITIES**

5 Moore's Federal Practice, § 23.85(2)(e) (3d ed.)................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

3

**I.    MOTION**

4      Plaintiffs and Class Representatives Janet Sobel, Daniel Dugan, Ph.D., Lydia Lee, and

5   Mark Singer (collectively "Plaintiffs" or "Named Plaintiffs" or "Class Representatives")

6   respectfully move the Court for an Order granting Final Approval of the proposed settlement of

7   this class action.

8

**II.    INTRODUCTION**

9      On November 23, 2010, this Court granted preliminary approval of the settlement that

10   Plaintiffs reached with Defendants.  Dkt. 136.  The terms of the Settlement Agreement are set

11   forth in the Class Settlement Agreement and Release dated October 5, 2010,  that was submitted

12   in connection with Plaintiffs' Motion for Preliminary Approval.  Dkt. 123-1.  In its Preliminary

13   Approval Order, this Court also certified the Settlement Classes; approved the form and manner

14   of providing notice to Settlement Class Members; and approved the proposed method for

15   Settlement Class Members to register for settlement benefits.

16      Pursuant to the Preliminary Approval Order, the Notice and the Claim Form have been

17   distributed to 2,497,112 Settlement Class Members by email and United States mail; and the

18   Settlement Agreement has been made available to Settlement Class Members.  *See* Declarations

19   of Claims Administrators Donald J. Andra and Jeffrey Gyomber, Dkts. 180 and 181.  The opt-

20   out and objection deadlines are April 8, 2011.  To date, substantially fewer than two thousandths

21   of one percent (i.e., 0.002%) of all Settlement Class Members have objected, and fewer than

22   0.1% have opted out.  This response shows overwhelming support for the Settlement.

23      The Settlement resolves all claims asserted by Plaintiffs and the Settlement Classes

24   against all Defendants, and provides for valuable relief.  The Settlement is fair, reasonable, and

25   adequate under the governing standards for evaluating class action settlements in this Circuit.

26   The Court should therefore grant final approval and enter the Proposed Form of Judgment that

27   the parties agreed upon.

28

III.     **PROCEDURAL AND FACTUAL BACKGROUND**

     A.     **Factual Background**

The Plaintiffs in this action, Janet Sobel, Daniel Dugan, Ph.D., Lydia Lee, and Mark Singer, are persons who rented cars at airports in the State of Nevada from Defendants Hertz, Enterprise, and Vanguard and were quoted and charged separate ("unbundled") airport concession recovery fees that Plaintiffs allege were in violation of Nevada law. Defendants Hertz, Enterprise, and Vanguard (which does business under the names Alamo Rent A Car and National Car Rental), are among the largest short-term car rental companies. Each does business at Reno-Tahoe International Airport and Las Vegas' McCarran International Airport.

The basic facts giving rise to this case, which are well known to this Court from its rulings on motions to dismiss, for summary judgment, and for preliminary settlement approval, are as follows: Plaintiffs allege that in return for the right to operate at lucrative airport locations, rental car companies are required to pay fees to the airports, which are commonly referred to as concession fees. Rental car companies that are not located at the airport generally do not pay such fees, though they may be required to collect and pay "access fees" to airports to the extent they pick up customers at the airport. At Reno-Tahoe and McCarran airports, on-airport rental car companies are required to pay a percentage of their gross revenues to the airports as a concession fee. During the relevant period, the Defendants and other car rental firms were prohibited by Nevada statute from adding surcharges to their quoted base rates, with certain limited exceptions. Nonetheless, during the Class Period Defendants added to their rates a surcharge generally called a "concession recovery fee," in order to recoup from their customers the airport concession fees that they were required to pay. At all relevant times, the Defendants quoted and charged a base rental rate and, in addition, a separate airport concession recovery fee. Plaintiffs claimed that separately charging such fees was prohibited by a Nevada regulatory statute, and also violated Nevada's Deceptive Trade Practices Act; Defendants argue among other things, that such fees were among the statutorily permitted exceptions for separate charges.

### B.     Procedural History

The case was filed on October 13, 2006, against Defendants Hertz and Enterprise. Enterprise was subsequently voluntarily dismissed without prejudice, and Plaintiff Lydia Lee entered into a tolling agreement with Enterprise.  The Court denied Hertz's Motion to Dismiss in an Order dated September 13, 2007, and the Ninth Circuit Court of Appeals subsequently denied interlocutory review.  Plaintiffs sought leave to file an Amended Complaint against Hertz on November 17, 2008, which the Court granted on May 27, 2009.  Hertz answered the Amended Complaint on June 10, 2009.

With the Court's approval, the parties stipulated to bifurcation of liability and damages issues and to defer class certification proceedings.  Plaintiffs completed liability discovery against Hertz, including depositions of both fact and expert witnesses by December 19, 2008, and the parties thereafter filed cross-motions for summary judgment.

On March 17, 2010, the Court granted summary judgment for Plaintiffs on their claim that Hertz had violated Nevada Revised Statutes § 482.31575.  Dkt. 111.  The Court concluded as a matter of law that the statute prohibited rental car companies from separately charging concession recovery fees to their customers.  The Court found no disputed issues of fact concerning Hertz's violation of the statutory requirement and therefore granted summary judgment.  The Court, however, granted Hertz's Motion for Summary Judgment as to Plaintiffs' Deceptive Trade Practices Act claim, finding that Hertz's advertisements and receipts fully disclosed the concession recovery fees to renters, and deferred its decision as to Plaintiffs' unjust enrichment claims, as well as Plaintiffs' request for an award of their individual damages.  *Id.* The Court also noted that the relevant statute had been amended effective September 30, 2009, so after that date Defendants' practices were no longer in violation of the law.  However, the Court determined that the statutory change was not retroactive.  *Id.*

Plaintiffs moved for Class Certification against Hertz on March 31, 2010.  Dkt. 112. That Motion had not been fully briefed at the time of settlement.

1        Following the ruling on summary judgment, Plaintiff Lee reinstated the Class Action

2   Complaint against Enterprise by filing a new Complaint on June 3, 2010.  *Lee v. Enterprise*

3   *Leasing Company – West*, No. 3:10-cv-00326-LRH-VPC. Plaintiff Lee amended that Complaint

4   on July 22, 2010 and added Mark Singer as a Plaintiff, who asserted claims on behalf of

5   customers of Vanguard, an affiliate of Enterprise that rented cars at Nevada airports under the

6   Alamo and National brands.  Subsequently, this Court ordered that the actions be consolidated

7   for purposes of settlement.  Dkt. 132.

8        **C.**      **Settlement Negotiations**

9        Plaintiffs and Hertz began discovery on damages issues, but all parties agreed to engage

10   in mediation in an effort to resolve the dispute.  In advance of the mediation, Enterprise and

11   Vanguard provided plaintiffs' counsel with information in response to informal discovery

12   requests.  A lengthy mediation session was held in San Francisco on June 4, 2010, before the

13   Honorable Ronald Sabraw (Ret.) of JAMS.  The parties made significant progress towards

14   settling the actions on that date, but did not reach an agreement.  Further telephonic negotiations,

15   some through the mediator and others directly between opposing counsel, led to a Memorandum

16   of Understanding containing the material terms of this Settlement.  That memorandum was

17   signed by all parties in July 2010.  *See* Declaration of Robert Sabraw, submitted by Hertz, in

18   connection with the Motion for Preliminary Approval, Dkt. 125-1, at 4-5.  The parties then

19   negotiated the Settlement Agreement.  Ultimately, about October 5, 2010, the Plaintiffs and the

20   Settling Defendants ("the Settling Parties") entered into an agreement specifically encouraged by

21   Judge Sabraw to settle the Action through which members of the settlement class would receive

22   $10 or $20 discounts on future car rentals, depending upon the number of rentals they made

23   during the Class Period, rather than cash.  On November 9, 2010, this Court held oral argument

24   to determine whether that settlement should be preliminarily approved**.**

25        On November 23, 2010, this Court granted preliminary approval of the settlement,

26   conditionally certified the Settlement Class contingent on the settlement being finally approved,

27   and approved the forms of Notice.  See Dkt. 135, 136.

28

**D.** **Terms of the Settlement**

The material terms of the Settlement are as follows:

The Settlement Class includes:

(1)   All customers who rented cars from Hertz at Reno-Tahoe and/or McCarran airports from October 13, 2003 through September 30, 2009, as well as persons who rented cars at Reno-Tahoe from Advantage Rent-a-Car, a brand acquired by Hertz on July 1, 2009, during the period from July 1, 2009 through September 30, 2009;

(2)   All customers who rented cars from Enterprise Rent-A-Car at the Nevada airports from June 3, 2004 through September 30, 2009; and

(3)   All customers who rented cars from Vanguard, under its Alamo and National brands, from June 3, 2007 through September 30, 2009.

Each Settlement Class Member is entitled to receive a certificate, usable for a discount on a future car rental (from the Defendant from whom it rented the relevant vehicle(s)) anywhere in the United States.  Settlement Class Members who rented from a Defendant once or twice during the relevant periods will receive a $10 certificate, while those who rented three or more times will receive a $20 certificate.  Settlement Class Members who rented from Vanguard operating as Alamo will be entitled to certificates for rentals from Alamo; Settlement Class Members who rented from Vanguard operating as National will be entitled to certificates for rentals from National.  *The certificates are transferable to other family members and can be used in conjunction with any other discount, coupon, or other promotion for which the customer may be eligible, so they represent real value to the Settlement Class Members.*

The Settlement Agreement provides that the Defendants are responsible for notifying their respective customers of the proposed settlement.  They may distribute the Settlement Class Notice to their customers through either standard mail or email, provided they have email addresses.  Hertz elected to distribute many of its notices by email; Enterprise and Vanguard used only standard mail.  However, defendants must use standard mail to attempt to reach all customers for whom email notice was undeliverable.  The Settlement Class Notices direct each

Settlement Class Member to register to receive their certificates through a website, and registration is extremely simple.  Certificates will be distributed when the settlement is final, and will be useable for 18 months.

The $10 value of the certificates compares favorably to the actual amount of the allegedly improper charges for many Settlement Class Members.  The four lead plaintiffs actually paid between $6 and $14 each for the allegedly improper fees.  Plaintiffs believe that the value of the certificates will exceed the amount of the allegedly improper charge for a significant proportion of all Settlement Class Members and that, for the great majority of other Settlement Class Members, these certificates will be a large percentage of the allegedly improper fees.

Defendants have also agreed to pay the very substantial costs of administration of the Settlement, each for its own customers.  Defendants have also agreed not to oppose Plaintiffs' application for attorney fees and costs in an amount to be determined by this Court, not to exceed a total of $1,440,000, of which up to $150,000 may be applied to costs.  In addition, Defendants will pay up to a total of $20,000 in incentive awards to the four plaintiffs collectively, to the extent approved by the Court.[1]

In sum, the Settlement provides substantial benefits to the Class.  Further, the Settlement was reached only after years of litigation and was the result of lengthy and contentious arm's-length negotiations.  The process was in all respects thorough, adversarial, and professional.

**E.    Notice and Registration**

The Notice in this case was made relatively simple by the fact that the Defendants possessed mailing addresses for all Settlement Class Members. Hertz also possessed a database containing email addresses for many Settlement Class Members, and elected to distribute Notices to those customers electronically.  Pursuant to the Settlement, Enterprise and Vanguard sent Notice by standard mail to 1,279,466 persons who had been identified as Settlement Class Members from their records.  Hertz sent Notice by email to 425,933 Settlement Class Members,

---

[1]    Counsel is concurrently filing an application for attorney fees, cost reimbursement, and approval of the proposed incentive payments.

and Notice by standard mail to 791,691 additional Settlement Class Members.  Hertz later sent Notice by standard mail to 75,064 persons whose email Notices could not be delivered.  Dkt. 180, 181.  In addition, Notices were published on Plaintiff's Counsel's web sites and on a dedicated web site: www.NevadaCarRentalSettlement.com.  Further, the settlement received additional publicity through blogs and electronic message boards concerned with the travel industry or Nevada tourism, such as www.flyertalk.com, www.everythinglv.com, and www.car-rentalonline.com.  Such notice of class action settlement by email has been previously accepted as adequate by federal courts.  *E.g.*, *Browning v. Yahoo! Inc.*, No. C04-01463, 2007 WL 4105971, at *6-7 (N.D. Cal. Nov. 16, 2007).

The class Notice described a very simple process to register for benefits:  Settlement Class Members need only go to the designated web site, www.nevadacarrentalsettlement.com, and complete an extremely simple form, requiring only their name and address, a certificate number that appeared on the letter or email sent to each Settlement Class Member, and for Hertz customers, mail and email addresses.  In addition, the Notice listed telephone numbers for each of the Plaintiff's Counsel, so that individuals without internet access, or with other questions, could seek assistance in completing the form.   The use of the internet made registration essentially costless to virtually all Settlement Class Members.

## IV.   ARGUMENT

### A.   The Settlement Is the Product of Arm's-Length Negotiations, So It Is Presumptively Fair

There is a "strong judicial policy that favors settlements particularly where complex class action litigation is concerned."  *Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992).  "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976).  Having preliminarily approved the Settlement, provisionally certified the Settlement Class, and caused Notice to issue to members of the Settlement Classes consistent with Fed. R. Civ. P. 23(e)(1) (Dkt. 135, 136), the Court must now decide whether final approval is warranted.  Ultimately, after affording Settlement Class members the opportunity to comment on the

proposed Settlement at the Fairness Hearing, the Court should finally approve the Settlement if it determines that the Settlement is "fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Service Com.,* 688 F.2d 615, 625 (9th Cir. 1982).   In that regard, the "court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* The Ninth Circuit has explained that:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Id.* (emphasis in original)

Indeed, a settlement is presumptively fair if "the settlement agreement was reached in arm's length negotiations after relevant discovery [has] taken place." *In re Immune Response Securities Litig.,* 497 F. Supp. 2d 1166, 1171  (S.D. Cal. 2007) (quoting *Linney v. Cellular Alaska P'ship*, No. C-96-3008, 1997 WL 450064, at * 5 (N.D. Cal. July 18, 1997)).

The initial presumption of fairness applies to this Settlement.   Negotiations occurred at arm's-length in a full-day mediation session with the assistance of Judge Ronald Sabraw (Ret.) of JAMS, and continued for several weeks afterwards, and there is no hint of collusion; the parties engaged in significant discovery before negotiating this Settlement allowing Plaintiffs to understand the factual and legal issues of the case; and, as previously explained (*see* Prelim. Appr. Mot. at 26), Class Counsel have extensive experience litigating precisely this type of class action claim.   *See In re Wireless Facilities, Inc.,* 253 F.R.D. 630, 634 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiations are presumed fair."); *City Pshp. Co. v. Atlantic Acquisition Ltd. Pshp.*, 100 F.3d 1041, 1043 (1st Cir.

- 8 -

1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.")

### B.   The Settlement Merits Final Approval

Further, the Settlement satisfies the eight factors articulated by the Ninth Circuit to determine whether a settlement is fair, adequate, and reasonable:

> (1)   strength of the plaintiff's case;
> (2)   risk, expense, complexity, and likely duration of further litigation;
> (3)   risk of maintaining class action status throughout the trial;
> (4)   amount offered in settlement;
> (5)   extent of discovery completed and stage of the proceedings;
> (6)   experience and views of counsel;
> (7)   presence of a governmental participant; and
> (8)   reaction of the Class members to the proposed settlement.

*Rodriguez v. West Publishing Co.*, 563 F.3d 948, 963 (9th Cir. 2009); *Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003) (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)); *Riker v. Gibbons*, No. 3:08-cv-00115, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) (Hicks, J.).   These factors are not exclusive, and one factor may warrant more weight than others depending on the circumstances.   *See Officers for Justice,* 688 F.2d at 625 ("The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the types of relief sought, and the unique facts and circumstances  presented by each individual case."); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV Inc*., 221 F.R.D. 523, 525-26 (C.D. Cal. 2004) ("one factor alone may prove determinative in finding sufficient grounds for court approval" (citing *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993))).

Under these criteria, the proposed Settlement merits final approval.

### 1.   The Strength of Plaintiffs' Case Favors Approval of the Proposed Settlement.

As evidenced by the vigor with which Class Counsel prosecuted this action, Class Counsel believe strongly in the merits of this case, and believe the evidence developed supports the claims alleged.   The strength of the case is established by Plaintiffs' partial victory on summary judgment as to liability against Hertz.

1    Nonetheless, Plaintiffs also recognize the risks of continued litigation.  The Settling

2    Defendants have not, by settling, admitted to any wrongdoing or liability.  Had they not settled,

3    the Settling Defendants were prepared to mount a vigorous defense to both class certification and

4    damages, and a number of key issues would be hotly contested.  The partial grant of summary

5    judgment might well have been appealed under a *de novo* standard.  On damages, Defendants

6    could have argued that they would have charged a higher base rate if they had not charged

7    concession recovery fees, so that there were no damages.  They would also have argued that their

8    disclosure of total price as well as base price meant that Settlement Class Members could not

9    establish any damages.  On class certification, Defendants may have argued that the Class

10    Representatives' high educational levels rendered them atypical customers. Thus, while Plaintiffs

11    and Class Counsel believe this is a strong case for Plaintiffs, the outcome of continued litigation

12    was far from guaranteed.  *See Rodriguez*, 563 F.3d at 964; *In re Manufacturers Life Ins. Co.*

13    *Premium Litig.*, No. 96-CV-230, 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. Dec. 18, 1998)

14    ("even if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial

15    would yield a greater recovery than the Settlement--which is not at all apparent--there is easily

16    enough uncertainty in the mix to support settling the dispute rather than risking no recovery in

17    future proceedings" (citation omitted)). Accordingly, the very real risks that were present and the

18    substantial recovery obtained supports final approval of the proposed Settlement.

19         **2.      The Risk, Expense, Complexity, and Likely Duration of Further**

20              **Litigation All Weigh in Favor of Approval.**

21    It is well established that "unless the settlement is clearly inadequate, its acceptance and

22    approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural*

23    *Telecomms. Coop.*, 221 F.R.D. at 526 (citing Newberg on Class Actions, § 11:50 at 155).  To

24    conduct this inquiry

25         [t]he Court shall consider the vagaries of litigation and compare the significance
         of immediate recovery by way of the compromise to the mere possibility of relief
26         in the future, after protracted and expensive litigation. In this respect, [i]t has been
         held proper to take the bird in the hand instead of a prospective flock in the bush.

27

28

1    *Id.* at 526 (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)); *see*

2    *also In re Lifelock*, *Inc. Marketing and Sales Practices Litig.*, No. 08-1977, 2010 WL 3715138,

3    at *4 (D. Ariz. Aug. 31, 2010) ("Courts also make a related assessment in considering the risk

4    of continued litigation balanced against the certainty and immediacy of recovery from the

5    Settlement." (internal quotation and citation omitted)).

6        As indicated above, continued litigation of this case against the Defendants posed risks

7    for both sides.  This case presents complex legal and factual issues.  The Defendants, for

8    example, vigorously disputed whether their concession recovery fees, assuming they were

9    deemed wrongful, caused any damage to Settlement Class Members.  They asserted that they

10    could have charged higher base rates if they had not charged those fees, so that the Class could

11    not prove damages.  The decision granting summary judgment to Plaintiffs, as well as the

12    Court's ruling rejecting the "voluntary payment doctrine" defense, were both potentially

13    vulnerable to being overturned on appeal.  To meet these and other defenses and to address the

14    complexities and nuances of this case adequately, significant expenditures of time and money

15    would be required. *See Browning*, 2007 WL 4105971, at *10 (noting risks of appellate litigation,

16    and complexity of consumer class action, as factors militating in favor of settlement).

17        Further, it was important that the Nevada Legislature amended the statute during the

18    pendency of the action to allow rental car companies to charge unbundled concession recovery

19    fees.  Although this Court found that the amendment was not retroactive, there was a risk that

20    finding could be reversed on appeal.  Moreover, the fact that the Legislature amended the statute

21    arguably undercut some of the appeal of plaintiffs' claims.

22        As explained in the accompanying Joint Declaration, Class Counsel have already

23    expended 3,148.65 hours and incurred $150,838.63 in unreimbursed and outstanding expenses in

24    litigating the case thus far.  Both the pre-trial rulings already issued, and any judgment at trial

25    might well be appealed by the losing party.  Therefore, delay not just through the trial stage but

26    post-trial motions and the appellate process as well could force Settlement Class Members to

27    wait many years for recovery, further reducing the Settlement's value. Balancing the risks and

28

uncertainty of continued litigation with the substantial monetary and non-monetary relief obtained now, the Settlement is an excellent resolution of the Settlement Class Members' Claims against the Settling Defendants.

**3.** **The Risk of Gaining Class Certification, and Maintaining Class Action Status Throughout the Trial Weighs in Favor of Approval.**

At the time settlement was reached, the Court had not yet ruled on class certification, and Defendants had not yet filed briefs in opposition to Plaintiffs' motion.  The certification of the Class is contingent upon the settlement being made final, and will otherwise become contested. While Plaintiffs believe that they meet the necessary standards for achieving class certification, we understand that Defendants were prepared to challenge the appropriateness of class certification on the grounds that reliance on Defendants' quoted base prices presented individual issues; the appropriate calculation of damages raised individual issues; and whether the individual Class Representatives were inappropriate representatives of the Class.   While Plaintiffs believe they have strong responses to each of these issues, there was still significant risk.  *See Staton v. Boeing Co.*, 327 F.3d at 962 (fact that "maintaining class action was not a foregone conclusion" favored settlement).

**4.** **The Value Offered in Settlement Weighs in Favor of Approval.**

The Settlement here provides for distribution of certificates worth over $25 million if all Settlement Class Members redeem the coupons.  This compares to overall Concession Recovery Fees charged during the relevant periods of about $70 million, which defendants contend was not the appropriate measure of damages.  A settlement should not be judged against a "speculative measure" of what could have been attained.  *Linney v. Cellular Alaska Pshp*, 151 F.3d 1234, 1242 (9th Cir. 1998); *see also Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (a proposed settlement "may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.").   Here, assuming liability can be established, several variables would be at work in fixing the amount of damages.  Among the factors to be considered would be the magnitude of the effect of Defendants' unbundling of their

rates on the total amount that they charged Plaintiffs and Settlement Class Members.  These matters have been, and would be, hotly contested in the absence of Settlement.  *See, e.g., In re Tableware Antitrust Litig.*, No. C-04-3514, 2007 WL 4219394, at *2 (N.D. Cal. Nov. 28, 2007) (settlement representing 4 percent of estimated single damages was reasonable); *In re Omnivision Technologies Inc.*,  No. 04-2297, 2007 WL 4293467, at *5 (N.D. Cal. Dec. 6, 2007) (approving settlement that was 9% of the "maximum potential recovery"); *In re Apple Computer Derivative Litig.*, No. C 06-4128, 2008 WL 4820784, at *2 (N.D. Cal. Nov. 5, 2008) (citing to study of settlements in securities litigation and observing that average settlement was 2.4 percent of estimated damages).

The value of the certificates is a very substantial sum that falls well within any reasonable estimate of an appropriate recovery  *See Officers for Justice*, 688 F.2d at 624 ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes" (citations and internal quotations omitted)).

> **5.**   **The Extent of Discovery Completed and the Stage of the Proceedings Weigh in Favor of Approval.**

The extent of discovery conducted helps to determine the parties' grasp of the strengths and weaknesses of the case.  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (citing Manual for Complex Litigation § 30.42 (3d ed. 1995)).  Approval of a settlement is more likely if the settlement was reached after careful investigation and consideration of the "'legal and factual issues surrounding the case.'"  *Id.* (quoting 5 Moore's Federal Practice, § 23.85(2)(e) (3d ed.)).

Class Counsel have undertaken extensive discovery in this action.  As described previously, Plaintiffs received significant document and data productions from Hertz, completed fact depositions as to liability, and obtained important documents from third parties, as well as developed expert testimony and marshaled substantial evidence on various critical issues including liability and damages, and deposed Defendants' experts on liability.  In all, Plaintiffs conducted nine fact and two expert depositions, and defended two Class Representatives and one expert deposition.  The parties also fully litigated, and the Court resolved, both a motion to

1    dismiss the action and cross-motions for summary judgment.  Given that Plaintiffs have litigated

2    this case for five years, substantial discovery has been completed, and that the Court has already

3    ruled on Defendants' Motion to Dismiss and the respective Motions for Summary Judgment, the

4    proceedings are sufficiently advanced to permit Class Counsel to evaluate the strengths and

5    weaknesses of their case against Settling Defendants.   *Lifelock, Inc.,* 2010 WL 3715138, at *5

6    ("The Parties have litigated these class actions for over two full years, have conducted extensive

7    discovery, and initiated and adjudicated dispositive motions. These actions have therefore

8    progressed sufficiently to enable the Parties and counsel to assess the risks of proceeding as

9    opposed to settlement").

10              **6.     The Experience and Views of Counsel Weigh in Favor of Approval.**

11              "Great weight is accorded to the recommendation of counsel, who are most closely

12   acquainted with the facts of the underlying litigation."   *Nat'l Rural Telecomms. Coop.*, 221

13   F.R.D. at 528 (citing *In re PaineWebber Ltd. Pshps. Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.

14   1997)).   Thus, in the absence of fraud or collusion during negotiation, deference should be

15   afforded to the judgment of counsel.   *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (citing

16   *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

17              This action has been litigated and settled by experienced and competent counsel on both

18   sides.   The law firms representing the Settlement Class are well known for their extensive

19   experience in handling antitrust class action cases and other complex litigation, having served as

20   lead counsel in a large number of similar cases throughout the country.   *See* Firm Biographies

21   attached to Joint Declaration.   Defendants are represented by Sheppard Mullin Richter &

22   Hampton, LLP; Morris Peterson; Crowell & Moring; and Bowen Hall Ohlson & Osborne; all of

23   which have extensive experience in complex litigation and class actions.   That such qualified and

24   well informed counsel endorse the Settlement as being fair, reasonable and adequate to the Class

25   heavily favors this Court's approval of the Settlement.   At least as important is that the

26   settlement was achieved through the efforts of the Hon. Ronald Sabraw (Ret.), who handled

27   many complex class action and other matters while on the bench.

28

7. **Presence of a Government Participant.**

This factor is not directly applicable here. However, as required by the Class Action Fairness Act, the Attorney General of the United States and the Attorney Generals of all 50 states received notification of this settlement. *See* 28 U.S.C. § 1715. None of these entities have raised any issues with the settlement to date.

8. **Reaction of Settlement Class Members to the Proposed Settlement Favors Approval**

As noted above, almost 2.5 million Notices to Class Members were disseminated. The deadline for filing objections and for opting out of the settlement is April 8, 2011. To date, only 41 individuals have filed objections or other comments with this Court, i.e. fewer than two thousandths of one percent (i.e., 0.002%) of all Class Members. Pursuant to the schedule set by this Court, Plaintiffs will file an additional brief responding to all such objections.

**V.   CONCLUSION**

For the reasons discussed above, Plaintiffs respectfully request that their Motion be granted and that the Court enter the proposed Final Judgment that the parties have submitted. .

Dated: March 24, 2011                     ROBERTSON & BENEVENTO
                                                          50 West Liberty Street, Suite 600
                                                          Reno, Nevada  89501
                                                          (775) 329-5600


                                                          By: */s/ G. David Robertson*
                                                                 G. David Robertson, Esq.
                                                                 Attorneys for Plaintiff


OF COUNSEL:
David B. Zlotnick, Esq., CA SBN 195607        Susan S. Thomas, Esquire
LAW OFFICES OF DAVID B. ZLOTNICK        Arthur Stock, Esquire
625 Broadway, Suite 635                              BERGER & MONTAGUE, P.C.
San Diego, CA  92101                                 1622 Locust Street
                                                               Philadelphia, PA  19103

            COUNSEL FOR PLAINTIFFS AND THE SETTLEMENT CLASS

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b) and Local Rule 5-4, I hereby certify that I am an employee of Robertson & Benevento, over the age of eighteen, and not a party to the within action.  I further certify that on the 24th day of March, 2011, I electronically filed this **PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF THE SETTLEMENT** and thus, pursuant to LR 5-4, caused same to be served by electronic mail on the following Filing Users:

Dan C. Bowen (dbowen@bowenhall.com)

Gregory D Call (gcall@crowell.com)

Peter S. Hecker (phecker@sheppardmullin.com)

Anna McLean (AMcLean@sheppardmullin.com)

William E. Peterson (wep@morrislawgroup.com)

Janine L. Scancarelli (jscancarelli@crowell.com)

Arthur Stock (astock@bm.net)

Susan S Thomas (sthomas@bm.net)

David B. Zlotnick (david@kkbs-law.com,david@kkbs-law.com)

I further certify that I mailed a true and correct copy of **PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF THE SETTLEMENT**, with first-class United States postage prepaid affixed thereon, to:

| | | |
|---|---|---|
| Edward L. Buchannan<br>130 Kerry Ct.<br>Vacaville, CA 95687 | Clinton M. Casey<br>705 NE 3rd Street<br>Pompano Beach, FL 33060 | Kevin Foster<br>839 Commercial St.<br>Marseilles, IL 61341 |
| Jacqueline Gagnon<br>197 Montelona Road<br>Goffstown, NH 03045 | Dennis J. Godsey<br>1102 Main Street<br>Belle Chasse, LA 70037 | David Grant<br>3 Oakhurst Terrace<br>Newcastle upon Tyne<br>NE12 9NY |

|  |  |  |
|---|---|---|
| Max Hensley<br>116 Parklane Dr.<br>San Antonio, TX 78212 | Douglas A. Hindmarsh<br>130 Island Rd.<br>Millis, MA 02054 | England,<br>Dennis L. Hunt<br>9120 Edgemont Dr.<br>North Richland Hills, TX 76182 |
| Gary Jackson<br>2805 Ridge Valley Road, NW<br>Atlanta, GA 30327 | Paul E. Johnson<br>P.O. Box 11516<br>Zephyr Cove, NV 89448 | Ivan M. Katz<br>57 Trumbull Street<br>New Haven, CT 08510-1004 |
| Dennis Kirson<br>2321 Hendola Drive, NE<br>Albuquerque, NM 87110 | Clark J. Leslie<br>100 Clark Court<br>Cambridge, OH 43725-9616 | Kathleen Loepker<br>300 Dorchester Drive<br>Belleville, IL 62223 |
| Michael L. McMillan<br>P.O. Box 15042<br>Hattiesburg, MS 39404-5042 | James Miller<br>1542 Bennett Road<br>Lansing, MI 48906 | George Murphy<br>1904 Dove Ct.<br>Friendswood, TX 77546 |
| Ronald C. Nahas<br>3697 Mt. Diablo Blvd.<br>Suite 250<br>Lafayette, CA 94549 | Richard A. Norton<br>PO Box 330<br>Warnerville, NY 12187 | Jeffrey Osborn<br>13632 Madison Street<br>Thornton, CO 80602 |
| Keith Owens<br>612 34 Road<br>Clifton, CO 81520 | Jonathan H. Parker<br>1521 Alton Road<br>Suite 366<br>Miami Beach, FL 33139 | Harold Peterson<br>7911 Westhaven Dr SW Apt 3<br>Huntsville, AL 35802-1431 |
| Michael Prihar<br>PO Box 3242<br>Granada Hills, CA 91394 | John S. Reifschneider<br>1001 6th Avenue, Suite 100<br>Leavenworth, KS 66048 | Edward J. Smith<br>56 Nassau Ave.<br>Plainview, NY 11803 |
| Einar Tamm<br>20 Partridge Hill<br>Honeoye Falls, NY 14472 | Mike Thayne<br>1768 N. 4850 W.<br>Ogden, UT 84404 | Michael J. Tomkvitch<br>7 Woodcrest Drive<br>Hopewell Junction, NY 12533 |
| Linda Trigg<br>4593 Fir Dell Dr. SE<br>Salem, OR 97302 | John Vertino<br>8 Elaine Ct<br>Buffalo, NY 14225 | Michael J. Walkley<br>5606 Saint Albans Way<br>Baltimore, MD 21212 |
| Charles Westin<br>PO Box 157<br>Belleville, KS 66935-1940 | Mike Whaley<br>21325 119th Street<br>Bristol, WI 54104 | Karen White<br>400 S. Eagle Ave<br>McAllen, TX 78504-5116 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steven E. Whitney
7805 Ridgemar Drive
Dallas, TX 75231

Daniel Woodson
37925 Ridge Top Drive
Lebanon, OR 97355

Peter York
No. 11 Crouchfield
Hemel Hempstead,  HP1 1PA
UK

Dated this 24th day of March, 2011.

/s/ Melissa Davis
An Employee of Robertson & Benevento