Daniel Greenberg, Esq. (AR BAR 2007193) (*pro hac vice* pending)
**GREENBERG LEGAL SERVICES**
**CENTER FOR CLASS ACTION FAIRNESS, LLC**
55 Fontenay Circle
Little Rock. AR  72223
(501) 588-4245
DnGrnbrg@gmail.com

Michael Radmilovich, Esq. (NV BAR 4036)
**MICHAEL RADMILOVICH, P.C.**
5380 Twin Creeks Drive
Reno, NV  89523
(775) 771-4958 / fax (775) 473-9914
michael@radmilovich.com

*Attorneys for Objectors William Andrews and Walter Weber*



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JANET SOBEL, DANIEL DUGAN, Ph.D., LYDIA LEE, AND MARK SINGER, individually and on behalf of all others similarly situated, | CASE No.:  3:06-cv-00545 LRH-RAM |
| Plaintiffs, | **CLASS ACTION** |
| vs. | **OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING** |
| THE HERTZ CORPORATION, a Delaware corporation, ENTERPRISE LEASING COMPANY-WEST, LLC, a Delaware LLC, and VANGUARD CAR RENTAL USA, LLC, a Delaware LLC, | Judge:  Hon. Larry R. Hicks<br>Date:  May 17, 2011<br>Time:  10 a.m.<br>Courtroom:  5 |
| Defendants. | United States Courthouse<br>400 South Virginia Street, Reno, NV |

# TABLE OF CONTENTS

Table of Contents.................................................................i

Table of Authorities...........................................................ii

Required Statements..........................................................vi

Introduction......................................................................1

I.      The Objectors are Members of the Class...................................4

II.     The Objection Furthers the Public Interest, Not Simply the Interest of the
        Objectors.................................................................4

III.    Under Rule 23, Preventing an Unfair Settlement is This Court's Duty...................5

IV.     This Coupon Settlement Violates Federal Law and Creates a Conflict Between the
        Class Attorneys and Their Clients........................................8

        a.      This Settlement's "Certificates" are Coupons.....................8

        b.      As a Matter of Policy, Coupon Settlements are Inherently Problematic.......10

        c.      As a Matter of Law, the Settlement's Fee Request Cannot Pass the Test of
                28 U.S.C § 1712(a)......................................13

        d.      Based on the Limited Information that the Settling Parties Have
                Supplied, the Best Inference Is That Class Counsel Has Vastly Overpaid
                Itself and Vastly Overestimated the Coupons' Real Value.....................16

V.      The "Clear Sailing" Provision is Deficient Under Rule 23(a)(4).....................22

VI.     The Court Should Discount Attempts By The Settling Parties To Infer Class
        Approval From A Low Number Of Objections...........................................26

Conclusion.....................................................................29

Certificate of Service.............................................................31

i

# TABLE OF AUTHORITIES

## CASES

*Acosta v. Trans Union, LLC,*
   243 F.R.D. 377 (C.D. Cal. 2005).................................................................11

*Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.,*
   52 F.R.D. 373 (D. Kan. 1971)..................................................................29

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)............................................................................6

*Bachman v. A.G. Edwards,*
   Civ. No. 22052-01266-03 (Cir. Ct., City of St. Louis, May 21, 2010), *appeal pending*, No. ED95074 (Mo. Ct. App.)........................................................9

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268, 1276 (9th Cir. 1992).........................................................2

*Create-A-Card, Inc. v. Intuit, Inc.,*
   No. C 07-06452 WHA, 2009 WL 3073920 (N.D. Cal. Sept. 22, 2009)..............14

*Diaz v. Trust Territory of Pacific Islands,*
   876 F.2d 1401 (9th Cir. 1989)................................................................6

*Ellis v. Edward D. Jones & Co.,*
   527 F. Supp. 2d 439 (W.D. Pa. 2007)........................................................28

*Figueroa v. Sharper Image Corp.,*
   517 F. Supp. 2d 1292 (S.D. Fla. 2007) ................................................10, 11

*Fleury v. Richemont North Am., Inc.,*
   No. 05-4525, 2008 WL 3287154 (N.D. Cal. Aug. 6, 2008)............................9

*Ford Explorer Cases,*
   J.C.C.P. Nos. 4266 & 4270 (Cal. Sup. Ct., 2008)....................................12

*Grove v. Principal Mut. Life Ins. Co.,*
   200 F.R.D. 434 (S.D. Iowa 2001)............................................................27

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

1

2  *Hanlon v. Chrysler Corp.,*
3      150 F.3d 1011 (9th Cir. 1998)................................................................7, 22

4  *In re Cendant Corp. Litig.,*
5      264 F.3d 201 (3d Cir. 2001)................................................................2

6  *In re Corrugated Container Antitrust Litig.,*
7      643 F.2d 195 (5th Cir. 1981)................................................................28

8  *In re General Motors Corp. Engine Interchange Lit.,*
9      594 F.2d 1106 (7th Cir.1979)................................................................28

10  *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig.,*
11      55 F.3d 768 (3d Cir. 1995)................................6, 11, 15, 24, 27, 28-29

12  *In re Inkjet Litig.,*
13      No. 5:05-cv-3580 (N.D. Cal. Mar. 29, 2011)................................................................9

14  *In re Relafen Antitrust Litig.,*
15      360 F.Supp.2d 166 (D. Mass. 2005)................................................................6

16  *Johnson v. Comerica,*
17      83 F.3d 241 (8th Cir. 1996)................................................................24

18  *Kearns v. Ford Motor Co.,*
19      No. CV 05-5644, 2005 WL 3967998 (N.D. Cal. Nov. 21, 2005) ................7, 10

20  *Kirchoff v. Flynn,*
21      786 F.2d 320 (7th Cir. 1986)................................................................14

22  *Lobatz v. U.S. West Cellular of Cal., Inc.,*
23      222 F.3d 1142 (9th Cir. 2000)................................................................14

24  *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.,*
25      834 F.2d 677 (7th Cir. 1987)................................................................28

26  *Mirfasihi v. Fleet Mortgage Corp.,*
27      356 F.3d 781 (7th Cir. 2004)................................................................2

28  *Murray v. GMAC Mortgage Corp.,*

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

434 F.3d 948 (7th Cir. 2006)...................................................20, 21

Petruzzi's Inc. v. Darling-Delaware Co.,
      880 F.Supp. 292 (M.D. Pa. 1995)..........................................28

Reynolds v. Beneficial Nat'l Bank,
      288 F.3d 277 (7th Cir. 2002)...............................................6

Riker v. Gibbons,
      2010 WL 4366012 (D. Nev. Oct. 28, 2010).........................6

Rodriguez v. West Pub. Corp.,
      563 F.3d 948 (9th Cir. 2009).............................................22

Silber v. Mabon,
      957 F.2d 697 (9th Cir. 2002)..........................................2, 6

Six Mexican Workers v. Arizona Citrus Growers,
      904 F.2d 1301 (9th Cir. 1990).........................16-17, 18, 19, 20

Staton v. Boeing Co.,
      327 F.3d 938 (9th Cir. 2003)......................................7, 23-25

Synfuel Technologies, Inc. v. DHL Express, Inc.,
      463 F.3d 646 (7th Cir. 2006).................................7, 8, 10, 13

Thorogood v. Sears Roebuck & Co.,
      547 F.3d 742 (7th Cir. 2008)...........................................25

True v. American Honda Motor Co.,
      No. CV 07-287, 2010 WL 707338 (C.D. Cal. Feb. 26, 2010)..........9, 10, 11, 14

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,
      396 F.3d 96 (2d Cir. 2005)...............................................15

Weinberger v. Great Northern Nekoosa Corp.,
      925 F. 2d 518 (1st Cir. 1991)...........................................22

**STATUTES**

Class Action Fairness Act of 2005, 28 U.S.C. § 1712(a)......1, 8, 10, 12, 13, 14, 15, 16, 30

iv

**RULES**

Fed. R. Civ. Proc. 23..........................................................1, 3, 8, 21-22, 26, 30

**OTHER AUTHORITIES**

Wayne Brazil, *For Judges: Suggestions About What to Say About ADR at Case Management Conferences – and How to Respond to Concerns or Objections Raised by Counsel,* 16 OHIO ST. J. ON DISP. RESOL. 165 (2000)................................29

Stephanie Clifford, *Gift Cards With Bells and Whistles,* NEW YORK TIMES, Dec. 10, 2010, at B1.............................................................................................11

Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529 (2004).................................................................................................29

Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009)...............................................................................................5

Christopher R. Leslie, *The Need to Study Coupon Settlements in Class Action Litigation*, 18 GEO. J. L. ETHICS 1395 (2005)...................................9, 10, 12

Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71 (2007)..............................27

Federal Judicial Center, *Manual for Complex Litigation* (4th ed. 2008).....................15

Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 13:20 (4th ed. 2002)................................................................................................8-9

Senate Judiciary Committee, *Report on S. Rep. 109-14* (2005)...............................8-9

Charles Silver, *Due Process And The Lodestar Method: You Can't Get There From Here*, 74 TULANE L. REV. 1809 (2000)..................................................14

James Tharn & Brian Blockovich, *Coupons and the Class Action Fairness Act,* 18 GEO. J. L. ETHICS 1443 (2005).......................................................................12

v

1
2

# REQUIRED STATEMENTS
## (STATEMENTS REQUIRED BY SETTLEMENT NOTICE AND LOCAL RULES)

3
4

## REQUIRED INTRODUCTORY STATEMENT

5
6
7

"I object to the proposed settlement in *Sobel, et al. v. The Hertz Corporation, et al.,* Case No. 3:06-cv-00545 LRHRAM, U.S. District Court, Reno, Nevada" on behalf of my clients. *See* Settlement Notice, ¶ 5(B).

8
9

## REQUIRED STATEMENT UNDER LR IA 10-2

10
11

A petition seeking this Court's permission for admission to practice in this particular case will be filed within one week by associated resident co-counsel. This pleading therefore has complied with LR IA 10-2. *See* LR IA 10-2 (c).

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

# INTRODUCTION

The proposed settlement before this Court is a textbook example of a conflict of interest – a conflict of interest between class members and the class counsel, who is charged to protect clients' interests. That conflict of interest is demonstrated by class counsel's request of something like three-quarters of the value of the entire settlement for itself. Those resources should go primarily to class members, not to the attorneys who are the architects of this settlement. This conflict of interest can be resolved only by this Court.

The Ninth Circuit benchmark is that class attorneys may receive one-quarter of the recovery of their clients, a benchmark that class counsel fails to mention in its fee request. Instead, class counsel gives class members the short end of the stick by requesting fees for itself that it is reasonable to estimate are nearly three times the relief procured for the class. When Congress passed the Class Action Fairness Act in 2005, it specifically warned against settlements like this one – in which attorneys set aside rich sums for themselves while the class members they represent are left with coupons of little value. Class counsel's proposed fee violates this federal law, which requires that attorneys' fees in a case like this must be based on actual class recovery, not lodestar calculations. This settlement unreasonably and unfairly benefits the attorneys at the expense of their clients. Under Rule 23(e) and Rule 23(a)(4), this Court must reject it. At a minimum, the attorneys' fees must be reduced to a fourth of the amount of the coupons redeemed.

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

"Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). In class actions "there is often a conflict between the economic interests of clients and their lawyers, and this fact creates reason to fear that class counsel will be highly imperfect agents for the class. Because of this conflict (and because "the class" cannot counteract its effects via counsel selection, retention, and monitoring), an agent must be located to oversee the relationship between the class and its lawyers. Traditionally, that agent has been the court." *In re Cendant Corp. Litigation,* 264 F. 3d 201, 255 (3d Cir. 2001). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). This Court must independently evaluate "whether a proposed settlement in a class action is fundamentally fair, adequate, and reasonable." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992).

After years of litigation and negotiation over alleged rental car overcharges, plaintiffs and defendants have agreed to settle their differences. As a result, plaintiffs' counsel and lead class members now aim to receive $1.46 million for their trouble. The remaining class members – whose injuries are this settlement's only justification– will, in contrast, receive no money at all. Class members won't get back the arguably unlawful fees that they already paid – they won't even be reimbursed a prorated fraction of what

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

they have lost. Instead, class members will receive coupons (which the settling parties refer to, artfully, as "certificates") which are difficult to negotiate or transfer, and thus have little market value and no cash value. The robust cash payments that class counsel wants to set aside for itself, when compared to the sickly coupon discounts that class counsel has assigned to its clients, cannot be justified.

The fairness of the settlement must be judged by comparing the actual value received by class members to the payments that class counsel receives for its representation. If this coupon settlement generates a typical coupon redemption rate, the benefit that class counsel will take for itself far outstrips the benefits to the class whose interests counsel has, as its central duty, to protect. If the Court approves this settlement, it is reasonable to predict that class counsel will have exploited the class action system by taking, entirely for itself, nearly 75% of the settlement's entire value. Rule 23(e)(2)'s stricture that any settlement must be "fair, reasonable, and adequate" therefore requires this Court to reject the settlement at issue, and a separate "clear sailing" clause in the settlement agreement further disadvantages the class and supplies an independent reason for this Court to scrutinize the settlement.

Objectors Bill Andrews and Walter Weber are the only two parties formally represented in this pleading. However, they symbolize many other class members who believe that the coupons that the proposed settlement offers are essentially worthless– and that class members will therefore receive no real benefit from the settlement at all; the silence of these class members when faced with the opportunity of filing a time-

3

consuming objection to a valueless settlement should not be viewed as acquiescence. Andrews and Weber object to a settlement that one can reasonably assume will give class counsel $1.44 million, several named plaintiffs a total of $20,000, and all other class members who are represented by class counsel, on average, twenty cents.

This objection also serves as notice that counsel Daniel Greenberg intends to appear at the May 17 Settlement Hearing on behalf of Mr. Andrews and Mr. Weber. He reserves the right to cross-examine any witnesses who testify in support of settlement approval.

## I.   The Objectors Are Members of the Class.

In 2008, William Andrews rented cars on several occasions from Alamo Rent A Car at the Las Vegas airport, thus qualifying for membership in the Settlement Class. In 2006, Walter Weber rented a car from Hertz at the Las Vegas airport, thus qualifying for membership in the settlement class. Andrews and Weber are both members of the settlement class, and therefore both of them have standing to object to this settlement.

## II.   The Objection Furthers the Public Interest, Not Simply the Interests of the Objectors.

Objectors Andrews and Weber are represented by the Center for Class Action Fairness, LLC ("the Center"), a non-profit program of the 501 (c)(3) DonorsTrust. The attorneys engaged by the Center represent consumers *pro bono*: the Center's mission is to assist class members aggrieved by class action attorneys – particularly those who

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

negotiate settlements that benefit those attorneys at the expense of their putative clients.

It is perhaps relevant to distinguish the Center's mission from the agenda of those who are often styled "professional objectors." A number of "professional objectors" are for-profit attorneys that attempt or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees; thus, some courts presume that the objector's legal arguments are not made in good faith. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009), 1635-36. This is not the business model of The Center for Class Action Fairness. While the Center focuses on bringing objections to unfair class action settlements, it refuses to engage in *quid pro quo* settlements to extort attorneys. Furthermore, the Center has never settled an objection.

Last month, the *American Lawyer* wrote extensively about the public interest work of the Center in its profile of its founder, Theodore H. Frank. The Center's litigation on behalf of consumers has been covered by, among others, *Forbes,* the *ABA Journal,* and the *National Law Journal*. The Center analyzes class action settlement notices and consumer complaints to determine whether a settlement is objectionable under the law because it favors attorneys over class members; as a non-profit with limited resources, it must restrict itself to objecting only to the most egregiously bad settlements.

## III.   Under Rule 23, Preventing an Unfair Settlement Is This Court's Duty.

"Both the United States Supreme Court and the Courts of Appeals have repeatedly emphasized the important duties and responsibilities that devolve upon a district court

5

pursuant to Rule 23(e) prior to final adjudication and settlement of a class action suit." *In re Relafen Antitrust Litigation*, 360 F.Supp.2d 166, 192-94 (D.Mass. 2005), citing *inter alia Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 623 (1997) ("Rule 23(e) protects unnamed class members from 'unjust or unfair settlements' agreed to by 'fainthearted' or self-interested class 'representatives.'"); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002) ("district judges [are] to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions" prior to settlement).

"Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members.... [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F. 3d 768, 785 (3d. Cir. 1995) (quoting *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)). *See also Riker v. Gibbons*, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010). "A trial court has a continuing duty in a class action case to scrutinize the class attorney to see that he or she is adequately protecting the interests of the class." Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 13:20 (4th ed. 2002). "The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members." *Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989). *Accord Silber v. Mabon*, 957 F.2d, at 701.

It is insufficient that the settlement happened to be at "arm's length" without express collusion between the settling parties; because of the danger of conflicts of

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

interest, third parties must monitor the reasonableness of the settlement as well. There is a need for "special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998). *Accord Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) ("If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained."). *See also Synfuel Technologies, Inc. v. DHL Express, Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) (". . . we note that in [CAFA] . . . Congress required heightened judicial scrutiny of coupon-based settlements based on its concern that in many cases 'counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value.'" (quoting Pub. L. 109-2, § 2(a)(3)(A)); and *Kearns v. Ford Motor Co.,* No. CV 05-5644, 2005 WL 3967998, at *1 (N.D. Cal. Nov. 21, 2005) (In CAFA, "Congress put significant limits on so-called 'coupon settlements' which produce hardly any tangible benefits for the members of the plaintiff class, but generate huge fees for the class attorneys.")

In its Order of August 17, 2010 granting conditional certification of the settlement class, this Court discussed certain Rule 23 (a)(4) interests implicated by this class action, finding that the named plaintiffs would take appropriate measures to fairly and adequately protect the interests of the class. Order Granting Plaintiffs' Motion for Conditional

7

Certification of the Settlement Class, ¶ 3(g). However, that Order did not discuss the Rule 23 (a)(4) interests at stake when there are conflicts not between class members, but rather (as discussed below) between the class attorneys and their clients.

### IV.   This Coupon Settlement Violates Federal Law and Creates a Conflict Between the Class Attorneys and Their Clients.

This settlement grants "certificates" to class members, but they operate identically to coupons. Coupon settlements are disfavored both by considerations of public policy and black-letter federal law. In this case, the coupon settlement cannot pass the requirements that 28 U.S.C. § 1712(a) imposes; in addition, its structure creates a conflict between class counsel and clients that cannot be resolved.

### a.   This Settlement's "Certificates" Are Coupons.

Several factors have contributed to a decline in what are called "coupon settlements" over the last several years; one factor is that such settlements are now officially disfavored by federal law. When Congress passed the Class Action Fairness Act in 2005, it envisioned that coupon settlements would face a harsher level of scrutiny. The Senate Judiciary Committee Report on the Act is a blunt reminder of legislative goals:

> [W]here [coupon] settlements are used, the fairness of the settlement should be seriously questioned by the reviewing court where the attorneys' fees demand is disproportionate to the level of tangible, non-speculative benefit to the class members. In adopting [Section 1712(e)'s requirement of a written determination that the settlement is fair, reasonable and

8

adequate], it is the intent of the Committee to incorporate that line of recent federal court precedents in which proposed settlements have been wholly or partially rejected because the compensation proposed to be paid to the class counsel was disproportionate to the real benefits to be provided to class members.

S. Rep. 109-14, at 31 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 32. The settling parties' proposal is far from the first attempt to provide a cosmetic solution to the coupon problem.[1] Although the proposed settlement carefully avoids calling a certificate a "coupon," the certificates are identical in operation to that disfavored instrument: that is, the only way to benefit from a certificate is to use it to buy something. To state the obvious, it is perfectly accurate to call the certificates in the settlement agreement "coupons." *See Synfuel Technologies v. DHL Express (USA)*, 463 F.3d, at 654 ("a discount on a proposed purchase" is a coupon); *Fleury v. Richemont North Am., Inc.*, No. C-05-4525 EMC, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008) (a coupon settlement is one where the relief constitutes "a discount on another product or service offered by the defendant in the lawsuit"). *Accord True v. American Honda Motor Co.,* No. CV 07-287, 2010 WL 707338 at *11 (C.D. Cal. 2010) (Feb. 26, 2010); Christopher R. Leslie, *The Need to Study Coupon Settlements in Class Action Litigation*, 18 GEO. J. LEGAL ETHICS

---

[1] Other proposed class action settlements have offered "rebates," "vouchers," and "e-credits" (*see, e.g., True v. American Honda Motor Co.*, No. CV 07-287, 2010 WL 707338 (C.D. Cal. Feb. 26, 2010); *Bachman v. A.G. Edwards,* Civ. No. 22052-01266-03 (Cir. Ct., City of St. Louis, May. 21, 2010), *appeal pending,* No. ED95074 (Mo. Ct. App.); *In re Inkjet Litig.,* No. 5:05-cv-3580 (N.D. Cal. Mar. 29, 2011)). But the problem with coupon settlements is not just semantic, but substantive. Regrettably, an unfair settlement agreement, like an unpublishably bad novel, cannot be repaired by resort to the thesaurus.

9

1395, 1396 (2005). The certificates this settlement contemplates are not fungible in the way cash is; rather, they can only be used to reduce the cost of exactly one good that class members, in order to benefit from the certificate, must buy. Another name for such instruments is "coupons." Indeed, the plaintiffs' Joint Declaration In Support of Settlement Approval, § 32, states that the certificates may be used with "*any other discount, coupon, or other promotion*" (italics in original). The lawyers who draft these settlements surely know what a coupon is; they surely know consumers would rather have fungible cash than specialized coupons (how could anyone not?); and their resort to euphemism suggests an awareness that, because of the unique characteristics of coupons, settlements that rely on them are inherently problematic.

### b. As a Matter of Policy, Coupon Settlements Are Inherently Problematic.

Under the Class Action Fairness Act, courts must give heightened scrutiny to coupon settlements. *Synfuel Technologies,* 463 F.3d at 654; *True v. American Honda,* 2010 WL 707338 at *12; *Figueroa v. Sharper Image Corp.,* 517 F. Supp. 2d 1292, 1321(S.D. Fla. 2007); *Kearns v. Ford Motor Co.,* 2005 WL 3967998, at *1. Coupon settlements are problematic because: (1) they often do not provide meaningful compensation to class members; (2) they often fail to disgorge ill-gotten gains from the defendant; and (3) they often require class members to do future business with the defendant in order to receive compensation. *See Figueroa v. Sharper Image,* 517 F. Supp.

10

2d at 1302; *True*, 2010 WL 707338 at *12. The "certificates" at issue exhibit all three problems.

Courts "have generally rejected the idea that the face value of coupons or rebates should be used for settlement valuation purposes." *True*, 2010 WL 707338 at *17. "Compensation in kind is worth less than cash of the same nominal value." *Id.* (*quoting Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 390 (C.D. Cal. 2007) (*quoting In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001))). *See also In re GMC Pick-Up Litig.*, 55 F.3d, at 807. "Where a coupon or rebate is not freely transferable on the open market, as is the case here, it has even less value." *True*, 2010 WL 707338 at *17 (citing cases).

Coupons convey less value to their owners than their face value might suggest for several reasons. For all practical purposes, there is no secondary market in the "certificates," because their transferability cannot go beyond the home.[2] *Id.* Although there is a thriving secondary market in goods like gift cards, the "certificates" will never enter it. *See* Stephanie Clifford, "Gift Cards With Bells and Whistles," NEW YORK TIMES, December 10, 2010, at B1 (the leading gift card resale website sold about $10 million worth of them in 2010). Cash doesn't expire, but the "certificates" do after eighteen

---

[2] Class counsel provides exactly two respects in which these coupons "*represent real value to the Class Members*": they "*can be transferred to other family members and used in conjunction with any other discount, coupon, or other promotion.*" Joint Declaration in Support of Settlement Approval, § 32 (italics in original). Class counsel provides no estimate of this additional "*real value*" in dollars and cents, presumably because it would have to be extremely slight.

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

months (Settlement Notice, ¶ 4(A)); a class member who uses rental cars occasionally, not regularly, is out of luck.[3] Coupon redemption rates are famously low. *See* 28 U.S.C. § 1711, note § 2(a)(3)(A). The rule of thumb is that a redemption rate for a coupon without a secondary market is between 1% and 3%. *See generally* James Tharn & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL ETHICS 1443 (2005). Even that low redemption rate may be an overestimate. *See, e.g.*, Final Report on Settlement Claims and Voucher Redemption, *Ford Explorer Cases,* J.C.C.P. Nos. 4266 & 4270 (Cal. Sup. Ct., Mar. 11, 2010) (only 148 coupon claimants out of a million-member class, creating a redemption rate less than one-fifth of 1%).

The other two prongs of the *Figueroa* triad are also in play here. Coupons which are not redeemed cost defendants nothing. But coupons which are redeemed may simply represent a purchase induced by the settlement. "In many cases, coupons are not punishment; they are … the economic equivalent of a court-supervised promotional campaign." *See* Christopher R. Leslie, "The Need To Study Coupon Settlements in Class Action Litigation," 18 GEO. J. LEGAL ETHICS 1395, 1397 (2005). Furthermore, in order to receive any benefit from the settlement, consumers must once again do business with the same rental car company which plaintiffs allege originally overcharged them. The coupon

---

[3] Class counsel, perhaps in anticipation of this point, suggests in an unsourced footnote that "rental car customers tend to use one or two preferred companies and tend to rent regularly." Joint Declaration in Support of Settlement Approval, § 38, n.2. How much this tendency applies to rental car customers at tourist destinations such as Las Vegas and Reno is not obvious. Class members who do not rent cars regularly enough to be compensated by the proposed settlement may tend to find class counsel's theories unsatisfying.

" 'require[s] the claimant to return to the Defendant to do business with him,' something at least some class members likely would prefer not to do." *Synfuel Technologies, Inc. v. DHL Express, Inc.*, 463 F.3d, at 654 (quoting objectors in part). There is not even any provision in the settlement that allows class members to choose an alternative vendor from among the five different companies that will issue "certificates."

It is unclear to what extent the coupons will encourage additional class member patronage and repeat business, and it would be difficult or impossible for this Court to regularly monitor rental car prices to ensure that the companies at issue do not recoup some portion of the money they lose from the coupons simply by raising their rates. It is hard to say whether the discounts that these coupons create is a cost or a benefit to defendants – whether it is a loss-leader or a profit-maker – although one unambiguous benefit that will go entirely to defendants is that this settlement extinguishes class members' claims. In short, this settlement agreement may place defendants in an enviable posture: if this settlement is approved, they may be able to buy a court-approved marketing program that will extinguish expensive litigation for a bargain-basement price: $1.44 million to the class attorneys, plus a much smaller payout to class members.

### c. As a Matter of Law, The Settlement's Fee Request Cannot Pass the Test of 28 U.S.C. § 1712(a).

If "class counsel agreed to accept excessive fees and costs to the detriment of class plaintiffs, then class counsel breached their fiduciary duty to the class." *Lobatz v. U.S.*

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

*West Cellular of Cal., Inc.*, 222 F.3d 1142, 1147 (9th Cir. 2000).

Because this is a coupon settlement where the injunctive relief is nearly valueless to the class, attorneys' fees "shall be based on the value to class members of the coupons that are redeemed" rather than the theoretical value of the coupons available for redemption. 28 U.S.C. §1712(a). Such low-value settlements where "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value" were a central legislative motivation of the Class Action Fairness Act. *Id.*, § 2(a)(3)(A). "The lodestar amount is particularly inappropriate where, as here, the benefit achieved for the class is small and the lodestar award large." *True*, 2010 WL 707338, *citing Create-A-Card, Inc. v. Intuit, Inc.*, No. C 07-06452 WHA, 2009 WL 3073920 (N.D. Cal. Sept. 22, 2009). Attorneys' fees should be based on a percentage of the recovery. "The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains. This interest-alignment device is not perfect. . . . But [an] imperfect alignment of interests is better than a conflict of interests, which hourly fees may create." *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986). *See generally* Charles Silver, *Due Process And The Lodestar Method: You Can't Get There From Here*, 74 TULANE L. REV. 1809 (2000) (citing authorities that show a "broad consensus that percentage-based formulas harmonize the interests of agents and principals better than time-based formulas like the lodestar approach."). The percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores,*

*Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). In contrast, judicial reliance on the lodestar will "create an unanticipated disincentive to early settlements, tempt lawyers to run up their hours, and compel district courts to engage in a gimlet-eyed review of line-item fee audits." *Id.* Both public policy and the clear language of § 1712(a) require fees to be based on actual class recovery.

In this case, the total value of the settlement fund can be derived from the value of all the coupons that the class actually uses summed with the cash that attorneys and named plaintiffs actually get. The dollar value of those benefits and that cash should be "treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel." Manual for Complex Litigation (4th ed. 2008), § 21.71, p. 525. The attorneys' fees may be compared to this total fund to determine whether the allocation between attorneys and the class is reasonable. *See id.* Because this is a coupon settlement, attorneys' fees "shall be based on the value to class members of the coupons that are redeemed" rather than the theoretical value of the coupons available for redemption. 28 U.S.C. §1712(a). *See also In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d, at 820-21 (considering automotive coupons and "separate" attorneys fees as a common fund "in economic reality"). Objectors maintain, however, that the proposed settlement should be rejected outright, given the striking contrast between the poor relief available to the class and the fees that class counsel have secured for themselves.

Mysteriously, the extensive discussion of attorney compensation in briefs filed with

this Court is unaccompanied by anything like a similar discussion of the value of this settlement to the class members who ought to be its primary beneficiaries. To use the language of class counsel, what *"real value to the class members"* – as expressed in dollars, not simply italics – will this settlement achieve? It is not so much that class counsel has failed the test of 28 U.S.C. §1712(a) by giving a bad answer to this question; instead, it looks as if class counsel never supplied anything like an answer at all.

### d. Based on the Limited Information the Settling Parties Have Supplied, the Best Inference Is That Class Counsel Has Vastly Overpaid Itself and Vastly Overestimated the Coupons' Real Value.

Unlike the documents filed with this Court by the settling parties, the assumptions this brief makes are transparent, and the calculations it provides are simple. *First,* there are "approximately 2.5 million class members." Joint Declaration In Support of Settlement Approval, § 23. *Second,* if this court assumes that the benchmark fee of 25% is appropriate, the class ought therefore to receive something like $4.32 million in coupon benefits.[4] *See Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (appropriate benchmark for fees is 25% of recovery). *Third,* no filings from the settling parties provide any support for the theory that the class will receive anything like the $4.32 million in benefits that the benchmark of *Six Mexican Workers* requires.

---

[4] That is, assuming that it is appropriate for class counsel to take as much as 25% of the resources that the proposed settlement agreement contemplates, the class members are entitled to the other 75%. To put it another way, if class counsel is entitled to $1.44 million, class members are entitled to three times that amount. For purposes of simplicity, these calculations exclude the compensation for named plaintiffs.

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

Children may be forgiven for wanting their dessert before eating their vegetables, but class counsel's behavior in determining its own fee in the absence of an open and transparent determination of what the class will receive is more troubling. There is no way to get around the fact that an accurate determination of the settlement's *"real value to the class members"* should be at the center of any discussion of class counsel's compensation. If class counsel could show that its members would get (for instance) $8 to $9 million of value by using their coupons, this would demonstrate that class counsel would deserve double what this settlement will pay them. But if the actual value of redeemed coupons is far under $4.32 million, then the benchmark of *Six Mexican Workers* requires a significant reduction in class counsel fees.

*Six Mexican Workers* illuminates a boundary beyond which class action settlements should not go – a boundary that guides class counsels away from opportunistic behavior. However, because the settlement agreement fails to reveal central facts that determine the value of the settlement (such as the settling parties' assumptions and predictions about the frequency of coupon use and the distribution of denominations of coupon value), those who must judge the fairness of this settlement – formerly, class members; now, this Court – are left in unfamiliar territory without a map. No objector in this case has the familiarity with details that years of litigation and negotiation have doubtless provided to the settling parties: it is their duty to provide facts that would make the *"real value to the class*

*members*" of this settlement transparent, and they have failed.[5]

It is, of course, possible to make rough assumptions that shed light on whether the value this settlement creates for class members is in the right neighborhood. The following figures are rough estimates; if objectors had the same access to the details of the settlement as the settling parties do, no guesswork would be necessary. As noted above, a typical rate of coupon redemption is 1%: perhaps, therefore, 1% of class members will actually use their coupons, and perhaps all of them are repeat renters who qualify for a $20 discount. These assumptions would create a value of half a million dollars for the class, which suggests that an appropriate share of settlement value for class counsel would

---

[5] Although the settling parties made very few of their assumptions transparent, their occasional revelations about class demographics suggest that this brief's assumptions are in the right neighborhood. Plaintiffs claim that "the value of the certificates will exceed the amount of the improper charge for a significant portion of all Class Members and that for the great majority of other class members the certificates will represent a substantial percentage of the allegedly improper fees." Joint Declaration In Support of Settlement Approval, § 34. But this must be a reference merely to the denomination of the coupons, not their actual value. If the Declaration's statements described the actual value likely to be received by class members under this settlement, it is reasonable to assume that class counsel could double what it is currently asking for just by requesting a piece of the common pool under the *Six Mexican Workers* benchmark. (If the Declaration's statements described the actual value that would be received by class members, one would have to assume an extremely rosy scenario, such as that half the 2.5 million class members would benefit $10 by using the coupon.) In fact, all the settling parties must know that these claims cannot be interpreted as a statement of the actual value that class members will receive, and that it would be irrational for class counsel to ask for any payment that is determined by what the settlement agreement will in the future achieve for the class. Class counsel is almost certainly aware of coupons' low redemption rate as well as that rate's downward pressure on the actual value that class members in such settlements receive. The Joint Declaration's figures must therefore be heavily discounted because most coupons will never be used by class members, a fact that presumably endears coupon settlements to defendants.

18

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

top out somewhere around $166,000.

These calculations are not just matters of law. They are matters of simple math, and they imply three things. First, they make certain assumptions about redemption rates and coupon values, assumptions which became necessary in the absence of transparency from the settling parties on these matters.[6] Second, if the above assumptions are anywhere in the ballpark, *class counsel is apparently asking this Court to approve a payment that is about eight or nine times the appropriate maximum,* given the benchmark of *Six Mexican Workers;* furthermore, class counsel is asking for nearly three-quarters of the total value of the settlement. Third, assuming that class members will in fact receive a total of value of $500,000 from the settlement, this means that each class member is receiving, on average, a grand total of twenty cents per capita – raising the question of whether it is really in the best interests of this nation and its judicial system to recognize a twenty-cent *de minimis* injury, especially because of the significant administrative costs that class counsel has decided to pass through to its putative clients. As noted above, these

---

[6] At least three assumptions could be made more exact, given more transparency from the settling parties. First, as noted above, it is unclear to objectors exactly what percentage of class members can reasonably be estimated to redeem their coupons. Second, it is unlikely that all participating class members will qualify for the $20 version. Third, because class counsel asserts that rental car customers tend to demonstrate some brand loyalty, Joint Declaration in Support of Settlement Approval, § 38, n.2, this brief assumes that each class member receives one coupon. The second assumption likely overstates the benefit to class members, and the third likely understates it; perhaps they cancel out.

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

calculations are rough assumptions:[7] nonetheless, they reveal much more about the *"real value to the class members"* than anything the settling parties have yet filed. Perhaps class counsel has reason to assume, for example, that coupon redemption rates will be closer to 10% than 1%, but such an assumption should be stated and supported.

Structurally, this settlement is quite similar to a series of other settlements struck down by the Seventh Circuit on the grounds that they were "untenable." *See Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, 953 (7th Cir. 2006). Up to a point, a zero-risk settlement that compensates class members for a significant fraction of their original injury is obviously a better alternative than appearing for trial and rolling the dice. But suits with microscopic merit aren't supposed to be on the docket, let alone producing payoffs of $1.44 million for class counsel, in the first place. Again, some simplifying assumptions shed light on the nature of this settlement: assume that plaintiffs estimate that each class member deserves to be compensated $20. Because the settlement actually

---

[7] As math teachers sometimes say, you must show your work: 2.5 million class members, multiplied by 1% of coupon users, multiplied by $20 of value per user, equals $500,000 of total class compensation. Adherence to the benchmark of *Six Mexican Workers* creates a 3:1 ratio for splitting the total fund between the class and the class counsel; the quotient of $500,000 divided by 3 (or, taking things one step at a time, the one-quarter share of all settlement resources when the three-quarters share is $500,000) is roughly $166,000. If class counsel is entitled to $166,000 (or, more precisely, a third of $500,000), but instead requests the larger figure of $1.44 million, then class counsel is requesting an impressive payday of 864% of the amount it is entitled to. If class counsel receives its entire request of $1.44 million but the class only receives $500,000, then class counsel is receiving nearly three times as much as the class, or a little over 74% of the total fund. To derive the benefit per class member, divide $500,000 by 2.5 million; the quotient is a fifth of a dollar, or 20 cents. Again, for purposes of simplicity, these calculations exclude named plaintiffs.

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

produces only 20 cents for each class member, it follows that the settlement compensates class members for exactly 1% of their injuries.[8] This invites some unpleasant inferences about class counsel's decisions in this action (although such inferences likely could not be drawn if the architects of the settlement had been transparent in their assumptions about coupon use and value). In particular, one of the two following propositions about this settlement must be true: either the action had a significantly higher chance of success than the payment to class members demonstrates, or the suit only had approximately a 1% chance of success. If the action had a significantly higher chance of success than the payment demonstrates, "then the failure to award effectual relief to any other class member makes the deal look like a sellout"; that is, class counsel has underperformed in its protection of class interests. *Id.*  On the other hand, actions with almost no chance of success arguably shouldn't be brought at all: "And, if the chance of success really is only 1%, then shouldn't the suit be dismissed as frivolous and no one receive a penny?" *Id.* What follows from this is that if a settlement compensates class members at an extremely low percentage, the court whose duty it is to independently evaluate the settlement should investigate whether the average class member is being undercompensated or, alternatively, whether the chance of success in the courtroom is equivalently low. Neither alternative would reflect well on the architects of that settlement. But whether the class is being undercompensated here (which would make the settlement inadequate) or the action is nearly meritless (which would make the settlement unreasonable), the overpayment to

---

[8] Twenty cents is 1% of $20.

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

class counsel and underpayment to the class certainly makes the settlement unfair. This Court, under Rule 23(e), should not approve it.

### V.   The "Clear Sailing" Provision Is Deficient Under Rule 23(a)(4).

Class counsel seek to secure $1.44 million from the proposed settlement. However, the compensation that the 2.5 million class members will receive from the settlement (with the exception of the four named plaintiffs), on whose behalf that action was supposedly brought, remains shrouded in mystery. This is exactly backwards.

A court should give a settlement "special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement." *Hanlon*, 150 F.3d at 1021 (9th Cir. 1998). The problem is exacerbated here because of the "clear sailing" arrangement in the settlement: class counsel negotiated a provision protecting their fees from challenge by the defendant, a clause which placed class counsel's interests ahead of those of the class. Settlement Agreement, § 2.4. Such a provision invites additional scrutiny of the settlement. *Weinberger v. Great Northern Nekoosa Corp.*, 925 F. 2d 518, 524 (1st Cir. 1991); *cf. also Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 961 n. 5 (9th Cir. 2009). Is the clause simply a gift from the defendant that benefits the class counsel, or did it come at the expense of the class? "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have

22

obtained." *Staton v. Boeing Co.*, 327 F.3d, at 964.

In this settlement, the plaintiffs have negotiated $1.44 million for their counsel – whether or not the class secured proportional relief from this coupon settlement. This provision cannot possibly benefit the class. When the defendants decided to pay up in order to settle this action, it seems unlikely that they cared much about what proportion of the checks they would pay out would go to the class, or to class counsel. Presumably, they were indifferent: therefore, every dollar negotiated on behalf of plaintiffs' counsel is a dollar that could have as easily gone to the class. In a typical common fund settlement, the district court may use its discretion to award smaller fees than requested by plaintiffs' counsel – when it does so, the class may benefit from the surplus. Under the proposed settlement, if the Court awards less than the $1.44 million that the defendants have already agreed to pay, the defendants will be the only beneficiary. The settlement is therefore worse for the class than a traditional common fund, yet plaintiffs have done nothing to improve this inferior settlement structure.

"Separate" attorneys' fees should be treated as bargained recovery from the defendants that the settling parties have earmarked exclusively for the benefit of class counsel. "There is no exception in Rule 23(e) for fee provisions contained in proposed class action settlement agreements. Thus, to avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton v. Boeing Co.*, 327 F.3d 938, at 963. There is good reason for this: "If fees are

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Id.* at 964.

"That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award." *Id.* A "defendant is interested only in disposing of the total claim asserted against it." *Id.* "The rationale behind the percentage of recovery method also applies in situations where, although the parties claim that the fee and settlement are independent, they actually come from the same source." *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d, at 820-21. "[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case." *Id.* at 821. "[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal." *Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996).

Class counsel argues that "*the fee award is being paid by Defendants and is therefore **not** reducing benefits for the class,*" and that the fee was negotiated between the settling parties only after they had agreed upon compensation for the class. Joint Declaration In Support of Settlement Approval, § 8 (emphasis in original). In a companion brief, class counsel adds that because defendants have agreed to pay fees,

24

costs, and named plaintiffs' incentive awards as well as compensation to the class, "*the award will not reduce the class's recovery.*" Plaintiffs' Motion for an Award of Attorney's Fees, § I (emphasis in original). But these bald statements, even when expressed in both boldface and italics, cannot shore up insupportable arguments. It defies common sense to believe that both plaintiffs and defendants couldn't have understood the several components of the settlement agreement as part of a whole, or just compared them to one another – or that plaintiffs and defendants couldn't have understood the back-to-back negotiations they successfully concluded on June 4, 2010 as being related to each other, or indeed as being two parts of a larger budget – but this is apparently class counsel's position. Class counsel's emphasis on the fact that the settlement's material terms were agreed upon before attorney compensation was negotiated (*id.,* at § II) is even more puzzling. Presumably, it is class counsel's view that it couldn't have occurred to any of these hard-nosed negotiators that when some amount of money is left unused after one set of obligations is satisfied, the money can then be spent on something else.

Any court judging the fairness of a class action faces "a responsibility difficult to discharge when the judge confronts a phalanx of colluding counsel. The defendant wants to minimize outflow of expenditures and the class counsel wants to increase inflow of attorneys' fees. Both can achieve their goals if they collude to sacrifice the interests of the class." *Thorogood v. Sears Roebuck & Co.,* 547 F.3d 742, 745 (7th Cir. 2008). In short, this Court should understand the clear-sailing agreement in this settlement as a problem and extensive scrutiny of the facts of the settlement agreement as its solution.

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

This is a fee-driven settlement: the attorneys have, quite literally, acquired compensation for their clients in an inferior currency as compared to what they have gotten for themselves. It is unclear whether the lack of recovery for class members is because class counsel tacitly colluded with the defendant or because class counsel simply disregarded their obligation to negotiate a settlement that was likely to provide meaningful recovery to their clients. But in either situation, the attorneys have failed to meet the standard of Fed. R. Civ. Proc. 23(a)(4), and the settlement fails to meet the standard of Fed. R. Civ. Proc. 23(e). Because class counsel, by failing to negotiate for reversion to the class of any denied fee request, have put their own interests ahead of those they are charged to represent, the settlement deserves a higher level of scrutiny by this Court than settlement evaluations typically require.

## VI.   The Court Should Discount Attempts By The Settling Parties To Infer Class Approval From A Low Number Of Objections.

Any given class action settlement, no matter how much it betrays the interests of the class, will produce only a small percentage of objectors. The predominating response will always be apathy, because objectors – unless they can obtain *pro bono* counsel – must expend significant resources, on an enterprise that will create little direct benefit for themselves, over something that is worth only a few dollars in coupons to any one person. Another common response from non-lawyers will be the affirmative avoidance, whenever possible, of anything involving a courtroom. Class counsel may argue that this understandable tendency to ignore notices or free-ride on the work of other objectors is

best understood as acquiescence in or evidence of support for the settlement. This is wrong. Silence is simply *not* consent:

> There may be many reasons why class members in this case didn't register their concerns about the settlement: lack of interest, time, information, etc. Like the Third Circuit in the *General Motors* case, the Court is unwilling to automatically equate class silence with a showing of "overwhelming" support for the settlement. Therefore, the fact that statistically few people bothered to opt-out or file an objection ultimately counts little in the Court's overall fairness analysis.

*Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001), *citing In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d, at 789. "Silence may be a function of ignorance about the settlement terms or may reflect an insufficient amount of time to object. But most likely, silence is a rational response to any proposed settlement even if that settlement is inadequate. For individual class members, objecting does not appear to be cost-beneficial. Objecting entails costs, and the stakes for individual class members are often low." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007).

There is usually little hope that opt-outs can recover for their claims – the entire purpose of class actions is to aggregate claims that would be uneconomical to bring individually. "Almost by definition, most class members have too little at stake to warrant opting out of the class litigation and filing an individual lawsuit. Thus, opting out is probably not a viable option even though a proposed settlement is unfair or inadequate." *Id.* at 109. Without *pro bono* counsel to look out for the interests of the class, filing an

27

objection is economically irrational for any individual. "[A] combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *In re GMC Pick-Up Litig.*, 55 F.3d at 812, *citing In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217-18 (5th Cir. 1981); *cf. Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 297 (M.D. Pa. 1995) ("'[T]he silence of the overwhelming majority does not necessarily indicate that the class as a whole supports the proposed settlement . . . .'"). "[A] low number of objectors is almost guaranteed by an opt-out regime, especially one in which the putative class members receive notice of the action and notice of the settlement offer simultaneously." *Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439, 446 (W.D. Pa. 2007). "[W]here notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 680-681 (7th Cir. 1987). "Acquiescence to a bad deal is something quite different than affirmative support." *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1137 (7th Cir. 1979) (reversing approval of settlement).

When class members have little at stake, as in an action such as this where the maximum recovery is a $20 coupon, the rate of response is famously low; as such, it cannot be seen as something akin to an election or a public opinion poll. *See In re GMC Pick-Up Litig.*, 55 F.3d at 813 (finding that "class reaction factor" does not weigh in favor

28

of approval, even when low number of objectors in large class, when "those who did object did so quite vociferously"); Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1532 (2004).

The judge must act as a guardian for *all* class members – whether or not they have formally entered the case by registering an objection. "[T]he absence or silence of class parties does not relieve the judge of his duty and, in fact, adds to his responsibility." *Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373, 375 (D. Kan. 1971). Regrettably, the realm of the courtroom is, for many, mysterious and perhaps even a little frightening.  Wayne Brazil, *For Judges: Suggestions About What to Say About ADR at Case Management Conferences – and How to Respond to Concerns or Objections Raised by Counsel*, 16 OHIO ST. J. ON DISP. RESOL. 165, 170 (2000) ("court procedures can be intimidating and confusing to non-lawyers").  The settlement's proponents have the burden to show the proposed settlement and the proposed fee award is fundamentally fair, adequate, and reasonable, and class counsel have simply not carried this burden.

## CONCLUSION

Calling coupons "certificates" does not protect a settlement from the scrutiny that its use of coupons requires. This coupon settlement provides a benefit of, speaking roughly, twenty cents per class member while assigning the lion's share to class counsel

29

in cash. It suffers from all of the problems that lead courts to criticize such settlements; it is contrary both to good public policy and to case and statutory law. It is a fee-driven settlement for the benefit of class counsel, and must be rejected under Rules 23(a)(4) and 23(e). In addition, the "clear sailing" clause of the settlement seems to jeopardize the interests of the class and provides grounds for stronger-than-usual scrutiny by this Court.

If the settlement is nevertheless approved, any fee award must comply with 28 U.S.C. § 1712(a). This fee must be based on the actual redemption rate of coupons and therefore cannot be calculated after those coupons are used; as such, the $1.44 million attorney fee request, which demands the immediate payment of roughly three-quarters of the settlement's value, is not so much excessive as it is exorbitant.

Respectfully submitted,

/s/ Daniel Greenberg
Daniel Greenberg (pro hac vice pending)
(AR BAR 2007193)
**GREENBERG LEGAL SERVICES**
55 Fontenay Circle
Little Rock, AR  72223
DnGrnbrg@gmail.com
(501) 588-4245

/s/ Michael Radmilovich
Michael Radmilovich, Esq.
(NV BAR 4036)
**MICHAEL RADMILOVICH, P.C.**
5380 Twin Creeks Drive
Reno, NV  89523
michael@radmilovich.com
(775) 771-4958 / fax (775) 473-9914

On behalf of Objectors William Andrews and Walter Weber, dated April 7, 2011.

30

# CERTIFICATE OF SERVICE

I hereby certify that I have taken measures to electronically file the foregoing with the Clerk of the Court using the ECF system.

I hereby further certify that on this day I caused a true and correct copy of the foregoing to be served via First Class Mail upon addressees designated below.


Clerk of the Court
U.S. District Court
400 South Virginia Street
Reno, NV 89501

David B. Zlotnick
david@kkbs-law.com
Law Offices of David B. Zlotnick
625 Broadway, Suite 635
San Diego, CA  92101
(619) 232-0331
Counsel for Plaintiff

Peter S. Hecker
phecker@sheppardmullin.com
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Ctr., 17th Floor
San Francisco, CA  94111
(415) 434-9100
Counsel for Hertz


DATED this 8th day of April, 2011.


/s/ Daniel Greenberg

Daniel Greenberg

31

DAN GREENBERG, ATTORNEY AT LAW
55 FONTENAY
LITTLE ROCK AR 72223

CLERK OF THE COURT
U.S. DISTRICT COURT
400 SOUTH VIRGINIA STREET
RENO NV 89501