G. David Robertson, Esq. (SBN 1001)
Jarrad C. Miller, Esq. (SBN 7093)
ROBERTSON & BENEVENTO
50 West Liberty Street, Suite 600
Reno, Nevada 89501
Telephone: (775) 329-5600
Facsimile: (775) 348-8300
gdavid@nvlawyers.com
jarrad@nvlawyers.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF NEVADA

JANET SOBEL, DANIEL DUGAN, PhD.,
and LYDIA LEE, individually and on behalf
of all others similarly situated,

                Plaintiffs,

    vs.

THE HERTZ CORPORATION, a Delaware
corporation; and, ENTERPRISE RENT-A-
CAR COMPANY, a Missouri corporation,

                Defendants.

_____/

Case No.: 3:06-cv-00545 LRH-RAM

**PLAINTIFFS' REPLY BRIEF IN
SUPPORT OF FINAL APPROVAL
OF CLASS ACTION SETTLEMENT
AND RESPONSE TO OBJECTIONS**

## I.    INTRODUCTION

Plaintiffs, Janet Sobel, Daniel Dugan, Ph.D., Lydia Lee, and Mark Singer ("Plaintiffs"), submit this reply brief in support of final approval of the proposed settlement of this class action and in response to the objections filed with the Court by Settlement Class Members.   Plaintiffs respectfully request that the objections be overruled and the Settlement be approved.[1]

Of the approximately 2.5 million members of this large Settlement Class, only 59 persons, or well under one hundredth of 1%, have objected to the proposed settlement.  Of those 59 persons, 18 object basically on the grounds that they believe the case lacks merit and is a

_____

[1]   Plaintiffs have previously responded to the submissions from the United States Department of Justice and the Board of Regents of the Nevada System of Higher Education ("NSHE").   We are separately responding to the objections made to the motion for an award of attorneys' fees and incentive awards.

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT  AND RESPONSE TO OBJECTIONS

PAGE 1

1   waste of judicial resources.   The other 41 persons assert essentially that the settlement is

2   inadequate and/or object to receiving discount certificates rather than cash, particularly given

3   that counsel are being paid in cash.  By contrast, over 84,000 Settlement Class Members have

4   already registered for the settlement benefits, without objection.  We also anticipate that untold

5   thousands of other persons will register prior to the July 18, 2011 deadline.

6          Obviously, Plaintiffs and Class Counsel would have much preferred to obtain a

7   settlement that fully compensated all Class Members in cash for the concession recovery fees

8   they paid.  Class Counsel tried to negotiate such a cash settlement, but it was not obtainable.  We

9   fought this case for over four years through multiple rounds of briefing on the merits and

10  discovery that included depositions from New Jersey to California.  Hence, we were well aware

11  of the strengths and weaknesses of Plaintiffs' claims.   When it came time to negotiate the

12  Settlement, Class counsel had to take a realistic view of the strengths and weaknesses of the case

13  and recognize the hard fact that Plaintiffs' claims faced serious risks, particularly in light of the

14  Nevada Legislature's decision to revise the governing statute.  The proposed Settlement before

15  the Court, which provides discount certificates worth $10 or $20 to the Settlement Class

16  Members who register, is a fair, reasonable and adequate resolution of the claims asserted in this

17  matter, given the weaknesses and risks of this case as it stood after four years of litigation, and as

18  shaped by the Court's decision on the parties' cross-motions for summary judgment.   As

19  discussed further below, the outcome of the litigation remained highly uncertain, particularly as

20  to damages, although there were also issues as to class certification as well as potential

21  challenges on appeal.

22          None of the objectors adequately address or dispute the weaknesses or risks of the case.

23  As noted above, however, almost 1/3 of them take the position that the case is so weak that it

24  should never have been brought; the others assert that we should have obtained much more.  We

25  do not agree with either of those extreme views.   Plaintiffs had and have legitimate, albeit

26  modest sized, claims.  But there are weaknesses in Plaintiffs' case which, when taken together,

27  compel the conclusion that this settlement-- providing certificates of true tangible value in

28  exchange for the release of potentially problematic claims -- should be approved by the Court.

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT  AND RESPONSE TO OBJECTIONS

PAGE 2

1    Contrary to the arguments of certain objectors, since the passage of the Class Action

2  Fairness Act ("CAFA"), federal courts have approved settlements like this one in which class

3  members release modest sized claims in exchange for certificates or coupons giving them the

4  opportunity to obtain discounts on future purchases from defendants.   Such a resolution is

5  particularly appropriate in this case where the damages at issue are quite modest and difficult to

6  quantify, the certificates can be used over an 18-month period for car rentals anywhere in the

7  United States, the certificates are transferable, albeit with restrictions, and do not require class

8  members to engage in substantial transactions, such as the purchase of an automobile.

9    Indeed, the Settlement in this case is the result of good-faith negotiations between

10  Plaintiffs and Defendants following four years of vigorously contested litigation; and the

11  Settlement Class' response to the settlement has been overwhelmingly positive.   The few

12  Objectors who have challenged the settlement as collusive have no absolutely evidence to

13  substantiate that claim – nor does any such evidence exist since this case has been hard-fought by

14  both sides at every turn.   Further, the vast majority of Settlement Class Members who have

15  responded to the Class Notice have registered for settlement benefits. [2]   For the reasons set forth

16  in Plaintiffs' opening memorandum, as well as those discussed below, the settlement terms are

17  fair and reasonable, and the Court should approve the proposed settlement without hesitation.

18  **II.    RELEVANT FACTS**

19  **A.        The Strengths and Weaknesses of Plaintiffs' Case**

20    Plaintiffs believe strongly in the merits of their claims – a belief borne out by the Court's

21  opinions denying Hertz's motion to dismiss and later granting Plaintiffs' Motion for Summary

22  Judgment on their claim under N.R.S. § 482.31575 (the Statute).   Notwithstanding the strength

23  of Plaintiffs' claims on the merits, however, there remained significant risks on appeal as well as

24  the possibility that the Court would deny class certification.

25  _____

26    [2]  Defendants have recorded over 84,000 registrations for benefits, and the period for
registration has more than two months still to run.  April 25, 2011 Dec. of Donald J. Andra (Doc.
27  226) ¶ 5; April 26, 2011Dec. of Jeffrey Gyomber (Doc. 229) ¶ 7.  Fewer than 5,000 exclusion
requests have been received.  April 28, 2011 Declaration of G. David Robertson, Esq. (Exhibit 1)
28  at 1 - 2.  As discussed below, 60 objections were filed with the Court.  As is typical (even with
cash settlements), most Class members have simply not participated.

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

1    In addition, two factors created substantial risk that, notwithstanding the Court's

2  summary judgment ruling, Plaintiffs would not obtain any significant recovery. First, the Nevada

3  Legislature's 2009 decision to amend the Statute raised a number of concerns.   That decision

4  eliminated the possibility of Plaintiffs obtaining injunctive relief – a key reason that Plaintiffs

5  brought this suit.   Although this Court found that the statutory change was not retroactive, that

6  issue remained a serious risk on appeal.   Moreover, the Legislature's decision to expressly allow

7  such surcharges undercut Plaintiffs' argument that Defendants imposition of unbundled

8  concession recovery fees ("CRFs") was unfair and anti-consumer.

9    Second, many of the objectors appear to erroneously assume that Plaintiffs and the Class

10  were entitled to damages in the entire amount of the CRFs that Defendants collected.   As this

11  Court noted in denying summary judgment as to damages, that is far from clear. Plaintiffs faced

12  significant problems and risks in quantifying any damages, given that Defendants and their

13  competitors had all charged such unbundled fees since the mid-1990s and that Defendants could

14  and likely would have simply raised their base rates proportionally had they not been able to

15  assess these surcharges.   Under the normal "out-of-pocket" damages rule governing tort claims,

16  Defendants would undoubtedly argue strongly that Plaintiffs had not sustained any damages; and

17  plaintiffs faced serious problems proving their entitlement to any material damages.

18    When Plaintiffs filed the case, we hoped and expected to be able to argue for restitution

19  of all unbundled CRF charges, but the statutory change and the Court's ruling on summary

20  judgment made clear that it was highly unlikely we would obtain such full restitution.   Not only

21  did the Court refuse to order restitution for the individual Plaintiffs, the Court granted Hertz's

22  summary judgment motion as to Plaintiffs' claim under the Deceptive Trade Practices Act,

23  expressly holding that "[i]n light of Hertz's full disclosure of the total price at the time of the

24  reservations. . . Hertz's practice was not deceptive within the meaning of the DPTA."   Doc. 111

25  at pp. 18 (3/17/10).     Given the Court's finding that Hertz's conduct was not deceptive,

26  Plaintiffs' counsel reasonably concluded that there was little likelihood that the Court would

27  order full restitution of the unlawful charges.

28

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT  AND RESPONSE TO OBJECTIONS

PAGE 4

As a result, absent the Settlement, we could have litigated for many more years, including a trial on damages and an appeal, with little likelihood of obtaining any substantial cash recovery for the Class. Under these circumstances, the present Settlement was and is appropriate.

**B.          The Settlement Negotiations and Terms**

This Settlement was only reached after four years of litigation and an extended mediation session before the Honorable Ronald M. Sabraw (Ret.), who served as a Judge of the Alameda County (California) Superior Court for 20 years, including six years as head of that Court's complex litigation department where he handled many class actions and other complex cases.[3] As Judge Sabraw has commented:

> The mediation involved many complex and difficult issues, and was hard-fought by all. The parties addressed many contentious issues, and counsel for all parties vigorously represented their clients' interests.
> In the course of one 12-hour day of mediation, and subsequent lengthy follow-up communications with both sides throughout June, the parties worked through a range of procedural and substantive considerations, and they ultimately arrived at a thoughtful and innovative settlement package that I believe is well-tailored to the strengths and weaknesses of all parties' positions.

Declaration of Hon. Ronald M. Sabraw (Ret.) at ¶¶ 5-6.

Plaintiffs' counsel has substantial experience prosecuting complex cases and worked hard to obtain the best settlement possible. Like any settlement, this one involved compromise and does not represent our fondest hopes. But it is a reasonable and fair resolution of this dispute.

**1.          Process of the Settlement Negotiations.**

As the Court is aware, the parties reached this settlement following an extended mediation before the Judge Sabraw. The objectors may not realize that the parties did not consummate the settlement even after an extended day of mediation, but rather took an additional month before reaching an agreement in principle. Moreover, contrary to the contentions of certain objectors, there was no trade off of the Class' recovery so that Plaintiffs' Counsel could obtain greater fees. Indeed, Plaintiffs' Counsel insisted on negotiating the settlement terms for the Class prior to any discussions as to fees. At all times, Plaintiffs'

---

[3]      Judge Sabraw's previously-filed Declaration and Resume are attached to the accompanying Robertson Declaration as Exhibit A.

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

Counsel were willing to proceed with the settlement without any "agreement" as to their fees and to submit their fee request to the Court for its determination.  But Defendants insisted upon a cap to the fees that Plaintiffs' Counsel could request and offered not to oppose a request that was less than that cap.  The parties ultimately agreed on a negotiated cap, but that was only negotiated after the basic settlement terms had been agreed to.   Robertson Decl at 2.

**2.      The Settlement Consideration.**

In exchange for Settlement Class Members' releasing their claims, the Settlement provides discount certificates to those Settlement Class Members who register.  Each certificate is worth $10 (for persons who rented once or twice from a given brand) or $20 (for persons who rented three or more times).  The certificates can be used on a future rental at any U.S. location of the issuing brand over a period of 18 months following their issuance.  Settlement Agreement (Doc. 123-1) ¶ 2.2(e).    Settlement Class Members need not travel to use the certificates – the Defendants all have thousands of locations across the country, including suburban and urban locations.     Most importantly, the certificates *can be used in combination with other discounts* and can be transferred to parents, children, spouses and legally recognized domestic partners who live at the address of the Settlement Class Member.  Settlement Agreement (Doc. 123-1) ¶¶ 1.15, 2.2(e).   As discussed above, these certificates have real value, and the overwhelming majority of Class members who have responded have chosen to participate in the Settlement.

In assessing the reasonableness of the Settlement, it is critical to bear in mind the fact that the great majority of Class members have quite modest claims.  The CRFs they paid were typically 10-11% of their total rental (excluding taxes).    Hence, even assuming that Settlement Class Members would be entitled to recover 100% of the CRFs they paid (which we view as highly unlikely), the damages on a $100 rental would amount to only about $10, and the Settlement certificates would fully compensate such renters for their losses.

If all Class members were to go through the simple registration process, which literally takes less than a minute and does not require any documentary support, Defendants would be required to issue approximately $37 million in certificates.  Of course, we recognize that, as in virtually any class action, most Class members simply will not participate.  But in assessing the

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT  AND RESPONSE TO OBJECTIONS

PAGE 6

1   reasonableness of the Settlement, it is neither fair nor appropriate to penalize the Parties for the

2   fact that most Class members will not bother to participate – particularly where, as here, the

3   Court has found no evidence of intentional misconduct.

4         In any event, it appears likely that at least 100,000 persons (or 4% of the Class) will

5   register for settlement benefits in this case – a number well within historical norms for Class

6   actions involving modest claims.   Finally, the Objectors fail to account for the fact that

7   Defendants have undertaken the significant burdens and expense of providing notice to this Class

8   of 2.5 million people and administering the Settlement.  We understand that defendants' notice

9   and administration costs to date exceed $750,000.  Robertson Decl at 2.

10   **3.      The Settlement Consideration and Fees Are Distinct and Separate.**

11         Although we respond to the objections raised to Plaintiffs' fee request in a separate brief,

12   there are two respects in which Counsel's fee request is relevant here.  First, many of the

13   Objectors assume erroneously that counsel's fee petition is based on a "common fund" theory

14   and that the fees being sought by Class Counsel directly or implicitly reduce the Class' recovery.

15   That assumption is incorrect.  Rather, Counsel seek fees as a matter of statutory right pursuant to

16   N.R.S. Section 432.31585 and that award is wholly independent of the consideration being paid

17   to the Class.   Further, as noted above, the Class recovery was negotiated and agreed upon prior

18   to any negotiations with respect to any payment of counsel's fees.   Plaintiffs' Counsel were

19   ready and willing to agree upon the Class settlement without any agreement as to their fees and

20   to leave the fee issue to the Court's determination.  Hence, both as a legal matter and as a factual

21   matter, there simply was and is no "trade-off" of counsel fees for reduced compensation to the

22   Class.  Robertson Decl at 3.

23         Second, many Objectors complain that counsel are being paid for their efforts in cash,

24   whereas the Class is receiving discount certificates.  Obviously, it is neither practical nor fair to

25   compensate the three law firms that invested over a hundred thousand dollars in costs and

26   thousands of hours of their time in this case by awarding them thousands of car rental discount

27   certificates.  Furthermore, because this is not a common fund fee award, the two issues are

28   wholly distinct.  Although Objectors could argue that counsel handling a matter on a contingent

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT  AND RESPONSE TO OBJECTIONS

PAGE 7

fee or common fund basis normally receive a percentage of the total recovery, that is not true with statutory fee awards, where counsel are normally compensated on a lodestar basis. For all of these reasons, the fact that Plaintiffs' Counsel have agreed to a cap on the fees they will seek, in exchange for Defendants' agreement not to contest a fee request under that cap, is wholly appropriate and distinct from the merits of the Settlement.

Certain objectors' suggestion that Plaintiffs' Counsel have traded away benefits to the Settlement Class in exchange for an agreement as to their fees is belied by Settlement Agreement, which makes clear that the provision of relief to the Settlement Class is not conditioned upon Plaintiffs' Counsel's receiving their requested award; Settlement Agreement (Doc. 123-1) ¶¶ 1.11, 1.28, 2.4, 3.2; 3.3; as well as by the history of the negotiations, which is discussed above.

The simple fact is that Plaintiffs' counsel reluctantly agreed to cap their fee request at an amount below their lodestar in order to consummate a Settlement that made sense for the Class.

## C.   Summary of the Objections

Sixty-six Settlement Class Members have filed papers with the Court. *See*, Summary of Objections, attached hereto as Exhibit 1. One person asks to participate in the settlement (Doc. 140), five ask to be excluded from the Settlement Class (Docs. 143, 165, 166, 188, 196), one comments only on attorneys' fees (Doc. 175), and the other 59 individuals state some objection to the settlement.[4]   As noted above, almost 1/3 of the objections state in effect that they regard the case as meritless; the others challenge the adequacy of the Settlement and the fact that Defendants are not being punished or forced to disgorge their ill-gotten gains. As discussed in Section III.B, below, none of these objections warrants denying approval of this Settlement.

---

[4] Defendants sent out approximately 2,500,000 notices. Mar. 22, 2011 Dec. of Donald J. Andra (Doc 181) ¶ 9; Mar. 22, 2011 Dec. of Jeffrey Gyomber (Doc. 182) ¶¶ 5-6. The number of objections is therefore less than three one thousandths of one percent (less than 0.003%). The number of exclusions is approximately two one hundredths of a percent (0.02%).  More than three percent of the Class has registered for settlement benefits to date; registration for benefits remains open until July 18. *See* Nov. 23, 2010 Order (Doc. 136) ¶¶ 12, 16.

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT  AND RESPONSE TO OBJECTIONS

PAGE 8

1    III.    ARGUMENT

2    A.      **The Settlement Is Reasonable and Fairly Takes Into Account the Strengths and**

3    **Weaknesses of this Case.**

4           The most important factor in assessing the fairness of a class action settlement is the

5    "strength of plaintiff's case on the merits balanced against the amount offered in the settlement."

6    *Synfuel Technologies, Inc. v. D.H.L. Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

7    Unfortunately, none of the objectors take into account the significant risks inherent in further

8    litigation of this case.

9           First, Plaintiffs must prevail on class certification, which is far from certain.   Second,

10   Plaintiffs must establish damages.   As discussed above, that is a very serious hurdle.   Third,

11   Plaintiffs would have to prevail on an inevitable appeal of the liability issues.   Although we

12   certainly believe that this Court correctly interpreted the law, there is no guarantee as to how the

13   Court of Appeals might rule – particularly given the Legislature's recent revisions to the statute.

14   Not one of the objectors has meaningfully addressed any of these risks.

15          One objector erroneously suggests that because Plaintiffs prevailed on the merits of their

16   summary judgment motion against Hertz regarding the violation of N.R.S. § 482.37515,

17   Plaintiffs are sure to get full restitution of the CRFs at trial.   *See, e.g.*, Doc. 218 at 7.   Even

18   putting aside the fact that this Court's ruling is subject to *de novo* review upon appeal,

19   Defendants have strong arguments that potential class members suffered no damages and are not

20   entitled to any equitable relief.   Moreover, this objector and many others disregard the Court's

21   ruling for Hertz regarding Plaintiffs' claim for violations of the Nevada Deceptive Trade

22   Practices Act, which held that Hertz had fully disclosed the total price of the rentals and that its

23   practices were not knowingly unlawful or deceptive.   Mar. 17, 2010 Order (Doc. 111) at 18:9-15.

24          As discussed above, the Settlement consideration here has real value.   The fact that

25   within a short period over 84,000 persons have already registered for the Settlement attests to

26   this truth.   The Settlement is not perfect, but it is a reasonable and fair resolution of this action.

27

28

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT  AND RESPONSE TO OBJECTIONS

PAGE 9

**B.    The Objections to the Settlement Should Be Overruled and the Settlement Should Be Approved.**

Settlement Class Members have raised a number of objections to the Settlement, all of which should be overruled.  The most common objections relate to the fact that Settlement Class Members will receive certificates rather than cash, the terms of the certificates, the notice provided to Settlement Class Members, and the procedure involved in registering for settlement benefits. In addition, certain Settlement Class Members have argued that suits such as this should not be filed.  Many objectors do not challenge the settlement, but take issue with the amount requested in attorneys' fees and incentive awards (which we address in a separate brief).

Certain of the objections rest upon misunderstandings of Plaintiffs' case or the terms of the Settlement Agreement.  Most importantly, unlike many other discounts, the certificates to be issued pursuant to this Settlement can be used in conjunction with other discounts and coupons, which gives them real value.  Further, the four Representative Plaintiffs seek a total of $20,000 (not $80,000) in incentive awards.

**1.    The Fact that Settlement Class Members Can Receive only Certificates and Not Monetary Relief, is Appropriate in View of the Risks and the Modest Damages at Issue.**

The most common objection relates to the fact that class members will receive certificates for discounts on future rentals from Defendants rather than cash.   But such certificates are appropriate here, given the risks of this case and the small damages sustained by most Settlement Class members.   Contrary to the implications made by certain objectors, settlements in which class members receive certificates or coupons and counsel receive cash are contemplated and permitted by the Class Action Fairness Act, and have been approved by numerous federal courts, especially in situations such as this where Plaintiffs' case faces significant risks and where the typical individual recovery would be modest.  In *Fleury v. Richemont North America, Inc.*, for example, the court found that the settlement benefits, which included a credit that could be applied to a future purchase from defendant, were appropriate given that it would be difficult to establish the class members' damages and such amounts would be modest in any event. 2008 U.S. Dist. LEXIS 64521, *56-60 (N.D. Cal. July 3, 2008).

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

1    Similarly, in *Yeagley v. Wells Fargo & Co.*, the court found that free credit reports were

2    appropriate relief, noting that "plaintiff's prospects for prevailing in this litigation are so bleak as

3    to render this a good value for a relatively weak case." 2008 U.S. Dist. LEXIS 5040 (N. D. Cal.

4    Jan. 18, 2008) (quotations omitted).

5        A number of objectors complain that Defendants have agreed not to contest Plaintiffs'

6    counsel's request for attorneys' fees and costs up to a total of $1.44 million and incentive awards

7    up to a total of $20,000, but such agreements are common and permitted. *See, e.g., Fleury*, 2008

8    WL 3287154 at *1.   Of course, Plaintiffs and their counsel must still justify their request for

9    attorneys' fees, which is less than counsels' lodestar, and incentive awards. *See* Fed. R. Civ. P.

10   23(h) 2003 Advisory Committee Notes (observing that with such an agreement it remains the

11   court's responsibility to determine a reasonable fee).   The suggestion by certain Objectors' that

12   Plaintiffs' Counsel agreed to an inadequate settlement in order to secure an agreement as to their

13   fees is both inaccurate and unwarranted.   That notion is belied by Settlement Agreement, which

14   makes clear that the provision of relief to the Settlement Class is not conditioned upon Plaintiffs'

15   Counsel's receiving their requested award; Settlement Agreement (Doc. 123-1) ¶¶ 1.11, 1.28,

16   2.4, 3.2; 3.3; as well as by the history of the negotiations, which is discussed above.

17   **2.      The Discount Certificates Offered Here Provide Appropriate Relief to Settlement**

18   **Class Members.**

19       Many objectors assert that they should receive a cash settlement, not certificates –

20   including some who believe they should receive full refunds of the amounts they paid in

21   concession recovery fees.   As discussed above, Plaintiffs' counsel attempted to negotiate a cash

22   settlement, but that was not obtainable.   We concluded that under the circumstances here – where

23   damages were modest and difficult to measure – a discount certificate was a reasonable

24   alternative.   In the context of a settlement one can never expect to recover the maximum

25   damages that one might arguably obtain after trial.   Although this Court found that Hertz's

26   unbundling of the concession recovery fee was unlawful, it would be difficult to establish that

27   such practice caused damages to Settlement Class Members and to quantify the amount of any

28

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT  AND RESPONSE TO OBJECTIONS

PAGE 11

1  such damages. Given the small damages sustained by many Class members, a discount
2  certificate for $10 or $20 is arguably preferable to $3.29 in cash compensation.

3  Many Settlement Class Members complain that in order to use the certificates they are
4  required to have future dealings with the Defendants. But that is not inappropriate here. First,
5  there is no claim that Defendants' products or services were defective, but simply that there was
6  an improper charge imposed. Moreover, the Settlement does not require Class Members to
7  engage in substantial transactions; many car rentals transactions total less than $50. Further,
8  there are only a small number of national car rental companies, all of whom engage in similar
9  practices. For all of these reasons, discounts on future transactions are an acceptable form of
10  relief here. *See Fleury, supra,* 2008 U.S. Dist. Lexis 64521 at *73-74.

11  A number of Settlement Class members further object that they will not be able to make
12  use of the certificates because they do not expect to rent a car within the 18-month redemption
13  period and because the certificates can only be transferred to certain family members. These
14  were issues that the parties negotiated over. The 18 month redemption period is a reasonable
15  compromise of the parties' disparate positions and desires.

16  **3.   It Is Very Easy for Settlement Class Members to Register for Settlement Benefits.**

17  A few objectors complain that they must register to receive Settlement benefits and
18  suggest that Defendants should have been required to send certificates to all Settlement Class
19  Members upon Settlement approval. Such a process, however, would have been extremely
20  expensive, involving a second mailing to approximately 2.5 million Settlement Class Members.
21  The registration requirement means that certificates will be sent only to those who are interested
22  in receiving them, and the process itself is extremely simple. Hertz and Advantage customers
23  are required to provide only their name, address, and certificate registration number. There is no
24  need for Settlement Class Members to sign and mail a claim form (which is commonly required
25  in connection with class action settlements). To register for benefits for the Enterprise and
26  Vanguard brands (Alamo and National), Settlement Class Members need do nothing more than
27  go to the settlement website and enter their last name and the certificate registration number
28  provided to them on their notices. *See, e.g.,* www.nevadacarrentalsettlement/alamo/settlement-

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS
PAGE 12

1    registration-form/.    Contrary to the belief of some objectors, Settlement Class Members do not

2    need to provide documentation of their rentals in order to register for Settlement benefits.

3        The Internet registration process is quick and virtually costless to Settlement Class

4    Members, and it is convenient for almost everyone.    The small percentage of Class Members

5    who lack Internet access or who experienced problems registering were directed to contact

6    Plaintiffs' Counsel for assistance.  Plaintiffs' counsel have in fact provided such assistance to

7    hundreds of Settlement Class Members.

8        Finally, a few Settlement Class Members have raised concerns about privacy issues.

9    There are no such legitimate concerns.    All of the relevant information was already in the

10   Defendants' databases from the car rental transactions.    The only new information being

11   requested is optional – Class Members have the right to update their names and addresses if that

12   information was inaccurate or has changed.   There has been and will be no disclosure of private

13   information in connection with the Settlement.

14   **4.**    **The Settlement Notice Fulfilled the Requirements of Due Process and Rule 23.**

15        As this Court found in its Nov. 23, 2011 Preliminary Approval Order, (Doc. 136) ¶ 5, the

16   notice provided to Settlement Class Members meets the requirements of due process and FRCP

17   Rule 23, which requires that "[t]he court must direct notice in a reasonable manner to all class

18   members who would be bound by the proposal." Fed. R. Civ. P. 23(e) (1).    The specific steps

19   taken by Enterprise and Vanguard to notify Settlement Class Members, which involved mailing

20   1,279,466 four-page notices, are set forth in the March 22, 2011 Declaration of Donald J. Andra

21   (Doc. 181) ¶¶ 6-12.   The steps taken by Hertz are set forth in the Gyomber Declaration (Doc.

22   229) ¶¶ 4-6.  Due process does not require that every class member receive actual notice; courts

23   have upheld notice by mail to a class member's last known address as reflected in defendants'

24   records, similar to the notice given here. *See* 2 McLaughlin on Class Actions § 6:16.

25        Notice by mail has long been regarded as the best form of class notice. Due process does

26   not require that the parties issue press releases, or post links on defendants' websites. The reality

27   is that direct mail notice is much more likely to be effective than such generalized methods of

28   reaching the Class.  Moreover, class notice in a consumer case such as this need not and should

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS

PAGE 13

1   not provide a detailed discussion of the issues and the procedural posture of the case, as some

2   objectors argue.   A short and clear notice is preferred by most commentators as well as the

3   Federal Trade Commission.   The Ninth Circuit has held that "[n]otice is satisfactory if it

4   generally describes the terms of the settlement in sufficient detail to alert those with adverse

5   viewpoints to investigate and to come forward and be heard." *Rodriguez v. West Pub. Corp.*,

6   563 F.3d 948, 962 (9th Cir. 2009) (citations and quotations omitted).   The notice provided to

7   Settlement Class Members here has clearly met that standard.

8   **C.     Objector Schutzman's Request to Conduct Discovery Should Be Denied**

9           One objector seeks to conduct "appropriate discovery in regard to the settlement."   Doc.

10  200 at 18:28.   That request should be denied.   The Court has more than adequate information to

11  determine that the Settlement is fair, adequate, and reasonable.   "Class members who object to a

12  class action settlement do not have an absolute right to discovery . . . ." *Hemphill v. San Diego*

13  *Ass'n of Realtors*, 225 F.R.D. 616, 619 (S.D. Cal. 2005).   Rather, in evaluating whether to allow

14  discovery, "[t]he fundamental question is whether the district judge has sufficient facts before

15  him to intelligently approve or disapprove the settlement." *Id.* at 619-20.     Objecting class

16  members should not be granted leave to pursue discovery unless they present "cogent factual

17  objections to the settlement." *Weinberger v. Kendrick*, 698 F.2d 61, 79 (2d Cir. 1982).   Mr.

18  Schutzman has failed to provide any cogent explanation as to why discovery is necessary.

19          Here, Schutzman seeks leave to conduct discovery relating to the "true value of the

20  settlement and the validity of the attorney fees sought by Class Counsel," by serving "Requests

21  for Production and Interrogatories upon each of the settling parties, as well as depos[ing]

22  Defendants' corporate representative(s) pursuant to Fed. R. Civ. P. 30(b) (6)."   Doc. 200 at 19:9-

23  11.   Schutzman does not attach or otherwise identify the scope of his proposed discovery, but

24  claims that it would focus "on the actual cash value of the certificates, including the extent of

25  Defendants' actual exposure based upon Defendants' historical coupon redemption rates." *Id.* at

26  19:15-17.  However, Schutzman does not explain why the historical rate of redemption of similar

27  certificates will assist the Court in determining whether the settlement at issue is fair, reasonable

28  and adequate to the class.  Indeed, given the risks in Plaintiffs' claims, and the substantial risk

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT  AND RESPONSE TO OBJECTIONS

PAGE 14

that Plaintiffs and the class might receive no recovery if the case were fully litigated, it is clear that the settlement benefits are fair and reasonable. "If the terms themselves are fair, reasonable and adequate, the district court may fairly assume that they were negotiated by competent and adequate counsel; in such cases, whether another team of negotiators might have accomplished a better settlement is a matter equally comprised of conjecture and irrelevance." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981).[5]  Class counsel here collectively have more than 60 years experience litigating complex cases, including numerous multi-million dollar class actions.  Schutzman simply fails to show any reasonable basis to open the door to further discovery into the bona fides of the settlement.  The Settlement is not required to be perfect; the Court must merely find that it is fair, reasonable, and adequate.

Additionally, the cases cited by Schutzman do not support his position.  In *In re Domestic Air Transp. Antitrust Litig.*, the court permitted limited discovery (unlike Schutzman's request here) that was narrowly tailored to specific issues the court determined to be relevant to its determination of the fairness of the settlement.  144 F.R.D. 421, 425 (N.D. Ga. 1992).   In fact, where the objectors (like Schutzman here) requested unspecified discovery and "failed to present argument concerning a specific request" for Rule 30(b) (6) depositions, the court denied such requests.  *Id.*  Similarly, in *In re General Motors Corp. Engine Interchange Litig.*, the court allowed discovery into settlement negotiations because other evidence had already established that the negotiations were "irregular" and conducted in violation of a court order regarding settlement.  594 F.2d 1106, 1124-26 (7th Cir. 1979).  No such evidence of collusion exists in this

---

[5]  In addition, Schutzman's request is untimely. Although the Notices were disseminated in February, allowing sufficient time to resolve any discovery issues prior to the Hearing date, Schutzman did not seek discovery until he filed his objection in April.  Moreover, he has not sought leave of Court to propound discovery or served his proposed discovery requests.  The Class will be prejudiced if the Court permits his dilatory request to delay the Settlement, as Defendants' requirement to issue the Certificates is keyed to approval of the Settlement.

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT  AND RESPONSE TO OBJECTIONS

PAGE 15

1    case.[6]  To the contrary, Judge Ronald M. Sabraw (Ret.), who served as a mediator in connection

2    with the settlement, noted specifically that the mediation "was hard-fought by all.  The parties

3    addressed many contentious issues, and counsel for all parties vigorously represented their

4    clients' interests."  Dec. of Hon. Ronald M. Sabraw (Ret.) (Doc. 125-1) ¶ 3.

5    **D.**    **The Case Was Properly Brought and Has Merit.**

6           Finally, we respond to the position expressed by a number of objectors that this case

7    should never have been brought and the related argument that cases with "microscopic merit" do

8    not belong in the courts.   That argument disregards this Court's rulings holding that Plaintiffs'

9    Complaint stated a claim for relief and that Plaintiffs were entitled to summary judgment on their

10    primary claim.  There is a fundamental difference between a claim with "microscopic merit" and

11    one that is simply small on an individual basis or where it is difficult to prove damages.  The

12    Class Action mechanism was adopted in large measure to provide a means for large groups of

13    persons who had such small claims to seek redress against large business entities that arguably

14    sought to "nickel and dime" consumers.  These objectors' policy views are irrelevant to the

15    fairness of the present settlement, which provides reasonable compensation for the Settlement

16    Class' claims, which are meritorious but of admittedly modest size on an individual basis.  Those

17    policy issues are properly raised in Congress, not here.

18

19

20

21

22

23

24        [6] To the extent Schutzman seeks discovery relating to his baseless contention that "the proposed settlement portrays an 'inside deal'" between the parties, such discovery must be

25    denied as a matter of law.  Doc. 200 at 11:22-23.  Discovery of evidence relating to settlement negotiations is appropriate only in rare circumstances and is "proper only where the party

26    seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive."  *Lobatz v. U.S. West Cellular, Inc.*, 222 F.3d 1142, 1148 (9th Cir.

27    2000).  Here, Schutzman cannot present any evidence of collusion as no such collusion occurred.

28

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT  AND RESPONSE TO OBJECTIONS

PAGE 16

1

**IV.     CONCLUSION**

2

     For the reasons discussed above and in the Parties' other submissions to the Court

3

regarding the proposed Settlement, Plaintiffs respectfully request that the Court overrule all

4

objections and grant final approval of the Parties' proposed Settlement.

5

Dated: April 28, 2011                    ROBERTSON & BENEVENTO

6

                                   By: /s/ G. David Robertson
                                        G. David Robertson, Esq.

7

                                        Attorneys for Plaintiffs

8

OF COUNSEL:
                                        Susan S. Thomas, Esquire

9

David B. Zlotnick, Esq., CA SBN 195607   Arthur Stock, Esquire
LAW OFFICES OF DAVID B. ZLOTNICK         BERGER & MONTAGUE, P.C.

10

625 Broadway, Suite 635                  1622 Locust Street
San Diego, CA  92101                     Philadelphia, PA  19103

11

               COUNSEL FOR PLAINTIFFS AND THE SETTLEMENT CLASS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

1

### CERTIFICATE OF SERVICE

2       Pursuant to FRCP 5(b) and Local Rule 5-4, I hereby certify that I am an employee of Robertson &

Benevento, over the age of eighteen, and not a party to the within action. I further certify that on the 28th day of

3 April, 2011, I electronically filed this **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FINAL APPROVAL**

**OF CLASS ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS** and thus, pursuant to LR 5-4,

4 caused same to be served by electronic mail on the following Filing Users:

       Dan C. Bowen (dbowen@bowenhall.com)

5

       Gregory D Call (gcall@crowell.com)

6

       Peter S. Hecker (phecker@sheppardmullin.com)

7

       Anna McLean (AMcLean@sheppardmullin.com)

8

       William E. Peterson (wep@morrislawgroup.com)

9

       Janine L. Scancarelli (jscancarelli@crowell.com)

10

       Arthur Stock (astock@bm.net)

11

       Susan S Thomas (sthomas@bm.net)

12

       David B. Zlotnick (david@kkbs-law.com,david@kkbs-law.com)

13

       I further certify that I mailed a true and correct copy of **PLAINTIFFS' REPLY BRIEF IN SUPPORT**

14 **OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS**, with

first-class United States postage prepaid affixed thereon, to:

15

| | | |
|---|---|---|
| Edward L. Buchannan | Clinton M. Casey | Kevin Foster |
| 130 Kerry Ct. | 705 NE 3rd Street | 839 Commercial St. |
| Vacaville, CA 95687 | Pompano Beach, FL 33060 | Marseilles, IL 61341 |
| | | |
| Jacqueline Gagnon | Dennis J. Godsey | David Grant |
| 197 Montelona Road | 1102 Main Street | 3 Oakhurst Terrace |
| Goffstown, NH 03045 | Belle Chasse, LA 70037 | Newcastle upon Tyne |
| | | NE12 9NY, England |
| | | |
| Max Hensley | Douglas A. Hindmarsh | Dennis L. Hunt |
| 116 Parklane Dr. | 130 Island Rd. | 9120 Edgemont Dr. |
| San Antonio, TX 78212 | Millis, MA 02054 | North Richland Hills, TX 76182 |
| | | |
| Gary Jackson | Paul E. Johnson | Ivan M. Katz |
| 2805 Ridge Valley Road, NW | P.O. Box 11516 | 57 Trumbull Street |
| Atlanta, GA 30327 | Zephyr Cove, NV 89448 | New Haven, CT 08510-1004 |
| | | |
| Dennis Kirson | Clark J. Leslie | Kathleen Loepker |
| 2321 Hendola Drive, NE | 100 Clark Court | 300 Dorchester Drive |
| Albuquerque, NM 87110 | Cambridge, OH 43725-9616 | Belleville, IL 62223 |
| | | |
| Michael L. McMillan | James Miller | George Murphy |
| P.O. Box 15042 | 1542 Bennett Road | 1904 Dove Ct. |
| Hattiesburg, MS 39404-5042 | Lansing, MI 48906 | Friendswood, TX 77546 |

28

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

| 1 | Ronald C. Nahas | Richard A. Norton | Jeffrey Osborn |
|---|---|---|---|
| | 3697 Mt. Diablo Blvd. | PO Box 330 | 13632 Madison Street |
| 2 | Suite 250 | Warnerville, NY 12187 | Thornton, CO 80602 |
| | Lafayette, CA 94549 | | |
| 3 | Keith Owens | Jonathan H. Parker | Harold Peterson |
| | 612 34 Road | 1521 Alton Road | 7911 Westhaven Dr SW Apt 3 |
| 4 | Clifton, CO 81520 | Suite 366 | Huntsville, AL 35802-1431 |
| | | Miami Beach, FL 33139 | |
| 5 | Michael Prihar | John S. Reifschneider | Edward J. Smith |
| | PO Box 3242 | 1001 6th Avenue | 56 Nassau Ave. |
| 6 | Granada Hills, CA 91394-0242 | Suite 100 | Plainview, NY 11803 |
| | | Leavenworth, KS 66048 | |
| 7 | | | |
| | Einar Tamm | Mike Thayne | Michael J. Tomkvitch |
| 8 | 20 Partridge Hill | 1768 N. 4850 W. | 7 Woodcrest Drive |
| | Honeoye Falls, NY 14472 | Ogden, UT 84404 | Hopewell Junction, NY 12533 |
| 9 | | | |
| | Linda Trigg | John Vertino | Michael J. Walkley |
| 10 | 4593 Fir Dell Dr. SE | 8 Elaine Ct | 5606 Saint Albans Way |
| | Salem, OR 97302 | Buffalo, NY 14225 | Baltimore, MD 21212 |
| 11 | | | |
| | Charles Westin | Mike Whaley | Karen White |
| 12 | PO Box 157 | 21325 119th Street | 400 S. Eagle Ave |
| | Belleville, KS 66935-1940 | Bristol, WI 54104 | McAllen, TX 78504-5116 |
| 13 | | | |
| | Steven E. Whitney | Daniel Woodson | Peter York |
| 14 | 7805 Ridgemar Drive | 37925 Ridge Top Drive | No. 11 Crouchfield |
| | Dallas, TX 75231 | Lebanon, OR 97355 | Hemel Hempstead, HP1 1PA |
| 15 | | | UK |
| | Patrick King | Anthony L. DeWitt | Alan Hartman |
| 16 | 2875 SW Scenic Drive | 715 Swifts Highway | 2643 N. Waskevich Lane |
| | Portland, OR 97225 | Jefferson City, MO 65101 | Midland, MI 48642 |
| 17 | | | |
| | Joseph P. Altman, Jr. | Shrenik Bavishi | Bradley B. Davis |
| 18 | 6745 N. 93rd Ave. Unit 1170 | P.O. Box 5 | 11 Great View lane |
| | Glendale, AZ 85305 | Colonia, NJ 07067-0005 | Highland, NY 12528 |
| 19 | | | |
| | Mary D. Donaldson | Oliver M. Haynold, PhD | Paul E. Johnson |
| 20 | 3403 Greenfield Drive | 1013 Simpson Street | P.O. Box 11516 |
| | Marietta, GA 30068 | Evanston, IL 60201-3119 | Zephyr Cove, NV 89448 |
| 21 | | | |
| | Kevin E. Kalled | Marsha Langford | George Murphy |
| 22 | 1014 Paul Ave. | 6201 Fairview | P.O. Box 1835 |
| | Rotterdam, NY 12306 | Lenoir City, TN 37772 | Friendswood, TX 77546 |
| 23 | | | |
| | Dennis Nagel | Richard A. Norton | M. Gary Olson |
| 24 | 1855 Playground Court | P.O. Box 330 | 1578 NW Trenton Ave. |
| | Riner, VA 24149 | Warnerville, NY 12187 | Bend, OR 97701 |
| 25 | | | |
| | Rodney Reffert | Tim Travis | |
| 26 | 2915 N. 58th St. | 6752 Harlan Drive | |
| | Lincoln, NE 68507 | Eden Prairie, MN 55346 | |
| 27 | Dated this 28th day of April, 2011. | | |

28

/s/ Kimberlee A. Hill
An Employee of Robertson & Benevento

Robertson & Benevento
50 West Liberty Street
Suite 600
Reno, Nevada 89501

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS