1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                      * * *

9    JANET SOBEL and DANIEL DUGAN,        )
     Ph.D., individually and on behalf of all others  )
10   similarly situated,                  )              3:06-CV-00545-LRH-RAM
                                          )
11                 Plaintiffs,            )
                                          )
12   v.                                   )              ORDER
                                          )
13   THE HERTZ CORPORATION, a Delaware    )
     corporation,                         )
14                                        )
                   Defendant.             )
15                                        )
     _____ )
16

17          Before the court is plaintiffs Janet Sobel and Daniel Dugan's ("Plaintiffs") Motion for Class

18   Certification (#255[1]), to which defendant The Hertz Corporation ("Hertz") has responded (#262),

19   and Plaintiffs have replied (#276). Also before the court are Plaintiffs' Motion for Partial Summary

20   Judgment (#295) and Hertz's Motion for Partial Summary Judgment (#298). Hertz has responded

21   (#304) and replied (#314), and Plaintiffs have done likewise (#301 (Response), #311 (Reply)).

22   Finally, Hertz has raised objections to Plaintiffs' evidence submitted in conjunction with their

23   Motion for Partial Summary Judgment (#307), to which Plaintiffs have responded (#312) and Hertz

24   has replied (#319).

25

26          [1] Refers to court's docket number.

1   **I.   Facts and Procedural History**[2]

2        This is a putative class action filed on behalf of persons who have rented cars at the Reno

3   and Las Vegas international airports from the Hertz Corporation, a rental car company. In return for

4   the right to operate on-site at the Reno and Las Vegas international airports, rental car companies

5   ("RACs"[3]) are required to pay a percentage of their gross revenues to the airports as concession

6   fees. The companies pass along the fees to their customers as surcharges labeled "concession

7   recovery fees."[4] At all relevant times, the companies "unbundled" the surcharges from the base

8   rental rate, such that the base rental rate quoted to customers did not include the additional airport

9   "concession recovery fee," which was itemized separately in the rental agreement. Plaintiffs allege

10   that this practice violates Nev. Rev. Stat. ("NRS") § 482.31575 and the Nevada Deceptive Trade

11   Practices Act ("NDTPA"), NRS § 41.600. In addition, Plaintiffs allege a claim for unjust

12   enrichment. Hertz denies these claims.

13        Following the court's denial of Hertz's motion to dismiss and the Ninth Circuit's denial of

14   interlocutory review, the court approved the parties' stipulation to bifurcation of liability and

15   damages and to defer class certification proceedings. On March 17, 2010, this court granted in part

16   and denied in part the parties' cross-motions for summary judgment on liability by rejecting

17   Plaintiffs' NDTPA claim, finding that Hertz had violated NRS § 482.31575, and denying both

18

19       [2] A more complete account of the procedural history of this case, including history irrelevant

20   to the motions before the court, appears in *Sobel v. Hertz Corp.*, 698 F. Supp. 2d 1218, 1221 (D. Nev. 2010) as well as the court's Orders of June 27, 2011 (#250) and September 13, 2007 (#22). Throughout

21   this litigation, various plaintiffs and defendants have been joined and severed; the claims and parties now before the court are set forth in the First Amended Complaint (#108) pursuant to a stipulation

22   between the parties (#132).

23       [3] This is the abbreviation chosen by the parties, and therefore the court adopts it as well.

24   (Presumably, it derives from the industry sobriquet "rent-a-car.")

25       [4]Hertz charged Plaintiff Sobel, who rented her vehicle from the McCarran International Airport

26   in Las Vegas, a concession recovery fee of 10%. Hertz charged Plaintiff Dugan, who rented his vehicle from the Reno-Tahoe International Airport in Reno, a concession recovery fee of 11.54%.

parties' motions on the unjust enrichment claim. (Order #111.)

The court denied a proposed coupon settlement between the parties on June 27, 2011.[5]

(Order #250.) Subsequently, Plaintiffs filed a motion to certify a class defined in the following way:

> All persons who rented a car at a Nevada airport from the Defendant company and were charged a base car rental rate as well as a separate concession recovery fee or comparable fee during the period from October 13, 2003, through September 30, 2009. Excluded from the class are Defendant Hertz, any person, firm, trust, corporation, officer, director, or other individual or entity in which the Defendant has a controlling interest, or which is related to or affiliated with Defendant, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded party. Also excluded from the class are Plaintiffs' counsel, all judicial officers responsible for any decisions in this matter and all government entities.

(Motion for Class Certification #255). In addition, both parties have filed motions for summary judgment on the issue of damages. Following a hearing on October 18, 2012, the court now addresses both the Motion for Class Certification and the motions for summary judgment on the issue of damages.[6] Over $42 million is at stake.[7]

## II.    Legal Standards

### A.  Summary Judgment

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---

[5] Notably, the court granted conditional certification to the settlement class in a prior Order (#125). As the court noted, "[T]he standard for certification is the same for settlement classes as for conventional classes." (Order of June 27, 2011 #250, p. 16 (citing *In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 818 (3d Cir. 1995)).)

[6] Hertz has requested additional oral argument on the issue of damages (#331). The parties addressed damages at the October 18 hearing, and the court finds additional oral argument unnecessary. Therefore, Hertz's request is denied.

[7] Hertz urges the court to strike Plaintiffs' statement of facts because it is not "concise" enough for the purposes of Local Rule 56-1, which requires a "concise statement setting forth each fact material to the disposition of the motion." At five pages long, the court finds Plaintiffs' statement of facts to be concise enough.

law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Community Hospital*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252. Finally, where–as here–both sides have moved for summary judgment, the court must consider evidence submitted in support of both motions before ruling on either motion. *See Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

///

///

**B.  Class Certification**

To qualify for class certification, the class must meet the requirements of Rule 23(a), and at least one requirement of Rule 23(b). Fed. Judicial Center, *Manual for Complex Litigation* § 21.131 (4th ed. 2004); Fed. R. Civ. P. 23(a), (b). The proponents of the class bear the burden of demonstrating that all the prerequisites for class designation are met. *See In re Northern District of California Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847, 854 (9th Cir.1982). "The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011) (quotation marks and citation omitted).

**1.  Rule 23(a) Requirements**

Rule 23(a) states four threshold requirements applicable to all class actions. Rule 23(a) provides in full:

> ***Prerequisites.*** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1)  the class is so numerous that joinder of all members is impracticable;
> (2)  there are questions of law or fact common to the class;
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)  the representative parties will fairly and adequately protect the interests of the class.

The Supreme Court has labeled these elements as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

**2.  Rule 23(b) Requirements**

In addition, Plaintiffs must satisfy the requirements under Rule 23(b)(1), (2), or (3) in order to maintain a class action. Under Rule 23(b)(3)–the subsection chosen by Plaintiffs–certification is appropriate if the court finds that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R.

1  Civ. P. 23(b)(3).

2  **III.    Discussion**

3       **A.  Evidence at Summary Judgment**

4       As a threshold matter, Hertz raises objections to Plaintiffs' evidence at summary judgment.

5  Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited

6  to support or dispute a fact cannot be presented in a form that would be admissible in evidence."

7  Therefore, Rule 56(c)(2) focuses on the admissibility of the evidence's content, not its form. *See*

8  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Once challenged, the proponent of the

9  evidence may explain "the admissible form that is anticipated." Fed. R. Civ. P. 56 advisory

10  committee note. Hearsay evidence–an out of court statement offered for the truth of the matter

11  asserted–is inadmissible unless it is defined as non-hearsay or it falls under a hearsay exception.

12  *See* Fed. R. Evid. 801 (defining hearsay), 803 (listing exceptions).

13       Here, Hertz correctly objects that Plaintiffs' Exhibit 4, a National Association of Attorneys

14  General ("NAAG") report on the car rental industry, is inadmissible hearsay. Plaintiffs offer this

15  report for the truth of its content,[8] but the report is an out of court statement. Moreover, the report

16  does not fall under any hearsay exception. Plaintiffs claim that the NAAG report is a "record or

17  statement of a public office" such that the report falls under the hearsay exception for public

18  records. Fed. R. Evid. 803(8). However, the NAAG is not a public office; it is a voluntary

19  association of the "chief legal officers of the states, commonwealths, and territories of the United

20  States" whose mission is to foster "interstate cooperation on legal and law enforcement issues."

21  NAAG, *About NAAG* (2008), online at http://www.naag.org/about_naag.php. Therefore, Plaintiffs

22  have failed to carry their burden to show Exhibit 4's admissibility at summary judgment. *See In re*

23  *Oracle Corp. Securities Litigation*, 627 F.3d 376, 385-86 (9th Cir. 2010) (describing the allocation

24  of the burden to show admissibility).

25  _____

26       [8] For example, Plaintiffs offer the NAAG report as proof that the NAAG condemned price
unbundling. (Plaintiffs' Motion for Summary Judgment ("MSJ") #295, p. 3:17-21.)

However, the remainder of Hertz's evidentiary objections fail. Hertz's most important objection with respect to the court's decision is its objection to the admissibility of its own comments to the NAAG report. Hertz objects on hearsay, relevancy, and authentication grounds. Hertz's hearsay objection fails under Fed. R. Evid. 801, which excludes an opposing party's statements from the definition of hearsay. Furthermore, Hertz's comments are probative as to the context surrounding the enactment of NRS § 482.31575, and therefore they are relevant to this statute's interpretation. *See* Fed. R. Evid. 402. Finally, these comments are properly authenticated since the author of the comments identified them in his deposition and since Hertz provided these comments to Plaintiffs in discovery. (See Decl. of Arthur Stock #294-2, ¶ 5; Plaintiffs' Opposition to Defendant's Objections #312, p. 4:19-20.) *See also* Fed. R. Evid. 901. Thus, Plaintiffs' Exhibit 5 is admissible for consideration at summary judgment.

Hertz's remaining objections are meritless. Plaintiffs' Exhibit 7, a portion of legislative history memorializing Hertz's lobbying activity, is admissible under the public records exception to the hearsay rule. Fed. R. Evid. 803(8). *See Minutes of the Nev. State Legislature: Hearing on Senate Bill No. 396 Before the Senate Comm. on Transportation*, Ex. D, 1995 Leg., 68th Sess. (May 23, 1995). Nor does the *Noerr-Pennington* doctrine prevent its admissibility since Hertz's liability in this case is not premised on any protected lobbying activity. *See Theme Promotions, Inc. v. News America Marketing FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (discussing the doctrine in relation to an intentional interference with prospective economic advantage claim premised on the defendant's litigation threats). Finally, Plaintiffs' Exhibit 7 is relevant to establish Hertz's understanding of the intent behind NRS § 482.31575. Therefore, Plaintiffs' Exhibit 7 is admissible for consideration at summary judgment.

Hertz's objections on relevancy grounds to Plaintiffs' Exhibits 9, 12, 13, 14, and 15 are similarly faulty.[9] The testimony presented in these exhibits is probative as to material facts

---

[9] The court further finds that Plaintiffs' Exhibit 13 has an adequate foundation under Federal Rule of Evidence 602.

1  including whether Hertz viewed price unbundling as a profitable activity. Thus, these exhibits are

2  also admissible for consideration at summary judgment.

3  **B.  The Interpretation of the Rate and Remedial Statutes**

4  One issue largely controls both the class certification and summary judgment motions: the

5  interpretation of NRS §§ 482.31575 ("the rate statute") and 482.31585 ("the remedial statute").

6  This court has previously interpreted the rate statute to require RACs to bundle the airport

7  concession recovery fee ("ACRF") with its base price in advertising, quoting, and charging rates for

8  renting a car. *Sobel v. Hertz Corp.*, 698 F. Supp. 2d 1218, 1128-29 (D. Nev. 2010). For violations

9  of the rate statute, the remedial statute provides a private right of action and describes the available

10  remedies. The remedial statute provides that

11  [a] short-term lessee [that is, a customer] may bring an action against a short-term lessor
   [that is, an RAC] for the recovery of damages and appropriate equitable relief for any
12  violation of NRS 482.3151 to 482.3159, inclusive. The prevailing party is entitled to
   recover reasonable attorney's fees and costs.

13

14  NRS § 482.31585. Of course, the rate statute falls within the range "NRS 482.3151 to 482.3159,"

15  as do about 16 other provisions regulating RACs.[10]

16  Hertz's main argument in both its summary judgment motion and its opposition to class

17  certification is that an action under the remedial statute for violations of the rate statute requires the

18  plaintiff to demonstrate reliance. That is, a plaintiff would have to show that he would have

19  engaged in a different or less expensive transaction had the ACRF been bundled. *See Perrone v.*

20  _____

21  [10] The first five of these are definitions. The next statutory provisions for which § 482.31585

22  provides a remedy deal with limitations on liability: they include the permissible contractual allocation
   of liability on the short-term lessee, the total limitations on liability of the short-term lessee, and the

23  total limitations on liability of authorized rental car drivers. The next sections deal with "waivers of
   damages." One section delimits the required provisions such waivers must have, another lists

24  applicable exceptions to the required provisions, a third lists the disclosures an RAC must make in its
   waiver, and a fourth section guarantees that such waivers remain optional. Finally, the remedial statute

25  covers restrictions on recovery for damages (by the RAC against the lessee), the disclosure of
   information required in a short-term lease (the provision at issue here), and permissible additional

26  charges.

*General Motors Acceptance Corp.*, 232 F.3d 433, 436 (5th Cir. 2000) (defining reliance). Hertz also argues that reliance-type requirements exist in the necessary showings of "actual injury"[11] and causation.[12] Of course, Hertz argues for a reliance requirement because it believes that Plaintiffs cannot demonstrate reliance. And for a similar reason, Plaintiffs argue that reliance or reliance-type harm and causation elements are not required in causes of action under the rate and remedial statutes.[13] Rather, Plaintiffs ask for restitution of the illegally charged fees and argue that they do not need to show reliance to get it.

## 1.      Nevada Statutory Interpretation Standard

In interpreting a Nevada statute for the first time, this court must predict how the Nevada Supreme Court would interpret it. *Candelaria Industries v. Occidental Petroleum Corp.*, 662 F. Supp. 1002, 1004 (D. Nev. 1984). To interpret a statute, Nevada courts look to legislative intent. *State v. Lucero*, 249 P.3d 1226, 1228 (Nev. 2011). A court first consults the plain meaning of the text; only if the text is ambiguous does a court consult the statute's legislative history. *Id*. Once a court takes this step, the goal is to "construe the statute in a manner that is consistent with reason and public policy." *Id*.

The court has already determined that the text of the rate statute is ambiguous, *Sobel*, 698 F. Supp. 2d at 1224, and the text of the remedial statute is silent as to any reliance-type requirement. Therefore, the court consults legislative history as well as public policy in determining the status of a reliance or reliance-type requirement. These sources indicate that neither the rate nor the remedial

---

[11] "Plaintiffs suffered no harm because Hertz's total prices would have been the same in the but-for world [in which Hertz bundled rather than unbundled ACRFs]." (Defendant's MSJ #296, p. 21:4-5 (capitalization removed).) Hertz variously calls this requirement "actual damage" or "actual harm."

[12] "Here, causation requires a showing of reliance as well." (Defendant's MSJ #296 at p. 14:16.)

[13] Hertz claims, in various ways, that Plaintiffs have conceded the reliance requirement. (*See, e.g.*, Defendant's MSJ #296 at p. 16:6-7.) While it is true that Plaintiffs have argued as if the reliance requirement existed, at other times they have expressly denied it. (*See* Plaintiffs' MSJ #295 at pp. 7-10 (arguing for restitution).)

1  statute impose such a requirement.

2  **2.    The Interpretation of "Damages"**

3  Hertz's first argument in favor of a reliance-type requirement is the plain language of the

4  remedial statute. The remedial statute provides that "damages and appropriate equitable relief" are

5  available for violations of the rate statute. Hertz notes that the plain meaning of the term "damages"

6  is "money claimed by, or ordered to be paid to, a person as compensation for loss or injury."

7  *Black's Law Dictionary* 466 (6th ed. 1990). *See also* Dan B. Dobbs, *Law of Remedies: Equity,*

8  *Damages, and Restitution* § 3.1 (2d ed. 1993) ("The damages remedy is a judicial award in money,

9  payable as compensation to one who has suffered a legally recognized injury or harm."). Since the

10  term "damages" focuses on the plaintiff's loss rather than the defendant's gain, Hertz claims,

11  Plaintiffs must demonstrate loss by showing that they "would have switched from Hertz [had Hertz

12  complied with the rate statute] and obtained a lower total rental (or other transportation) price

13  elsewhere." (Defendant's Opposition to Class Certification #262, p. 17:24-25.)

14  This argument ignores the availability of "appropriate equitable relief" and renders the

15  statutory scheme incoherent. First, "appropriate equitable relief" is also included as a potential

16  remedy. Equitable remedies include restitution, and restitution is measured by the defendant's gain

17  and not the plaintiff's loss. Dobbs, *supra*, § 1.1. Therefore, the plain meaning of the term

18  "damages" is in equipoise with the plain meaning of the term "equitable relief," at least with

19  respect to the measurement of any recovery.

20  Second, a reliance-type requirement derived from the *remedial* statute makes no sense: it

21  creates a requirement for all causes of action that the remedial statute authorizes, yet some of these

22  causes of action are antagonistic to reliance-type requirements. Hertz's interpretation therefore

23  violates the mandate that "[s]tatutes within a scheme and provisions within a statute must be

24  interpreted harmoniously with one another in accordance with the general purpose of those statutes

25  and should not be read to produce unreasonable or absurd results." *Washington v. State*, 30 P.3d

26  1134, 1136 (Nev. 2001). For example, the remedial statute provides a cause of action for

consumers who are charged above a certain price for "waivers of damages." *See* NRS § 482.31565. Under Hertz's interpretation, in order to recover under this maximum-price statute, consumers must show that (1) the rental agency charged above the statutory price, and that, (2) had the rental agency not charged above the statutory price, the consumer would have engaged in a "different or less expensive transaction." *Perrone*, 232 F.3d at 436. That is, Hertz would make a consumer show that she would have behaved differently had the price she was required to pay been *cheaper*. This is an insensible burden to place on consumers.

Hertz also argues that the absence of a statutory damages provision in the remedial statute indicates that consumers must demonstrate "actual injury" in order to recover. But statutory damages would fit poorly as part of the remedial statute because this statute is intended to provide a private right of action to address many different violations. For instance, it provides a remedy for unlawful rate unbundling (as occurred here) as well as for unlawful rental car damage waiver rates. *See* NRS § 482.31565. It is not clear what single provision of statutory damages could compensate appropriately for both violations. In addition, while Hertz cites a number of Nevada statutes that provide statutory damages in suggesting an *expressio unius est exclusio alterius* construction, these statutory damages provisions uniformly apply to hard-to-value injuries. *See, e.g.*, NRS § 484D.340 (damages for violation of vehicle odometer disclosure requirements); NRS § 118A.390(1) (damages for retaliatory eviction); NRS § 369.5609 (damages for violating a liquor distribution scheme).[14] Here, the injured consumer has a ready measure of his damages: the amount he paid in unlawful unbundled charges.

### 3.    The Causation Requirement

Hertz contends that a cause of action under the remedial statute for violation of the rate

---

[14] These statutes actually militate against Hertz's interpretation under the same *expressio unius* canon: since these statutes all single out "actual damages," we could infer from the remedial statute's use of "damages" that the legislature specifically omitted the term "actual damages" from this provision.

11

statute requires a showing of causation akin to reliance. While the statute is silent as to any causation requirement, Hertz argues that the legislative history supports it. This history demonstrates, Hertz claims, that Assembly Bill No. 612 ("A.B. 612")–what eventually became NRS §§ 482.3151 through 482.3159–"was for the protection of consumers, as they would now be aware of expected costs and liabilities in advance." *Minutes of the Nev. State Legislature: Hearing on Assembly Bill No. 612 Before the Assembly Comm. on Transportation*, 1989 Leg., 65th Sess. (May 9, 1989) (statement of Assemblyman Nevin). And A.B. 612 "would prevent unethical practices designed to deceive the customer." *Minutes of the Nev. State Legislature: Hearing on Assembly Bill No. 612 Before the Senate Comm. on Transportation*, 1989 Leg., 65th Sess. (June 8, 1989) (statement of Grand Rent A Car president Don McCammack). Since A.B. 612 was designed to target deception, Hertz argues, it must incorporate a reliance requirement like other deceptive-practices statutes. *See Perrone*, 232 F.3d at 435-36 (finding a reliance requirement in an action brought under the federal Truth in Lending Act); *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009) (acknowledging that Nevada's Deceptive Trade Practices Act requires a showing of reliance).

Even assuming the interpretation of the rate statute that Hertz prefers–an interpretation contrary to this court's prior opinion, *Sobel*, 698 F. Supp. 2d at 1228-29–the legislative history suggests the rate statute was as much about limiting competition as it was about limiting deception. First, the only prohibitions of "unfair, deceptive or coercive" practices in A.B. 612 occur in provisions preventing the use of such practices in persuading customers to buy optional insurance (section 13(4)) and in provisions relating to the recovery of claims for damage to the rental cars (section 14(2)). These terms do not appear in the section regulating the charging of rates.

Second, the description of A.B. 612 as "preventing unethical practices designed to deceive the customer" surfaces as a paraphrase of Don McCammack's prepared remarks to the Senate Committee on Transportation. *See Hearing on Assembly Bill No. 612 Before the Senate Comm. on Transportation*, *supra*. In McCammack's actual prepared remarks, however, it is clear that his

"concern[s] about unethical practices" touch on damage waivers and damage recovery, not on price quoting and charging. For instance, McCammack's only mention of "unfair, deceptive, or coercive" conduct occurs in the description of the damage waiver and recovery sections. *Id*. at Ex. C, p. 5 ("[A.B. 612] further provides that the rental car company shall not engage in any coercive conduct to force the purchase of the [damage] waiver. . . . Moreover, the rental car company cannot . . . engage in coercive tactics to recover vehicle damage."). In contrast, McCammack explains the price charging section as "describ[ing] the charges that are able to be charged [and advertised] by the rental car company." *Id*.

Third, while section 15's mandatory inclusion of charges is consistent with an attempt to prevent deceptive practices, the exception for "fees paid to airports"–at least as interpreted by Hertz–is consistent with an attempt by large car rental companies to limit competition from small car rental companies. During A.B. 612's only floor debate, the bill's Senate sponsor (Senator Rhoads) responded to an inquiry:

> Senator Wagner: I have just a couple of questions on [A.B. 612]. First . . . [w]hat significant abuses have occurred to produce this piece of legislation? . . . Secondly . . . [w]ho produced and wanted this piece of legislation [ ] ?
> Senator Rhoads: . . . The major car rental agencies [Avis, Hertz, and National] were the ones who asked for the legislation. . . . As far as any abuses that have occurred in the past, to my knowledge, I am not aware of any and none were cited during testimony in the committee.

Nev. Senate Journal, 65th Sess., 1651 (1989). In the quest for legislative intent, such exchanges raise judicial eyebrows.

The rental car industry of the late eighties was embroiled in an intense price war, a war in which "[car rental] companies ha[d] been springing traps of additional charges on unsuspecting renters and have used the various advertising media to do so." (*See* Plaintiffs' Motion for Summary Judgment ("MSJ") #294, Ex. 5, p. 2.) Around this time, Hertz and other large RACs had a "run-in" with the California Attorney General, who aimed to shut down these bait-and-switch practices. *See* Nev. Senate Journal, 65th Sess., 1650-51 (1989) (statements of Senators Rhoads and Townsend). The result of this confrontation was California's Assembly Bill 3006 ("A.B. 2006"), on which A.B.

612 was modeled. Nev. Senate Journal, 65th Sess., 1650 (1989) (statement of Senator Rhoads). A.B. 3006 only excepted taxes and mileage charges from mandatory bundling. *See* A.B. 3006, 1988 Leg., Reg. Sess. (Ca. 1988).[15] Nevada's A.B. 612 added one more exception to this list: "fees paid to airports." Under Hertz's preferred interpretation of A.B. 612 § 15, this contrast suggests that section 15's exception was designed to allow a practice prohibited by California law: advertising non-ACRF rates and charging ACRF rates.

Moreover, mandatory bundling of non-ACRF fees benefitted major RACs over their smaller competitors. Getting an on-airport RAC location is expensive, and the larger RACs can better afford it. *See Minutes of the Nev. State Legislature: Hearing on Senate Bill No. 396 Before the Senate Comm. on Transportation*, 1995 Leg., 68th Sess. (May 23, 1995) (statement of Mason Hurst, representative of Alamo Rent-A-Car). If smaller, off-airport RACs were required to bundle all mandatory fees while larger, on-airport RACs could unbundle ACRFs, the on-airport RACs could compete more effectively by advertising (but not charging) lower base prices. Indeed, during the floor debate on A.B. 612, one Senator expressed the concern that A.B. 612 "does a couple of things . . . that are advantageous to [the major rental car agencies]. These are not necessarily advantageous, or on equal footing, for the smaller rent-a-car person." Nev. Senate Journal, 65th Sess., 1650 (1989) (statement of Senator Townsend).

///

///

///

---

[15] A.B. 3006 § 1(l)(1) provides,

A rental company shall only advertise, quote, and charge a rental rate that includes the entire amount except taxes and a mileage charge, if any, which a renter must pay to hire or lease the vehicle for the period of time to which the rental rate applies. A rental company shall not charge in addition to the rental rate, taxes, and mileage charge, if any, any fee which must be paid by the renter as a condition of hiring or leasing the vehicle, such as, but not limited to, required fuel or airport surcharges, nor any fee for transporting the renter to the location where the rented vehicle will be delivered to the renter.

1     The picture that emerges is an exception that large RACs wrote and supported because they

2 thought it gave them an advantage over other (presumably smaller) RACs in price advertising.[16]

3 Therefore, the court declines Hertz's invitation to treat the rate statute as a pure deceptive practices

4 prohibition.[17] In particular, there is no persuasive justification for imposing an independent reliance

5 requirement or for interpreting causation under the rate statute as reliance in disguise.

6     Indeed, Plaintiffs correctly note that "[r]eliance is not a general limitation on civil recovery

7 in tort; it is a specialized condition that happens to have grown up with common law fraud." *Bridge*

8 *v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 655-56 (2008) (quotation marks and citation

9 omitted). The gravamen of the rate statute is not fraud or deception, and it is therefore inappropriate

10 to admit reliance in "through the back door" as a feature of the causation analysis.[18] *Id*. Finally,

11 Hertz's causation rationale suggests that consumers may not recover under the rate statute as long

12 as all the RACs are violating it (because a consumer cannot show he would have paid a lower,

13 bundled price). However, as the court noted in its June 2011 Order, it "is skeptical of that

14 argument." (Order of June 27, 2011 #250, p. 13.) The reasons for the court's skepticism are clear:

15 under Hertz's reasoning, the rate statute allows violations with impunity so long as "everyone is

16 doing it." (*Id*.) "Such a rule would render the law toothless and negate its purpose of consumer

17 ///

18 ///

19

20     [16] The large RACs were mistaken in this surmise. (Order of September 13, 2007 #22, pp. 3-7.)

21 However, this version of the legislative history suggests that the "fees paid to airports" exception may have been an interest-group driven exception to a generally public-regarding provision.

22     [17] Where airport authorities themselves prevented unbundling through contractual provisions

23 with RACs, these authorities presumably feared that unbundled ACRFs would look like an additional tax on airport customers. *See Minutes of the Nev. State Leg., Hearing on A.B. 612 Before the Assembly*

24 *Committee on Transportation*, 1989 Leg., 65th Sess. (May 18, 1989) (statement of Assemblyman Nevin that "[h]e did not want Clark County to get blamed for the Airport Authority's fee increases").

25

26     [18] Hertz cites several cases dealing with reliance requirements under consumer fraud statutes. As noted above, reliance and fraud are intertwined, but the rate statute does not sound in fraud.

1   protection."[19] (*Id.*)

2        Therefore, in order to recover under the remedial statute for violation of the rate statute,

3   Plaintiffs need not demonstrate a reliance or reliance-type element. Rather, Plaintiffs must show

4   that (1) Hertz violated the rate statute and that (2) this violation caused an unlawful payment to pass

5   from Plaintiffs to Hertz. The parties do not dispute that Plaintiffs have satisfied these requirements.

6        **4.**     **Hertz's Policy Arguments**

7        Finally, Hertz advances the policy argument that it should not be penalized under an

8   ambiguous statute. Such penalization, Hertz claims, burdens socially desirable business activity. If

9   ambiguous statutes can lead to liability exceeding the harm caused, as Hertz argues is the case here,

10   then firms incur additional costs investigating legality and may even avoid socially desirable lines

11   of business. Worse, these costs are passed on to customers in the form of increased prices,

12   discouraging consumers who would have purchased at the lower (non-ambiguity-infected) price

13   and therefore lowering their welfare.

14        These are persuasive arguments, but they should be directed at a legislature, not a court.

15   Legislatures write ambiguous laws all the time; Hertz cannot plausibly maintain that these laws

16   must all be construed against plaintiffs so that defendants may avoid "costs investigating the

17   legality of contemplated activities." (Defendant's MSJ #296 at p. 28:23-24.) Moreover,

18   countervailing policy arguments weigh in favor of enforcing the rate statute against Hertz. For

19   instance, courts should ensure that interest groups are not rewarded for antisocial legislation, like

20   legislation that tries to reduce marketplace competition. *See generally* Jonathan R. Macey,

21   *Promoting Public-Regarding Legislation Through Statutory Interpretation: An Interest Group*

22   *Model*, 86 Colum. L. Rev. 223 (1986); *see also* William N. Eskridge & Phillip P. Frickey, *Statutory*

23   *Interpretation as Practical Reasoning*, 42 Stan. L. Rev. 321, 347-48 (1990). Or, alternatively,

24

25
26        [19] Hertz implies at several points that "consumer protection" statutes always deal in fraud or deception. Nevada's maximum-price statute for damage waivers is one clear counterexample to this implication, though there are many others. *See* NRS § 482.31565.

courts should avoid filling in the legislature's gaps (with things like reliance requirements, for instance) so that voters can hold legislators accountable for poorly drafted laws. *See* Frank H. Easterbrook, *Statutes' Domains*, 50 U. Chi. L. Rev. 533, 547-48 (1983). And there are surely other arguments still to make. The court declines to choose Hertz's policy argument over its equally plausible competitors.

### C. Summary Judgment on Remedies

#### 1.     Restitution under NRS § 482.31585

The remedial statute, NRS § 482.31585, provides a cause of action for "damages and appropriate equitable relief" for violations of the rate statute. Plaintiffs ask for restitution of class members' unlawful payments to Hertz, an amount totaling over $42 million. Hertz counters that restitution is unavailable absent a showing of actual injury or injustice–reliance, in other words. The court disagrees.[20]

In Nevada, the equitable remedy of restitution has at least two bases: unjust enrichment and statutory purpose. First, "[u]njust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is 'acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Certified Fire Protection Inc. v. Precision Construction*, 283 P.3d 250, 257 (Nev. 2012) (quoting *Unionamerica Mortgage and Equity Trust v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981)). Second, Nevada courts have awarded restitution where the award was necessary to effectuate the purpose of some regulatory regime, even absent a showing of unjust enrichment. *See Feldman v. State*, 615 P.2d 238, 241 (Nev. 1980); *Southwest Gas Corp. v. Public Service Commission*, 614 P.2d 1080, 1082 (Nev. 1980).

///

---

[20] The parties and their experts directly address the question of reliance, disputing the state of affairs in an alternative world where Hertz did not unbundle the ACRF. Since the court concludes that reliance is not required under the rate and remedial statutes, the court does not reach this dispute.

Hertz cites *Landex, Inc. v. State*, 582 P.2d 786 (Nev. 1978) for the proposition that restitution is not available to effectuate a regulatory purpose absent a showing of actual injury. (*See* Defendant's Response #315, p. 14:10.) In *Landex*, Nevada's Attorney General brought an action against Landex and its president for false advertising. 582 P.2d at 787. The Attorney General sought civil penalties as well as restitution of the purchase price of falsely advertised land. *Id.* at 791. Landex argued that the Attorney General needed to show that people "were actually defrauded and suffered injury" in order to merit restitution. *Id*. The Nevada Supreme Court agreed with Landex, requiring a showing of fraud, including proof of "justifiable reliance" and "damage." *Id*.

The criminal regulatory scheme under which *Landex* was decided is distinguishable from the civil regulatory scheme at issue here. First, the *Landex* statute was a criminal statute, providing for civil penalties in an action brought by the Attorney General or a district attorney. *See* NRS §§ 207.175 (declaring violation of the false advertising statute a misdemeanor); 207.174 (providing a $2,500 civil penalty per violation). This statute did not provide for private rights of action (unlike the remedial statute here), and this statute did not authorize the Attorney General to seek equitable remedies (unlike the remedial statute here). Thus, in seeking restitution, the Attorney General sought a remedy not provided for in a statutory scheme that explicitly provided for other remedies (civil penalties). In order for the plaintiff to merit an extra-statutory remedy, the Court required the plaintiff to prove an extra-statutory claim for which the remedy was appropriate: common law fraud. Third, it is not clear if the Attorney General was asking for criminal or civil restitution, and "[r]estitution in criminal cases has little relationship to restitution in civil cases." Dobbs, *supra*, § 4.1. Fourth, there was no evidence before the court as to the amount of restitution–the people to be compensated were not parties to the case, nor was there evidence as to what amounts were owed to whom. *Landex*, 582 P.2d at 791-92. This is significant since restitution is much less likely to be granted where courts must engage in difficult valuation problems. *See* Saul Levmore, *Explaining Restitution*, 71 Va. L. Rev. 65, 69-72 (1985). In contrast, such valuation problems are not present here.

Moreover, there are independent reasons why restitution is a viable remedy in this case. First, Hertz's reasoning from *Landex* would convert actions for restitution into actions for compensatory damages. Following Hertz's reading of *Landex*, every award of restitution for the violation of a statutory duty would require a showing of actual injury. But this eliminates the distinction between damages and restitution: a damages award requires the plaintiff's injury, but a restitutionary award requires the defendant's gain. Dobbs, *supra*, § 1.1. Second, Nevada courts have approved restitutionary awards without showings of actual injury. In *Feldman*, for example, the Nevada Supreme Court approved an award of restitution for a $25 fee illegally charged by an insurance agent. 615 P.2d at 241. The agent had charged the fee in spite of contrary orders from the Nevada insurance regulator. *Id.* In light of the insurance regulator's decision, the Court noted that since the fees "were procured without authority, [the agent] is not entitled to retain them." *Id.* Additionally, the Nevada Supreme Court approved of a restitutionary remedy where a utility had overcharged its customers for natural gas. *See Southwest Gas*, 614 P.2d at 1082. As in *Feldman*, the *Southwest Gas* Court noted that "refund" was appropriate because "[the customers], in effect, were charged a premium for a priority of use that could not *legally* be provided." *Id.* (emphasis added).

Third, restitution is an available remedy when a contractual provision is unenforceable due to illegality, at least where restitution effectuates the statutory purpose. Restatement (Third) of Restitution & Unjust Enrichment § 32(1) (2011);[21] Dobbs, *supra*, § 13.6. In these cases, restitution does not depend on unjust enrichment. *See* Restatement (Third) of Restitution & Unjust Enrichment, *supra*, § 32, comment c. Where the violation of a regulatory statute provides the grounds for unenforceability, "[r]estitution is [ ] available . . . unless the court concludes that the allowance of restitution would defeat the policy of the regulation in question." *Id.* at comment e. While courts avoid imposing restitutionary remedies when the statute provides for other

---

[21] Nevada courts consider the Restatement persuasive. *See Certified Fire Protection Inc. v. Precision Construction*, 283 P.3d 250, 256 (Nev. 2012) (quoting the Restatement).

punishments–like criminal or civil penalties[22]–restitution is especially appropriate when the statutory purpose would be undermined by the failure to award restitution. *See, e.g., Stock v. Meek*, 221 P.2d 15, 21 (Cal. 1950) (Traynor, J.) (awarding restitution of excess interest in a usury case even though plaintiff expressly agreed to usurious rate).

Here, of course, the remedial statute expressly provides for restitution in the form of "equitable relief." The statute does not provide for civil or criminal penalties; instead, it consigns enforcement to private parties like Plaintiffs. And Hertz's two-pronged argument–that restitution requires a showing of reliance (in some form) and that reliance is impossible to show because all the rental car companies behaved identically–undermines the statutory purpose. As this court has already observed, the "everyone is doing it" defense would "render the law toothless." (Order of June 27, 2011 #250 at p. 13.) Restitution is therefore the best way to effectuate the statutory purpose behind the rate and remedial statutes.

## 2. Unjust enrichment

Plaintiffs also allege a claim for unjust enrichment. In *Sobel*, the court refused to rule on liability as to the unjust enrichment claim because neither party had presented the "full terms and conditions of the rental agreements" with Hertz. 698 F. Supp. 2d at 1231. The court now rules in favor of Plaintiffs on liability for unjust enrichment but determines that a monetary remedy is inappropriate in light of the remedy for Hertz's violation of the rate statute.

As noted above, "[u]njust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is 'acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Certified Fire Protection*, 283 P.3d at 257. To

---

[22] *See Magill v. Lewis*, 333 P.2d 717, 720 (Nev. 1958) ("The courts will not impose penalties for noncompliance [with a regulatory statute] in addition to those that are provided expressly or by necessary implication."); *see also Lewis & Queen v. N.M. Ball Sons*, 308 P.3d 713, 719 (Cal. 1958) (Traynor, J.).

the extent courts have conflated the unjust enrichment and statutory purpose rationales for restitution, the charging of an unlawful fee may constitute "unjustified enrichment." "Unjustified enrichment is enrichment that lacks an adequate legal basis; it results from a transaction that the law treats as ineffective to work a conclusive alteration in ownership rights." Restatement (Third) of Restitution & Unjust Enrichment, *supra*, § 1, comment b.

Here, since Hertz was without legal power to collect the unbundled ACRF from Plaintiffs, Hertz benefitted from an unjustified windfall. As the *Feldman* Court explained in a similar situation, "[A]llowing [the defendant] to retain the fees would encourage noncompliance with the [statute] and grant a windfall to [the defendant] simply because he [ ] charged the unauthorized fee." 615 P.2d at 241. Therefore, Hertz is liable for unjust enrichment.

Hertz rightly argues that "[a]n action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) However, this argument assumes the "express, written contract" is enforceable. *See id*; *see also* Restatement (Third) of Restitution & Unjust Enrichment, *supra*, § 32. As noted above, a claim for unjust enrichment is available–even when there is an express written contract–if that contract (or some provision of it) is unenforceable because it violates a state law and restitution serves that law's purpose. *See, e.g., Stock* 221 P.2d at 21.

However, while the court finds Hertz liable under Plaintiffs' unjust enrichment claim, a restitutionary remedy is inappropriate. The court has determined that restitution under the remedial statute is merited, and "a plaintiff may not recover [ ] twice for the same injury simply because he or she has two legal theories." *Elyousef v. O'Reilly & Ferrario, LLC*, 245 P.3d 547, 549 (Nev. 2010) (citation and quotation marks omitted). Therefore, Plaintiffs' request for restitution under their unjust enrichment claim is denied.

///

///

**D. Class Certification**

**1.    Rule 23(a)**

Under Rule 23(a), Hertz challenges Plaintiffs' ability to establish typicality and adequacy. The court briefly addresses the undisputed Rule 23(a) requirements–numerosity and commonality–before turning to the challenged requirements.

**a.    Rule 23(a)(1): numerosity**

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. Plaintiffs need not state exact figures; instead, they can satisfy the numerosity requirement by providing reasonable estimates. *See In re Rubber Chemicals Antitrust Litigation*, 232 F.R.D. 346, 350 (N.D. Cal. 2005).

Here, the class period spans nearly six years, and because the unbundling of ACRFs was standard practice, the class would likely include almost every renter during this time period. Hertz itself has identified over 1.2 million individuals as putative class members in connection with the failed Settlement Agreement.[23] (Jeffrey Gyomber Decl. #132, p. 3.) This number is large enough to make joinder impracticable. *See Ansari v. New York University*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998) ("[C]ourts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members.")

**b.    Rule 23(a)(2): commonality**

The Ninth Circuit has described the commonality element as follows:

Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal

---

[23] Factual determinations supporting a Rule 23 finding must be made by a preponderance of *admissible* evidence. *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 322-23 (3d Cir. 2008). Fed. R. Evid. 408 prohibits the use of "statement[s] made during compromise negotiations about the claim" to establish the validity or amount of the claim. However, Rule 408 does not prohibit the court from considering Hertz's admission at the class certification stage because the court is not determining liability or damages. *See In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1124 n. 20 (7th Cir. 1979).

1    remedies within the class.

2    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In this case, there are common

3    issues of both fact and law. The putative class members' claims all arise out of Hertz's standard

4    practice of quoting and charging unbundled ACRFs at Nevada airports. The contracts

5    involved–whether corporate or individual contracts–implicate common legal questions with respect

6    to the unbundled ACRFs. Thus, because the class members' claims arise from a standard practice

7    and implicate common legal questions, the commonality element is satisfied.

8    **c.      Rule 23(a)(3): typicality**

9    "Under the [Rule 23]'s permissive standards, representative claims are 'typical' if they are

10   reasonably co-extensive with those of absent class members; they need not be substantially

11   identical." *Hanlon*, 150 F.3d at 1020. Typicality exists where the claims of the named plaintiffs

12   arise from the same event that gives rise to the claims of the other class members, and the named

13   plaintiffs' claims are based on the same legal theories as the other class members' claims. *Rosario*

14   *v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *see also Hester v. Vision Airlines, Inc.*, 2009 WL

15   4893185, *4 (D. Nev. Dec. 16, 2009)*, aff'd.* 687 F.3d 1162 (9th Cir. 2012).

16   Hertz challenges Plaintiffs' ability to show typicality by asserting that Plaintiffs Sobel and

17   Dugan were not misled by Hertz's rate-charging practice. This challenge will only succeed if the

18   thrust of the class members' legal theory is that they *were* deceived. But that is not basis of the

19   other class members' claims. Instead, their claim alleges that the charging of the unbundled ACRFs

20   violated the rate statute. This unbundling practice is the same practice giving rise to Plaintiffs'

21   claims, and, as demonstrated above, Plaintiffs' claims do not rely on reliance. Thus, the named

22   plaintiffs' claims are reasonably coextensive with those of the unnamed class members.

23   **d.      Rule 23(a)(4): adequacy of representation**

24   The fourth requirement of Rule 23(a) is that "the representative parties will fairly and

25   adequately protect the interests of the class . . . ." Fed. R. Civ. P. 23(a)(4). "Resolution of two

26   questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any

1  conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

2  prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

3       Hertz's chief argument against the adequacy of plaintiff Sobel and plaintiff Dugan as class

4  representatives is that they have a conflict of interest with other class members. Both plaintiffs had

5  business relationships with class counsel (or former class counsel) in the past, and Plaintiffs hope to

6  have business relationships with class counsel in the future. For plaintiff Dugan, these past

7  relationships include consulting fees paid by class counsel Robertson in at least four other cases

8  (with one case netting Dugan $425,000). For plaintiff Sobel, this relationship includes receiving

9  paid work from former class counsel Zlotnick since becoming a class representative. Hertz argues

10 that these "[i]ntertwined business relations with class counsel create disqualifying conflicts of

11 interest." (Defendant's Opposition #262, p. 24:15.) The rationale is that "a class representative who

12 is closely associated with the class attorney [will] allow settlement on terms less favorable to the

13 interests of the absent class members." *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254 (11th

14 Cir. 2003) (quotation marks and citation omitted).

15      In *London*, the court noted that a longtime friendship between the named plaintiff and class

16 counsel, including a former business relationship and the possibility of a future business

17 relationship, rendered the named plaintiff inadequate as class representative. *Id*. Similar close

18 relationships between class counsel and named plaintiffs have been disqualifying. *See Schroder v.

19 Suburban Coastal Corp.*, 729 F.2d 1371, 1375 (11th Cir. 1984) (named plaintiff was counsel's

20 employee); *Susman v. Lincoln American Corp.*, 561 F.2d 86, 88 (7th Cir. 1977) (named plaintiff

21 was counsel's brother).

22      Notably, these courts have held a named plaintiff inadequate to represent the class's interest

23 only when the named plaintiff had a personal relationship with class counsel (though in *London* and

24 *Schroder* there were both personal and business relationships). These cases are therefore

25 distinguishable: here, only a business relationship is alleged. While this Circuit has held that ex-

26 ante incentive agreements between class counsel and named plaintiffs create adequacy problems,

Hertz has identified no such agreements with Sobel or Dugan. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 960 (9th Cir. 2009). And courts have blessed "professional plaintiffs" in consumer class actions (like this) because "[r]epeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Professional plaintiffs have at least as strong a business relationship with class counsel as do the named plaintiffs here.

Therefore, the named plaintiffs are adequate class representatives. First, their business relationships with some (but not all) of class counsel do not disqualify them. *See also Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46, 52 (D. Conn. 2000) (refusing to find the named plaintiff inadequate "simply because the plaintiff and his counsel have had professional dealings in the past, without any other evidence suggesting some improper purpose for the suit"). Second, similar business relationships to that of plaintiff Dugan's have not been found to be disqualifying. *See Murray*, 434 F.3d at 954. Finally, even if plaintiff Dugan's dealings with class counsel were troubling, "the adequacy-of-representation requirement is satisfied as long as one of the class representatives is an adequate class representative." *Rodriguez*, 563 F.3d at 961 (quotation marks and citation omitted). Plaintiff Sobel's dealings with former class counsel Zlotnick were long ago and modest; she is an adequate representative even if he is not.[24]

### 2. Rule 23(b) requirements

In addition to satisfying Rule 23(a)'s requirements, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). Plaintiffs in this case seek certification under Rule 23(b)(3). Under that rule, certification is appropriate if the court finds that "questions of law or fact common to the class members predominate over any questions affecting

---

[24] For this reason, there is no need to address Hertz's argument that plaintiff Dugan misrepresented who made his rental car reservation. Furthermore, this is not an issue central to the litigation, and the alleged inconsistency does not place plaintiff Dugan's credibility "seriously in doubt" for the purposes of adequate representation. *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) (finding a named plaintiff inadequate when he fabricated a report critical to his claim).

1   only individual members, and that a class action is superior to other available methods for fairly

2   and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating superiority, the

3   rule directs the court to consider the following: (A) the class members' interests in individually

4   controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation

5   concerning the controversy already begun by or against class members; (C) the desirability or

6   undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely

7   difficulties in managing the class action. *Id.*

8                          **a.     Predominance**

9        Here, Hertz mainly challenges predominance. The brunt of this challenge is Hertz's

10   contention that recovery under the remedial statute requires a showing of reliance or of a reliance-

11   type injury or causation element. Since reliance is an individualized inquiry, Hertz argues that

12   common issues do not predominate and therefore that class certification is inappropriate. The court

13   has weighed Hertz's reliance argument above and found it wanting. Outside of Hertz's attempts to

14   read a reliance requirement into the remedial statute, it is clear that "questions of law or fact

15   common to class members predominate over any questions affecting individual members." Fed. R.

16   Civ. Pro. 23(b)(3). The common questions of fact include whether the class members were charged

17   the unbundled ACRFs; the common questions of law include the issues already addressed at

18   summary judgment, above. Therefore, common questions of law or fact predominate over any

19   individualized issues. *See also Amchem*, 521 U.S. at 625 (noting that predominance "is a test

20   readily met" in consumer protection actions).

21        The predominance test is also met with respect to Plaintiffs' unjust enrichment claim.

22   Where state common law includes an unjust enrichment action like Nevada's, courts have usually

23   granted class certification. For example, in *Lewis v. First American Title Insurance Co.*, 265 F.R.D.

24   536 (D. Idaho 2010), the court evaluated an unjust enrichment claim based on unlawful surcharges

25   on an insurance policy. Interpreting an Idaho unjust enrichment cause of action identical to

26   Nevada's, the court concluded, "Any putative class members who were overcharged . . . would be

1    in exactly the same position." *Lewis*, 265 F.R.D. at 560. *See also Keilholtz v. Lennox Hearth*

2    *Products Inc.*, 268 F.R.D. 330, 343 (N.D. Cal. 2010) (applying California unjust enrichment law);

3    *Phelps v. 3PD, Inc.*, 261 F.R.D. 548, 563 (D. Or. 2009) (applying Oregon unjust enrichment law).

4                  **b.**        **Superiority**

5          The remaining requirement under Rule 23(b) is that a class action is also "superior" to other

6    types of actions. In evaluating superiority, Rule 23(b) directs the court to consider the following:

7    (A) the class members' interests in individually controlling the prosecution or defense of separate

8    actions; (B) the extent and nature of any litigation concerning the controversy already begun by or

9    against class members; (C) the desirability or undesirability of concentrating the litigation of the

10   claims in the particular forum; and (D) the likely difficulties in managing the class action. Hertz

11   challenges only the final consideration, manageability. This challenge is based on the supposed

12   necessity of conducting mini-trials to determine damages and causation.

13         In light of the predominance analysis, however, the remedial statute does not contemplate

14   these mini-trials. And while damages may differ from class member to class member, this alone

15   does not defeat class certification. *See In re Visa Check/MasterMoney Antitrust Litigation*, 280

16   F.3d 124, 140 (2d Cir. 2001); *see also Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).

17   Moreover, a class action is particularly appropriate where, as here, the alternative involves class

18   members "filing hundreds of individual lawsuits that could involve duplicating discovery and costs

19   that exceed the extent of the proposed class members' individual injuries." *Wolin v. Jaguar Land*

20   *Rover North America, LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010). Finally, judicial economy will be

21   served by adjudicating the claims together in this forum. Therefore, Plaintiffs have successfully met

22   the superiority requirement.

23        **E.  Prejudgment Interest**

24         Finally, Plaintiffs have asked for prejudgment interest. In diversity actions, state law

25   governs the award of prejudgment interest. *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir.

26   2007). NRS § 17.130(2) provides that "the judgment draws interest from the time of service of the

1  summons and complaint until satisfied." This interest is "compensation for use by defendant of

2  money to which plaintiff is entitled from the time the cause of action accrues until the time of

3  judgment." *Ramada Inns, Inc. v. Sharp*, 711 P.2d 1, 2 (Nev. 1985).

4          Here, Hertz objects that an award of prejudgment interest in inappropriate since restitution

5  is less like compensation and more like punishment. However, the restitutionary remedy is not

6  aimed at deterrence but rather at vindicating Plaintiffs' legal rights. Therefore, Plaintiffs are entitled

7  to prejudgment interest at the statutory rate dating from the service of the First Amended Complaint

8  (which defines the relevant class).

9  **IV.    Conclusion**

10         IT IS THEREFORE ORDERED that Hertz's Objections to Evidence (#307) is GRANTED

11  in part and DENIED in part.

12         IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment (#295)

13  is GRANTED in part and DENIED in part. Plaintiffs are awarded prejudgment interest pursuant to

14  NRS § 17.130.

15         IT IS FURTHER ORDERED that Hertz's Motion for Partial Summary Judgment (#298) is

16  DENIED.

17         IT IS FURTHER ORDERED that Plaintiffs' Motion for Class Certification (#255) is

18  GRANTED.

19         IT IS SO ORDERED.

20         DATED this 21st day of March, 2013.

21

22                                              _____

23                                              LARRY R. HICKS
                                                UNITED STATES DISTRICT JUDGE

24

25

26