1

2

3

4

5

6                         UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                      * * *

9  JANET SOBEL and DANIEL DUGAN,         )
   Ph.D., individually and on behalf of all others )
10 similarly situated,                    )            3:06-CV-00545-LRH-RAM
                                          )
11              Plaintiffs,               )
                                          )
12 v.                                     )            ORDER
                                          )
13 THE HERTZ CORPORATION, a Delaware      )
   corporation,                           )
14                                        )
                Defendant.                )
15 _____)

16        Before the Court is Plaintiffs Janet Sobel and Daniel Dugan's ("Plaintiffs") Motion for

17 Attorney Fees.  Doc. #411.[1]  Defendant The Hertz Corporation ("Hertz") filed a Response,

18 Doc. #432, to which Plaintiffs replied.  Doc. #441.

19        Also before the Court is Objectors William Andrews ("Andrews") and Walter Weber's

20 ("Weber") Motion for Attorney Fees.  Doc. #409.[2]  Plaintiffs filed a Response, Doc. #434, to which

21 Andrews and Weber replied.  Doc. #437.  Hertz also filed a Response, Doc. #431, to which

22 Andrews and Weber replied.  Doc. #437.

23 ///

24 _____

25        [1] Refers to the Court's docket number.

26        [2] Andrews and Weber filed an Amended Motion for Attorney Fees to correct docket references.
   Doc. #413.

1    Also before the Court is Objector Scott Schutzman's ("Schutzman") Motion for Attorney's

2    Fees.  Doc. #410; Doc. #446.  Plaintiffs filed a Response, Doc. #433, to which Schutzman replied.

3    Doc. #438.  Hertz also filed a Response, Doc. #431, to which Schutzman did not reply.[3]

4    **I.    Facts and Procedural History**

5        This is a class action filed on behalf of persons who rented cars from Hertz at the Reno and

6    Las Vegas, Nevada airports.  In return for the right to operate on-site at the Reno and Las Vegas

7    airports, rental car companies like Hertz are required to pay a percentage of their gross revenues to

8    the airports as "concession fees."  These companies, including Hertz, pass along the fees to their

9    customers as surcharges labeled "airport concession recovery fees."[4]  At all relevant times, Hertz

10   "unbundled" the surcharges from the base rental rate, such that the rental rate quoted to customers

11   did not include the additional "airport concession recovery fee," which was itemized separately in

12   the rental agreement.  Plaintiffs alleged that this practice violated Nevada Revised Statute ("NRS")

13   482.31575, and the Court agreed.  Doc. #332.

14       On October 13, 2006, individual Plaintiffs Janet Sobel, Daniel Dugan, Ph.D., and Lydia Lee

15   filed a Complaint against Defendants Hertz and Enterprise Rent-a-Car Company ("Enterprise").

16   Shortly thereafter, Enterprise was voluntarily dismissed without prejudice, Doc. #5, and Lee's

17   claims against Hertz were voluntarily dismissed with prejudice.  Doc. #50.  Following the Court's

18   denial of Hertz's Motion to Dismiss and the Ninth Circuit's denial of interlocutory review, the

19   Court approved the parties' stipulation to bifurcate liability and damages, and to defer class

20   certification proceedings.  Doc. #52.  The parties then filed cross-motions for summary judgment

21   on the issue of liability.  Doc. #78; Doc. #81.  On the relevant claim—Hertz's violation of NRS

22   § 482.31575—the Court found in Plaintiffs' favor.  Doc. #111.

23   _____

24       [3]  To the extent Objector Paige Nash filed a Request for Attorney Fees, her request is denied
     as untimely.  *See* Doc. #430 (filed on August 25, 2014, two months after the deadline).

25       [4]  Hertz charged Plaintiff Sobel, who rented her vehicle from the McCarran International
26   Airport in Las Vegas, a concession recovery fee of 10%.  Hertz charged Plaintiff Dugan, who rented
     his vehicle from the Reno-Tahoe International Airport in Reno, a concession recovery fee of 11.54%.

2

Following the Court's ruling on liability, Plaintiffs filed a motion for class certification on behalf of all Hertz customers who paid an airport concession recovery fee at Nevada airports between October 13, 2003, and September 20, 2009.  Doc. #112.  The parties also commenced discovery on the issue of damages.  About three months after the Court's liability ruling, the parties entered into settlement negotiations.  After they reached an agreement in July 2010, the Court approved a stipulation staying all litigation pending further negotiations, documentation, and approval of a class action settlement.  Doc. #118.

On October 5, 2010, after further negotiations, Plaintiffs filed a motion seeking (1) preliminary approval of the settlement, (2) conditional certification of the settlement class, (3) approval of the form and manner of notice to the settlement class and the procedures for class members to register for settlement benefits, and (4) a schedule for proceedings leading to final approval of the settlement—all stipulated to by the parties for purposes of settlement only. Doc. #123.  The parties also stipulated to consolidate the *Sobel* case with former plaintiff Lee's reinstated action against Enterprise, docketed as Case No. 3:10-cv-326-LRH-VPC.  The Court approved the stipulation to consolidate the *Sobel* and *Lee* cases, allowing Plaintiffs to file a Second Amended Complaint and staying all proceedings (except those relating to settlement) pending final approval of the proposed settlement.  Plaintiffs filed their Second Amended Complaint on November 5, 2010.  Doc. #133.

Four days later, the Court held a hearing on Plaintiffs' motion for preliminary approval of settlement, conditional certification of the settlement class, and approval of the form of notice. Doc. #123.  After hearing arguments and taking the matter under submission, the Court entered two orders on November 23, 2010, granting conditional certification of the settlement class, Doc. #135, and granting preliminary approval of the settlement and approving the form of notice.  Doc. #136. In particular, the Court (1) conditionally certified the settlement class under Fed. R. Civ. P. 23(b)(3), "in connection with and solely for purposes of settlement"; (2) appointed as class representatives the named plaintiffs, Janet Sobel; Daniel Dugan, Ph.D.; Lydia Lee; and Mark

Singer; (3) appointed as class counsel the Law Office of David Zlotnick; Berger & Montague, P.C.; and Robertson & Benevento; (4) preliminarily approved the settlement; (5) entered a scheduling order for further motions; and (6) approved the form and manner of notice to the settlement class. From February 7 to 18, 2011, nearly 2.5 million notices were sent to class members. Of those, 1,217,894 notices were mailed or emailed to Hertz customers. Doc. #229 at 3. After approximately two months, nearly 35,482 Hertz customers had registered for the benefits of the settlement—coupons whose value depended on the number of rentals that the customer had purchased. *Id.* Additionally, 2,068 opt-outs had been processed for Hertz. *Id.*

On May 17, 2011, the Court held a fairness hearing on Plaintiffs' motion for final approval of the settlement. Doc. #185. After hearing arguments from Plaintiffs, Defendants, and appearing Objectors, including Andrews, Weber, and Schutzman, the Court indicated that the motion for final approval would be denied, with a written order addressing all pending motions to follow. Doc. #250. Through the terms of their earlier stipulations, the Court's denial of final approval nullified the parties' pre-settlement filings, including the stipulation to consolidate and the Second Amended Complaint. Consequently, the First Amended Complaint—with plaintiffs Sobel and Dugan and defendant Hertz—again governed the parties and claims before the Court in the *Sobel* action.

Thereafter, the stay on damages discovery lifted. Plaintiffs subsequently filed a motion to certify a class, Doc. #255, and both parties filed motions for summary judgment on the issue of remedies. Doc. #295; Doc. #298. After an October 18, 2012 hearing and a further three-month stay for the purposes of renewed settlement negotiations, the Court certified Plaintiffs' class under Fed. R. Civ. P. 23(b) and found in favor of Plaintiffs on the issue of remedies. Doc. #332. Specifically, the Court held that class members are entitled to the restitution of any airport concession recovery fees they paid to Hertz during the class period. *Id.* Thereafter, the Court approved notice to the class members and further ordered that Hertz bear the expense of notice. Doc. #362. Hertz filed an interlocutory appeal before the Ninth Circuit challenging the Court's order directing Hertz to bear

the cost of notice.  Doc. #365.  On June 25, 2014, notice was sent to the class members.  *See*

Doc. #408.  Also on June 25, 2014, Plaintiffs and Objectors filed the present Motions for Attorney

Fees.  Doc. #409; Doc. #410: Doc. #411.

## II.      Discussion

### A.      Class Counsel

This is a "hybrid" class action—it was initiated under a statute with a fee-shifting provision,

but it reached a judgment creating a common fund.  *See* Newberg on Class Actions, § 14:10 (4th

ed.).  Plaintiffs request an award of class counsel fees in the amount of twenty-five percent of the

judgment, including pre-judgment interest, as well as reimbursement of expenses in the amount of

$432,211.39 to be paid by Hertz.  Plaintiffs also request an incentive award for both of the named

plaintiffs (Sobel and Dugan) in the amount of $10,000 each, to be paid by Hertz.  Plaintiffs seek the

above fee and cost award under the fee-shifting provisions of the Nevada statute that Hertz

violated.  The governing section states:

> A short-term lessee may bring an action against a short-term lessor for the recovery
> of damages and appropriate equitable relief for any violation of NRS 482.3151 to
> 482.3159, inclusive.  *The prevailing party is entitled to recover reasonable
> attorney's fees and costs.*

NRS. 482.31585 (emphasis added).  Alternatively, Plaintiffs seek the above fee and cost award

under the "common fund" doctrine, the common-law rule which permits recovery of fees from the

damage award obtained.  *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301,

1311 (9th Cir. 1990).  As a practical matter, a fee award under the fee-shifting statute would not

affect the amount of compensation that Plaintiffs and class members receive because the fee would

be assessed against Hertz on top of any liability to Plaintiffs.  In contrast, a  fee award under the

common fund doctrine would be drawn from the class judgment and thus reduce the amount that

class members receive.

### 1.      Fee-Shifting Statute—NRS 482.31585

NRS 482.31585 provides that the "prevailing party is entitled to recovery reasonable

1    attorney's fees and costs."  Here, Plaintiffs are unquestionably the "prevailing parties," as the Court

2    has ruled in their favor on liability, remedies, and class certification.  *See Valley Elec. Ass'n v.*

3    *Overfield*, 106 P.3d 1198, 1200 (Nev. 2005) (under the Nevada fee-shifting statute, a prevailing

4    party is one who "succeeds on any significant issue in litigation which achieves some of the benefit

5    it sought in bringing suit").  Moreover, the Court finds that it does not have discretion to deny

6    Plaintiffs' request for reasonable attorney's fees and costs, as the statute clearly provides for their

7    entitlement thereto.  *See Davis v. Beling*, 278 P.3d 501, 515 (Nev. 2012) (finding that the district

8    court erred in denying defendant/counter-plaintiff's motion for attorney's fees where the

9    agreements governing their entitlement thereto unambiguously provided "that in the event suit is

10   brought to enforce the agreements, the prevailing party is entitled to attorney's fees incurred in

11   defense or prosecution of the action").  Accordingly, the Court shall award Plaintiffs, as the

12   prevailing party, reasonable attorney's fees pursuant to NRS 482.31585.

13                              **a.  Application of the Lodestar Method**

14           Hertz contends that any fee award under NRS 482.31585 should be based on the lodestar

15   method, not a percentage-of-recovery method as requested by Plaintiffs.  Nevada courts have not

16   squarely addressed the issue of whether attorney's fees, awarded pursuant to a fee-shifting statute

17   and paid by the non-prevailing party, may be calculated using the percentage-of-recovery method in

18   the context of a class action, and it appears that the possibility remains open.[5]  In *Shuette v. Beazer*

19   *Homes Holdings Corp.*, 124 P.3d 530, 548-49 (Nev. 2005), the Nevada Supreme Court advised:

20           In Nevada, "the method upon which a reasonable fee is determined is subject to the
             discretion of the court," which "is tempered only by reason and fairness."
21           Accordingly, in determining the amount of fees to award, the court is not limited to
             one specific approach; its analysis may begin with any method rationally designed to
22           calculate a reasonable amount, including those based on a "lodestar" amount or a
             contingency fee.

23

24   (internal citations omitted).  *Shuette* was a putative class action brought pursuant to a Nevada

25   _____

26           [5]  Moreover, no Nevada decision has ever interpreted NRS 482.31585 and assessed an award
     of fees under that statute.

                                                     6

statute, which provided for an award of attorney's fees.  While the court confirmed a broad

approach for determining attorney's fees in the context of a case involving class allegations,[6] it is

far from clear that the court would have endorsed the approach advocated by Plaintiffs here.

Moreover, the cases to which the court cited in support of the proposition that a court may use a

contingency fee method for calculating reasonable fees do not support the notion that this practice

is appropriate in the context of a fee-shifting statute.  Most telling, one of the cases to which the

*Shuette* court cites states explicitly that "[i]n so-called 'fee-shifting' cases, in which the

responsibility to pay attorney's fees is statutorily or otherwise transferred from the prevailing

plaintiff or class to the defendant, the primary method for establishing the amount of 'reasonable'

attorney's fees is the lodestar method."  *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26

(2000).

Additionally, Ninth Circuit authority, while not binding as to the Court's interpretation of

the Nevada fee-shifting statute at issue, is certainly persuasive, and generally confirms the principal

that courts have broad discretion to fashion an appropriate award of attorney's fees according to the

particular circumstances of a case.  Moreover, the weight of Ninth Circuit authority appears to

support Hertz's contention that if attorney's fees are to be awarded pursuant to the fee-shifting

statute, the lodestar method is appropriate.  *See Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir.

2003) (under fee-shifting statutes, "the court must calculate awards for attorneys' fees using the

'lodestar' method") (internal quotation marks omitted); *Six (6) Mexican Workers*, 904 F.2d at 1311

(noting that "statutory awards of attorneys' fees are subject to 'lodestar' calculation procedures");

*see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011) ("[t]he

'lodestar method' is appropriate in class actions brought under fee-shifting statutes . . . where the

relief sought—and obtained—is primarily injunctive in nature and thus not easily monetized[,]"

*contrast*, "[w]here a settlement produces a common fund for the benefit of the entire class, courts

---

[6]  The court de-certified the class and remanded the case for an appropriate determination as to whether class certification was appropriate.

1   have discretion to employ either the lodestar method or the percentage-of-recovery method").

2          Finally, the differing purposes behind statutory fee shifting and the common fund doctrine

3   confirm that the lodestar method is the appropriate manner for calculating reasonable attorney's

4   fees under NRS 482.31585.  The purpose of the common fund doctrine is to avoid the unjust

5   enrichment of those who benefit from the fund that is created, protected, or increased by the

6   litigation and who otherwise would bear none of the litigation costs.  Newberg on Class Actions

7   § 14:2; § 14:6 (4th ed.).  As such, attorney's fees are deducted from the total fund to ensure that

8   those who benefit from the fund bear equally the cost of creating it.  In contrast, the fee-shifting

9   doctrine is created by statute and provides an incentive for citizens to enforce certain laws by

10  ensuring that they will be compensated for their efforts by the non-prevailing party.  *Id.* at § 14:3.

11   Fee-shifting is particularly important in those cases where the potential relief is nominal damages

12  or an injunction.  *Id.*  Indeed, NRS 482.31585 is a consumer protection statute which consigns

13  enforcement of its provisions to private parties like Plaintiffs.  While the Court did not find that

14  Plaintiffs were damaged—i.e., actually injured—by Hertz's violation, the Court nevertheless found

15  that Plaintiffs were entitled to restitution as appropriate equitable relief.  This factor, as well as the

16  weight of federal law on the subject,[7] leads the Court to conclude that the lodestar method is the

17  appropriate method for calculating fees pursuant to NRS 482.31585.

18          Next, the parties dispute whether Plaintiffs are entitled to a multiplier on the lodestar

19  calculation under the fee-shifting statute.  Plaintiffs argue that they should be entitled to a 3.38

20  multiplier "so that the fee approximates what a skilled lawyer would earn for comparable

21  contingent work in the private marketplace."  See Doc. #411 at 12; Doc #445 at 2.  Specifically,

22  Plaintiffs believe that the amount in controversy and the results obtained, the contingent risk taken

23  by Plaintiffs' counsel, the quality of the services rendered, the delay in payment, and the novelty

24  and complexity of the issues presented warrant such a lodestar multiplier.  The Court disagrees.

25

26          [7]While federal case law is not binding as to the Court's interpretation of NRS 482.31585, the
    Court agrees with the principles set forth therein.

Again, while Nevada courts have yet to squarely address whether a lodestar multiplier is permissible in the context of a fee-shifting statute, the Court finds that federal law on the subject is particularly instructive.[8]

"The 'lodestar' figure has, as its name suggests, become the guiding light of [] fee-shifting jurisprudence. [The Supreme Court has] established a 'strong presumption that the lodestar represents the 'reasonable' fee, [*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, (1986)], and have placed upon the fee applicant who seeks more than that the burden of showing that 'such an adjustment is *necessary* to the determination of a reasonable fee.'" *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (quoting *Blum v. Stenson*, 465 U.S. 886, 898 (1984)) (emphasis in original).  In *Dague*, the Supreme Court proscribed contingency enhancements—i.e., risk multipliers—in statutory fee shifting cases.  *Id.*  Citing fairness considerations, the court reasoned that allowing risk multipliers would unduly burden losing parties who are required by statute to pay no more than a "reasonable" fee for the services rendered by the winning party's attorneys in *that particular case. Id.* at 562-67.  In contrast, attorneys operating on a contingency-fee basis pool the risks presented by all cases. *Id.* at 565.  Accordingly, the rationale for allowing risk multipliers in the contingency-fee context simply does not apply where fees are awarded pursuant to a fee-shifting statute. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299-1300 (9th Cir. 1994) (finding that "the concerns expressed in *Dague* about unduly burdening losing parties in statutory fee cases are not present in common fund cases where fees are paid out of the settlement fund"); *see also Staton*, 327 F.3d at 967-68 ("The procedures used to determine the amount of reasonable attorneys' fees differ concomitantly in cases involving a common fund from those in which attorneys' fees are sought under a fee-shifting statute.  As in a statutory fee-shifting case, a district court in a common-fund case can apply the lodestar method to

---

    [8]   Additionally, all of the cases to which Plaintiffs cite in support of their argument that a multiplier should apply are cases in which fees were awarded pursuant to the common fund doctrine and paid out of a gross settlement.  Accordingly, the Court finds no authority in Plaintiffs' briefing to support the notion that they are entitled to a lodestar multiplier in the context of a fee-shifting statute.

determine the amount of attorneys' fees.  In common fund cases, however, the court can apply a risk multiplier when using the lodestar approach.").  Moreover, the Ninth Circuit has found that a number of other factors are presumably taken into account in the hours or rate component of the lodestar calculation.  *See Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996) ("[a]mong the subsumed factors [are]: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained, and (5) the contingent nature of the fee agreement") (internal citations omitted).  Accordingly, the Court finds that a lodestar multiplier should not be applied to the fees assessed against Hertz pursuant to NRS 482.31585.

### b.  Pre-Settlement Lodestar Figure

Plaintiffs submit that their total lodestar fees are $3,135,269.00.  *See* Doc. #445.  Hertz does not challenge the hourly rates claimed by Plaintiffs.  *See* Doc. #432 at 6 n.2.  Instead, Hertz argues that Plaintiffs' lodestar calculation should be reviewed in two segments: (1) before June 27, 2011, when the Court rejected the parties' settlement, and (2) after June 27, 2011.  As part of the unsuccessful settlement, Plaintiffs represented that a fee of $1,409,967.50 was "fair and reasonable."[9]  Doc. #186.  Based thereon, Hertz argues that a reasonable fee for the time period up to June 27, 2011 should be at most $705,000, based on Hertz's fifty percent share of the $1,409,967.50 lodestar calculation.  However, as Plaintiffs point out, the entire $1,409,967.50 lodestar figure does not reflect time equally attributable to both Hertz and Enterprise.  Rather, only that time spent prior to Enterprise's dismissal on November 27, 2006 and that time between April 1, 2010, and June 27, 2011, on the failed settlement is partly attributable to Enterprise.  *See* Doc. #5.  Plaintiffs' submitted declarations wherein counsel represented that for those periods in which time was billed for both Hertz and Enterprise, counsel are attributing only 50% percent of

---

[9] As Plaintiffs correctly point out, the previous fee petition stated that the lodestar as of March 24, 2011, was $1,409,967.50.  *See* Doc. #186.  Accordingly, the $1,409,967.50 lodestar figure does not account for any time spent on the case between March 24, 2011, and June 27, 2011.

their time to the Hertz case.  *See* Doc. #411-2 ("Stock Decl."), ¶4; Doc. #411-3 ("Zlotnick Decl."), ¶4; Doc. #411-4 ("Robertson Decl."), ¶9.  Accordingly, the Court declines to adopt Hertz's proposed calculation of fees before June 27, 2011.  As Hertz does not otherwise challenge Plaintiffs' claimed hourly rates or the manner in which Plaintiffs calculated their lodestar fees, the Court accepts class counsels' representations as to the appropriate reduction for time partially attributable to Enterprise.

Hertz also argues that this amount should be reduced by that portion of that fee request that reflects counsels' fees for negotiating and advocating a settlement that the Court ultimately determined was not in the interests of the class.  However, as Plaintiffs point out, courts routinely award attorney's fees for time spent on claims or arguments that are unsuccessful.  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, . . . the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.").  Indeed, it would be nearly impossible to say that class counsels' time spent on the settlement did not benefit the class in any way.  Accordingly, the Court rejects Hertz's argument that Plaintiffs are not entitled to recover fees for time associated with the failed settlement.

### c.  Post-Settlement Lodestar Figure

Next, Hertz argues that Plaintiffs' post-settlement fees should be reduced on the following three bases: (1) there are numerous time entries related to the Enterprise case, during which time Plaintiffs attributed 100% of their billed time to Hertz; (2) Plaintiffs employed three separate law firms to perform overlapping tasks, which is inherently inefficient; and (3) the fee petition reflects incomplete or improper billing practices, e.g., redacted entries so there is no way of determining the propriety of the charge.

Hertz, as the party opposing the fee application, has the burden of producing evidence that Plaintiffs' challenged hours were duplicative or inaccurate.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) ("[T]he party opposing the fee application has a burden of rebuttal

1  that requires submission of evidence to the district court challenging the accuracy and

2  reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted

3  affidavits.").  Because Hertz has failed to do so, the Court agrees with Plaintiffs that the

4  aforementioned three bases do not justify reducing the amount of Plaintiffs' post-settlement fees.

5       First, although purportedly discussing post-settlement fees, Hertz only refers to pre-

6  settlement fees as improperly charged to Hertz, and fails to produce any evidence that Plaintiffs'

7  attorneys included hours spent on the Enterprise case in their lodestar figure.  Again, Plaintiffs

8  submitted declarations stating that their billing statements only included entries for work expended

9  on the Hertz case.  *See* Stock Decl., ¶4; Zlotnick Decl., ¶4; Robertson Decl., ¶9.  Furthermore,

10  Plaintiffs state that they began using a separate billing code for Enterprise beginning in July 2011.

11  Doc. #411 at 13 n.2.  Accordingly, Hertz has not produced evidence that part of the post-settlement

12  fees were improperly attributed to Hertz, and has therefore not justified reducing the lodestar figure

13  on this basis.

14       Second, Hertz argues that Plaintiffs' attorneys performed overlapping tasks, and cites two

15  examples where courts have reduced awards due to duplicative billing.  *See Marrocco v. Hill*, 291

16  F.R.D. 586, 589 (D. Nev. 2013) (finding that billing for two senior attorneys and a seventh year

17  associate for a briefing was excessive); *Aevoe Corp. v. AE Tech. Co.*, No. 2:12-cv-0053, 2013 WL

18  5324787, at *5-6 (D. Nev. Sept. 20, 2013) (finding that billing for five attorneys who worked on a

19  motion to compel was excessive).  Plaintiffs argue that "Hertz has provided no reason why an

20  assignment of multiple attorneys to particular tasks was objectionable."  Doc. #441 at 12.  The

21  Court agrees.  In fact, *Marrocco*—one of the cases cited by Hertz—states that "some duplication of

22  effort is necessary in any case."  291 F.R.D. at 589 (citing *Moreno v. City of Sacramento*, 534 F.3d

23  1106, 1112 (9th Cir. 2008)); *see Moreno*, 534 F.3d at 1113 ("Findings of duplicative work should

24  not become a shortcut for reducing an award without identifying just why the requested fee was

25  excessive and by how much.").  Here, Hertz's sole example of duplicative billing is an instance

26  where two attorneys participated in a deposition, and Hertz provided no evidence to suggest that

1    this was an inefficient expenditure of resources.  *See* Doc. #432 at 9; *see also PSM Holding Corp.*

2    *v. Nat'l Farm Fin. Corp.*, 743 F. Supp. 2d 1136, 1157 (C.D. Cal. 2010) ("Multiple attorneys may

3    be essential for planning strategy, eliciting testimony or evaluating facts or law."); *Sunstone*

4    *Behavioral Health, Inc. v. Alameda Cnty. Med. Ctr.*, 646 F. Supp. 2d 1206, 1214 (E.D. Cal. 2009)

5    (declining to reduce fees when "defendant provide[d] no persuasive reason why having two or three

6    attorneys" perform a given task "was unreasonable").   Thus, while attorney's fees awards can be

7    reduced if they include duplicative billing practices, Hertz has failed to show that such a reduction

8    is appropriate here.

9         Third, Hertz argues that the fee petition reflects improper or incomplete billing practices,

10    primarily instances where key billing descriptions were redacted.  Hertz identifies two examples of

11    such billing practices, including "telephone conference to ____" and "Prepare for, travel to, and

12    attend meeting with ____; Return to office."  Doc. #432 at 9.  Plaintiffs correctly note that Hertz's

13    argument here conflicts with its statement that "Hertz does not invite the Court to review the billing

14    records entry by entry."  Doc. #441 at 12.  Additionally, although some of the redactions appear to

15    be names of individuals, the majority of redactions refer to the subject matter discussed and

16    therefore do not inhibit Hertz's ability to challenge the propriety of the charges.  *See, e.g.*,

17    Doc. #411-4 at 25 ("Receive, review and analyze email to Dr. Dugan re ____.").[10]  Accordingly,

18    Hertz has failed to meet its burden as the opposing party to produce evidence indicating that

19    Plaintiffs' redactions in the fee petition justify reducing the lodestar figure.

20         Therefore, in conclusion, the Court finds that under the fee-shifting statute, class counsel is

21    entitled to reasonable attorney's fees in the amount of $3,135,269.00—the requested lodestar figure

22    without a risk multiplier—from Hertz.

23    

24         [10] Given that many of the redacted entries appear to refer to subject matter discussed, Plaintiffs
      may have appropriately redacted this information to prevent disclosing privileged information.   *See*
25    *Reed v. AMCO Ins. Co.*, No. 3:09-cv-0328-LRH-RAM, 2012 WL 846475, at *3 (D. Nev. Mar. 9, 2012)
      (imposing sanctions for failure to redact privileged information placed onto the CM/ECF internet
26    system).

1          **2.     Common Fund Doctrine**

2          **a.  Application Of Common Fund Doctrine**

3          While Plaintiffs may not invoke NRS 482.31585 to collect the equivalent of 25% of the

4   common fund from Hertz, "there is no preclusion on recovery of common fund fees where a fee-

5   shifting statute applies." *Staton*, 327 F.3d at 967.

> That common fund fees can be awarded where statutory fees are available follows
> from the equitable nature of common fund fees.  In *Alyeska Pipeline Serv. Co. v.
> Wilderness Soc'y*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Court
> explained that 28 U.S.C. § 1923, a version of which was first enacted in 1853, limits
> the amount of attorneys' fees that a prevailing party may recover from the loser, but
> does not prohibit the award of fees under the common fund doctrine. . . .  Thus,
> unless Congress has forbidden the application of the common fund doctrine in cases
> in which attorneys could potentially recover fees under the type of fee-shifting
> statutes at issue here, the courts retain their equitable power to award common fund
> attorneys' fees.

12  *Id.* at 967-68.

13          Here, the Nevada legislature has not explicitly forbidden the application of the common

14  fund doctrine where a prevailing party is otherwise entitled to recover fees under NRS 482.31585.

15  Nor does it appear that the intent of the fee-shifting provision at issue here would be undermined by

16  awarding additional attorney's fees under common fund principles.  Indeed, the fee-shifting statute

17  and the common fund doctrine serve entirely different purposes: the former governs what the non-

18  prevailing party must, by law, pay the prevailing party in attorney's fees, while the latter serves to

19  ensure that absent class members share in the cost of litigation.  Finally, Plaintiffs cite at least one

20  case in which the court approved of attorney's fees based on a fee-shifting statute to be paid by the

21  non-prevailing party, and an additional fee based on a percentage recovery to be paid from the

22  common fund established by court judgment.  *See Savani v. URS Prof'l Solutions LLC*, No. 1:06-

23  cv-2805, 2014 WL 172503, at *9 (D.S.C. Jan. 15, 2014) (awarding additional $729,000 from the

24  common fund created by the litigation in addition to the $475,000 that defendants agreed to pay

25  class counsel pursuant to fee-shifting ERISA statute); *see also U.S. ex rel. Maxwell v. Kerr-McGee*

26  *Oil & Gas Corp.*, 793 F. Supp. 2d 1260, 1264-65 (D. Colo. 2011) ("By its nature, fee-shifting is

designed to shift all of the costs (including attorney's fees) to the loser in an action.  The fact that the winner's attorneys receive compensation from another source is irrelevant to the fee award.").  Accordingly, the Court holds that Plaintiffs may seek additional attorney's fees out of the common fund irrespective of their entitlement to attorney's fees under the fee-shifting statute.

**b.  Lodestar Multiplier Under Common Fund Doctrine**

In a common fund case, the district court has discretion to apply the lodestar method and add a multiplier "to reward attorneys for taking the risk of non-payment." *In re Wash. Pub. Power*, 19 F.3d at 1299; *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) ("The bar against risk multipliers in statutory fee cases does not apply to common fund cases.").  Courts consider a variety of factors to determine the appropriate multiplier, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth*, 654 F.3d at 942; *see Vizcaino*, 290 F.3d at 1051 (approving a 3.65 multiplier where class counsel faced a significant risk of loss and the litigation was complex and drawn-out)[11]; *Wing v. Asarco Inc.*, 114 F.3d 986, 988-89 (9th Cir. 1997) (approving a 2.0 multiplier where class counsel obtained strong results and had significant continuing responsibilities).

The attorney's fees sought here are equivalent to a 3.38 multiplier of the lodestar.  Doc. #445 at 2.  Plaintiffs argue that this figure is reasonable due to the complexity of the issues, the results obtained, and the continuing responsibilities of class counsel. *Id.* at 13-14.  Hertz argues that the requested lodestar is unreasonable, and that the court should impose a more modest figure without a multiplier.  Doc. #432 at 6.  Hertz argues further that factors such as amount of risk, complexity of issues, and quality of counsel should not be taken into consideration in determining a multiplier because such factors are already built in to the lodestar. *Id.* at 11.  This argument has

---

[11] *Vizcaino* notes that in common fund cases worth between $50 and $200 million between 1996 and 2001, multipliers ranged from 1.2 to 19.6, with the majority falling between 1.2 and 4.0.  290 F.3d at 1052.

1 been unsuccessful, however, in cases in which class counsel achieved particularly strong results,

2 had taken on significant risk, or had continuing responsibilities.  In *Wing*, for example, the court

3 held that even assuming that multiplier factors were included in the lodestar, a 2.0 multiplier was

4 "justifiable on the basis of another factor: class counsel's continuing obligations to the class."

5 114 F.3d at 989.  In addition to securing favorable results to the class over the protracted litigation,

6 class counsel here similarly has a continuing obligation to the class, which weighs in favor of

7 imposing a multiplier.

8      Considering the factors mentioned above, the Court finds that a lodestar multiplier is

9 appropriate given the amount of risk adopted by class counsel, the drawn-out nature of the litigation

10 and extent of work performed by class counsel, the favorable results obtained, and class counsel's

11 continuing responsibilities.  Since litigation commenced in 2006, Hertz has fought the class action

12 on all fronts, raising numerous constitutional and equitable defenses and launching multiple

13 appeals.  The extended litigation and complexity of issues—amidst the risk that class counsel will

14 recover nothing—supports class counsel's argument in favor of a multiplier of the lodestar.  Thus,

15 as in *Vizcaino*, a multiplier is appropriate here because of "the substantial risk class counsel faced,

16 compounded by the litigation's duration and complexity."  290 F.3d at 1051.

17      Accordingly, the Court approves Plaintiffs' lodestar fee in the amount of $3,135,269.00 to

18 be drawn from the common fund in addition to the $3,135,269.00 to be paid by Hertz pursuant to

19 the fee-shifting statute, discussed *supra*, for a total $6,270,538.00 in attorney's fees.  This figure

20 represents Plaintiffs' lodestar calculation multiplied by a factor of 2.0.  The Court also grants leave

21 to Plaintiffs to file additional fee and/or expense petitions in the event of any further appeals or

22 challenges by Hertz.

23      **3.      Pre-Judgment Interest**

24      Plaintiffs request that they be awarded attorney's fees on any pre-judgment interest awarded

25 in the case.  However, because the Court has determined that the lodestar method, as opposed to the

26 percentage-of-recovery method, is appropriate under the circumstances, Plaintiffs' request has

1   already been considered by the Court in awarding the lodestar multiplier.  Consequently, Plaintiffs'

2   request is moot.

3          **4.**      **Expenses**

4         NRS 482.31858 explicitly provides that the prevailing party is entitled to recover the costs

5   of the litigation in addition to attorney's fees.  *See also Grove v. Wells Fargo Fin. Cal. Inc.*, 606

6   F.3d 577, 580-81 (9th Cir. 2010) (noting that the Ninth Circuit has repeatedly "allowed prevailing

7   plaintiffs to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing

8   parties").  Hertz does not challenge that Plaintiffs, as the prevailing party, are entitled to costs under

9   NRS 482.31858.  Accordingly, the Court grants Plaintiffs' request for fees in the amount of

10  $432,211.39 to be assessed against Hertz.  *See* Doc. #445.

11         **5.**      **Incentive Awards**

12        Here, Plaintiffs request incentive awards of $10,000.00 for each of the two named Plaintiffs,

13  Sobel and Dugan.  Such awards are well established in class actions as compensation for a named

14  plaintiff's often extensive involvement in the litigation.  *See  In re Mego Corp. Sec. Litig.*, 213 F.3d

15  454, 463 (9th Cir. 2000); *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *Cook v. Niedert*,

16  142 F.3d 1004, 1016 (7th Cir. 1998); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir.

17  2002), *cert. denied*, 537 U.S. 823 (2002).

18        Here, the Court finds that the requested incentive awards are appropriate under the

19  circumstances.  Both Sobel and Dugan have been involved in this litigation from its inception,

20  working to ensure that the case was a success.  Without their integral efforts, no class member

21  would recover.  Plaintiffs, however, do not cite any authority for the proposition that the incentive

22  awards should be paid by Hertz, as opposed to out of the common fund.  Contrary to Plaintiffs'

23  assertion, such an award does not fall within the purview of "appropriate equitable relief" to be

24  assessed against Hertz under NRS 482.31585.  Rather, the Court determined that the appropriate

25  equitable relief in this case was restitution of any airport concession recovery fees paid to Hertz.

26  Moreover, NRS 482.31858 only provides that the prevailing party is entitled to recover "reasonable

1   attorney's fees and costs."  This most assuredly does not encompass the requested incentive

2   awards.  However, the Court shall grant Plaintiffs' request for incentive awards of $10,000.00 each

3   for both Sobel and Dugan, to be paid out of the common fund.

4   **B.     Objectors**

5   "Under certain circumstances, attorneys for objectors may be entitled to attorneys' fees from

6   the fund created by class action litigation."  *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012).

7   "Nonnamed members of a certified class have the authority to object to the fairness of a settlement

8   at the fairness hearing required by Rule 23(e) of the Federal Rules of Civil Procedure, as well as

9   appeal the court's decision to ignore their objections."  *Id.* (citing *Devlin v. Scardelletti*, 536 U.S. 1,

10  8-9, 14 (2002)).  Where "these objections result in an increase to the common fund, the objectors

11  may claim entitlement to fees on the same equitable principles as class counsel."  *Id.* (citing

12  Vizcaino, 290 F.3d at 1051-52).  However, "[i]n the absence of a showing that objectors

13  substantially enhanced the benefits to the class under the settlement,[12] as a matter of law they are

14  not entitled to fees[.]"  *Vizcaino*, 290 F.3d at 1052.  "Nor is it error to deny fees to objectors whose

15  work is duplicative, or who merely echo each other's arguments and confer no unique benefit to the

16  class."  *Rodriguez*, 688 F.3d at 658-59.  When determining attorney's fees in any class action

17  situation, "it is necessary that district courts be permitted to select the more appropriate method for

18  calculating attorney's fees in light of the unique characteristics of class actions in general, and of

19  the unique circumstances of the actual cases before them."  *Rawlings v. Prudential-Bache Props.*

20  *Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).  District courts have discretion to award objectors expenses

21  and incentive awards.  *See In re Apple Inc. Sec. Litig.*, No. 5:06-cv-5208, 2011 WL 1877988, at *5

22  (N.D. Cal. May 17, 2011) (granting an incentive award to fairly compensate objector's counsel).

23

24      [12]  Indeed, objectors who bring about any enhanced benefit to the class or an increase to the
        fund under a settlement *or judgment or other order* may be entitled to an award of attorney's fees.  *See*

25  *Rodriguez*, 688 F.3d at 658 (finding that objectors conferred a benefit on the class warranting an award
        of attorney's fees where their objections were instrumental in causing the district court to deny fees to

26  class counsel).

### 1.        Andrews and Weber

Andrews and Weber request attorney's fees in the amount of $88,901.95, as well as expenses in the amount of $1,098.05 and incentive awards for both objectors in the amount of $2,500.00.  *See* Doc. #413 at 7.  Further, Andrews and Weber request that the attorney's fees, expenses, and incentive payments be assessed against the sum that would otherwise go to class counsel.  *See id.* at 5.

Specifically, Andrews and Weber argue that their objections substantially enhanced the value of the settlement to the entire class by up to $42 million.  *Id.* at 3.  Andrews and Weber also note that in its rejection of the settlement, the Court expressly referenced the objectors' concerns as a reason for rejecting the settlement.  *Id.* at 4; *see* Doc. #250 at 25 ("[T]he court also finds that some objectors have raised legitimate and serious concerns about the value of the settlement to the class relative to the value of the claims surrendered.").  Class counsel argues that if objectors are awarded fees, such fees should be modest in relation to the class because objectors became involved in the litigation late, and it is difficult to determine how much value their objections added to the settlement.  Doc. #434 at 5.  Class counsel adds that if the Court awards a fee to objectors, such fee should be calculated using the lodestar method rather than a percentage of the fee.  *Id.* at 5.  As discussed *supra*, the Court finds that application of the lodestar method is appropriate here.  *See Vizcaino*, 290 F.3d at 1047 (finding that the lodestar method was appropriate where attorney investment was minimal in relation to the award).

Andrews and Weber request that any award of attorney's fees be paid from class counsel's award rather than the common fund because "[t]he costs of proposing an unreasonable settlement should not be borne by class members themselves."  Doc. #413 at 5.  Andrews and Weber add that class counsel "must shoulder some share of the blame" for "its attempt to deliver little or nothing of value to the class in its previous failed settlement."  Doc. #437 at 6.  Plaintiffs counter that any award of attorney's fees should be paid by Hertz, but cite no authority for the assertion that Defendant should pay objectors' attorney's fees.  *See* Doc. #434 at 8.  If objectors cause an increase

in the common fund, "the objectors may claim entitlement to fees on the same equitable principles as class counsel." *Rodriguez*, 688 F.3d at 658. Courts commonly award objectors fees and expenses from the common fund. *See, e.g.*, *In re Riverstone Networks, Inc.*, 256 Fed. Appx. 168, 169 (9th Cir. 2007) (granting reduced objector attorney's fees from the common fund); *In re Apple*, 2011 WL 1877988, at *5 (awarding fees and expenses from the common fund). Given the size of the common fund and the reasonable figure requested by class counsel, the Court finds that Andrews and Weber are entitled to fees from the common fund rather than class counsel or Hertz.

The Court finds that Andrews' and Weber's objections did contribute to the value of the resulting settlement. Accordingly, the Court grants Andrews and Weber the lodestar fee of $88,901.95, expenses in the amount of $1,098.05, and incentive awards for both objectors in the amount of $1,500.00,[13] all to be paid out of the common fund. Although the objectors request incentive awards of $2,500.00, the Court finds that $1,500.00 is a more appropriate amount.

### 2. Schutzman

Schutzman requests attorney's fees equal to ten percent of the attorney's fees recovered by class counsel, for a total of approximately $1 million in attorney's fees. In support thereof, Schutzman asserts that it is common for courts to award objectors a fee as a percentage of the class counsel's fee that is based on the percentage increase in the total value of the fund that is attributable to the objection. *See In re Prudential Ins. Co. Of Am. Sales Practices Litig.*, 273 F. Supp. 2d 563, 565 (D.N.J. 2003) (objectors awarded attorney's fee that was 1.4% of the total attorney's fee because objections were responsible for 1.4% of the value of the fund). Alternatively, Schutzman requests attorney's fees in the amount of $258,334.37 (representing a 2.5 multiplier on $103,333.75 lodestar calculation), as well as $4,221.68 in expenses and a service award of $7,000.00. *See* Doc. #410; Doc. #446.

---

[13] Plaintiffs acknowledge that "it may be appropriate for the court to provide service awards" to Andrews and Weber because "the Court did reference the Objectors arguments and briefing in deciding to reject the failed settlement." Doc. #434 at 8.

1    Plaintiffs argue that Schutzman's objections resulted in minimal—if any—increase to the

2  common fund and do not justify attorney's fees of $1 million.  Doc. #433 at 7.  Plaintiffs add that

3  Schutzman's suggested figure would amount to compensation in the amount of $7,000 per hour, or

4  a lodestar multiplier of 18.0.  *Id.*  The Court agrees that Schutzman's proposed attorney's fees are

5  excessive in light of the work performed compared to class counsel's.  The Court also finds,

6  however, that like objectors Andrews and Weber, Schutzman's objections contributed to increase

7  the value of the Plaintiffs' recovery.  As for Andrews and Weber, application of the lodestar

8  method is appropriate here.  Accordingly, the Court approves Schutzman the lodestar fee of

9  $103,333.75, expenses in the amount of $4,221.68, and an incentive award in the amount of

10  $1,500.00, all to be paid out of the common fund.

11  **III.    Conclusion**

12    IT IS THEREFORE ORDERED that Plaintiffs' Motion for Attorney Fees, Doc. #411, is

13  GRANTED in part and DENIED in part in accordance with this Order.  Plaintiffs shall be awarded

14  attorney's fees in the amount of $3,135,269.00 to be paid by Hertz under the fee-shifting statute,

15  and $3,135,269.00 to be paid from the common fund under the common fund doctrine.  Plaintiffs

16  shall also be awarded $432,211.39 in expenses to be assessed against Hertz.  Finally, named

17  Plaintiffs Sobel and Dugan shall each receive incentive awards of $10,000.00 to be assessed against

18  the common fund.  The Court grants leave to Plaintiffs to file additional fee and/or expense

19  petitions if further appeals or challenges are undertaken by Hertz.

20    IT IS FURTHER ORDERED that Andrews and Weber's Motion for Attorney Fees, Doc.

21  #409, is GRANTED in part and DENIED in part in accordance with this Order.  Andrews and

22  Weber shall be awarded attorney's fees in the amount of $88,901.95, expenses in the amount of

23  $1,098.05, and incentive awards in the amount of $1,500.00 for both Andrews and Weber, all to be

24  paid from the common fund.

25  ///

26  ///

1    IT IS FURTHER ORDERED that Schutzman's Motion for Attorney's Fees, Doc. #410, is

2  GRANTED in part and DENIED in part in accordance with this Order.  Schutzman shall be

3  awarded attorney's fees in the amount of $103,333.75, expenses in the amount of $4,221.68, and an

4  incentive award of $1,500.00, all to be paid from the common fund.

5

6    IT IS SO ORDERED.

7    DATED this 9th day of October, 2014.

8                                                  LARRY R. HICKS
                                                   UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26